**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| SWISSDIGITAL USA CO., LTD. | |
| Plaintiff, | |
| v. | Civil Action No.  6:23-cv-196 |
| SAMSONITE INTERNATIONAL S.A., | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT

Plaintiff Swissdigital USA Co., Ltd. ("Swissdigital" or "Plaintiff") files this Complaint against Defendant Samsonite International S.A. ("Samsonite International" or "Defendant") and as claim for relief states as follows:

## NATURE OF THE ACTION

1.     This is an action for patent infringement under the Patent Laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271.

## PARTIES

2.     Plaintiff is a Delaware limited liability company with an address of 50 Fountain Plaza, Suite 1700, Buffalo, New York 14202-2216.

3.     On information and belief, Defendant is a Luxembourg limited liability company (a *société anonyme*) with a principal place of business at 25/F, Tower 2, The Gateway, Harbour City, 25 Canton Road, Tsimshatsui, Kowloon, Hong Kong.

## FACTUAL BACKGROUND

4.     Plaintiff is in the business of selling high-tech intelligent backpacks and other

1

innovative consumer goods throughout the world, including within the United States and within this District.  Plaintiff is the owner of all rights, title, and interest in and to United States Patent Nos. 10,574,071 ("the '071 Patent") and 10,931,138 ("the '138 Patent") (collectively, the "Patents-in-Suit").  A true and correct copy of the '071 Patent is attached hereto as Exhibit A.  A true and correct copy of the '138 Patent is attached hereto as Exhibit B.

5.      The '071 Patent, titled: "Bag or Luggage with USB Charging Connector," issued on February 25, 2020.  Plaintiff's invention is a bag or luggage for convenient charging of personal devices such as smart phones, tablets, or any device that requires recharging.  The claimed and disclosed bag or luggage provides a space for placing a power storage device inside the bag or luggage body, a power cable outlet on the outer surface of the bag or luggage body, and a USB extension cable that connects to the power storage device inside the bag.  Swissdigital's products offered for sale and sold in the United States practicing the claims of the '071 Patent are marked with the 10,574,071 patent number.

6.      The '138 Patent, titled: "Sheath for USB Charging," issued on February 23, 2021.  Plaintiff's invention is a sheath that may be incorporated into luggage, bags, activewear, or other wearables for convenient charging of personal devices such as smart phones, tablets, or any device that requires recharging.  The claimed and disclosed sheath receives a female end of a USB cable wherein the operative end of the female end of a USB cable is provided in a flat position with the operative end being uncovered and above the outer surface of the body and the cord of the female end going through an opening between the inner surface and the outer surface.  Swissdigital's products offered for sale and sold in the United States practicing the claims of the '138 Patent are marked with the 10,931,138 patent number.

7.      On information and belief, Samsonite International is the world's largest travel luggage company.  Samsonite International, together with its consolidated subsidiaries, designs, manufactures, sources, and distributes products including luggage, business and computer bags, garment bags, outdoor and casual bags, business cases, clothing, and travel accessories throughout the world under the Samsonite brand name, as well as other owned and licensed brand names. Samsonite International and its consolidated subsidiaries sell their products in North America, Asia, Europe, and Latin America through a variety of wholesale distribution channels, through their company-operated retail stores, and through e-commerce.

8.      According to Samsonite International's corporate literature, "[w]ith 1,096 company-owned retail stores in 39 countries by the end of 2020, as well as a variety of wholesale distribution channels and retail websites, Samsonite is truly a global company.  We own and operate three primary manufacturing sites in Belgium, Hungary[,] and India, as well as a small site in Mexico and 19 distribution centers worldwide."

9.      On information and belief, Samsonite International directs and controls the activities of its consolidated subsidiaries.  According to Samsonite International's corporate literature, "Samsonite International S.A. (the 'Company'), together with its consolidated subsidiaries (the 'Group'), is principally engaged in the design, manufacture, sourcing and distribution of luggage, business and computer bags, outdoor and casual bags and travel accessories throughout the world, primarily under the *Samsonite*, *Tumi*, *American Tourister*, *Gregory*, *High Sierra*, *Kamiliant*, *ebags*, *Lipault* and *Hartmann* brand names as well as other owned and licensed brand names."

10.     On information and belief, Defendant directs and controls Samsonite-owned retail stores, including those in the United States and within Texas and this District, and

distribution/manufacturing facilities.  Defendant and/or its consolidated subsidiaries lease retail stores, distribution centers, office facilities, and equipment.

11.    On information and belief, Defendant owns, manages, and provides content for its website shop.samsonite.com (the "Samsonite.com Website").

12.    On information and belief, Defendant sells and has sold products, including but not limited to the Quadrion Slim Backpack, the Quadrion Standard Backpack, and the Quadrion Messenger Bag, through a variety of wholesale distribution channels, through its company-operated retail stores, and through e-commerce, including on its Samsonite.com Website.



13.    Defendant also owns Samsonite trademarks for use on products such as travel accessories, leather goods, handbags, clothing, and furniture.  According to Defendant's corporate literature and its website https://corporate.samsonite.com/en/home.html (the "Samsonite Corporate Website"), Defendant's products are sold in over 100 countries in Asia, North America, Europe, and Latin America through Defendant's company-operated retail stores, a variety of

wholesale distribution channels, including department and specialty retail stores, mass merchants, warehouse clubs, and e-retailers, and through e-commerce.

14.     On information and belief, Samsonite IP Holdings S.A.R.L. ("Samsonite IP") operates as a wholly owned subsidiary of Samsonite International.  Samsonite IP shares the same address as Samsonite International, 13-15 Avenue De La Liberté, Luxembourg City, Luxembourg N4 L-1931.  Samsonite IP is the owner of Samsonite trademarks.  The Samsonite.com Website features a Samsonite IP copyright: "Copyright 2023 Samsonite IP Holdings S.A.R.L," as does the Samsonite Corporate Website.

15.     On information and belief, Defendant advertises, sells, and conducts business throughout the United States, including within the state of Texas and within this District.  On information and belief, at all relevant times, Defendant was in the business of offering for sale and selling its bag and luggage products in the United States.

16.     Defendant has and continues to infringe, contributorily infringe, and/or induce others to infringe at least claim 1 of the '071 Patent and at least claim 23 of the '138 Patent in the United States by offering for sale and selling bag and luggage products, including but not limited to the Quadrion Slim Backpack, the Quadrion Standard Backpack, and the Quadrion Messenger Bag (collectively, the "Quadrion Bags").

17.     Samsonite International directly infringes the Patents-in-Suit by selling and offering for sale, in the United States and this District, its infringing bag and luggage products through at least its Samsonite.com Website.

18.     Samsonite International contributorily infringes the Patents-in-Suit by providing, including through its consolidated subsidiaries, a staple article—its infringing bag and luggage

products—to (1) U.S. retailers who, in turn, sell and offer for sale the infringing products; and (2) U.S. customers who, in turn, use the infringing products.

19.     Additionally, Samsonite International induces infringement of the Patents-in-Suit by U.S. retailers by providing the infringing products to customers and to retailers.  Samsonite International expends significant time and resources on the design, manufacture, and quality control of its products (which it promotes as "premium-quality," "iconic designs," and "the latest design technology") and the products of its consolidated subsidiaries, such that the retailers benefit from the sales and popularity of Samsonite International's products.



20.     Samsonite International also places its trademarks on products and maintains goodwill in the marks such that the retailers benefit from sales and popularity of Samsonite International's products and the products of its consolidated subsidiaries.  The goodwill in the products, brands, and marks, including *Samsonite*, *Tumi*, *High Sierra*, *ebags*, and *Hartmann*,

entices customers to purchase the products and to infringe, and the goodwill also entices retailers to sell and to offer for sale the infringing products.

21.     Additionally, Samsonite International knowingly and actively encourages customers to use the products to infringe the Patents-in-Suit by providing instructions and technical support to its customers.  The Samsonite.com Website instructs customers that the "[b]uilt in USB port lets you power devices on the go" "to keep you charged and stress-free" and that the "[i]ntegrated charging port allows for easy access to personal portable chargers."

22.     On information and belief, Samsonite International performs extensive market research of its competitors and competing products and gathers extensive information about its competitors and competing products in the marketplace, including patents relating to such products.  Given the similarities between Samsonite International's Quadrion Bags and the '071

and '138 Patents, the similarities between the Quadrion Bags and Plaintiff's competing products that embody the asserted claims of the '071 and '138 Patents and are marked with these patent numbers, and the patent infringement litigation, which was newsworthy and publicized by Bloomberg Law and Law360, between Plaintiff and Defendant's direct competitors Targus International LLC and Wenger S.A. surrounding similar products and involving the Patents-in-Suit,[12] Samsonite International was aware of Plaintiff's patented technology and knew or should have known that its own products practiced at least claim 1 of the '071 Patent and at least claim 23 of the '138 Patent.  With this knowledge, Samsonite International continues to sell and offer to sell its infringing products and encourage customers to use the patented features of its bags/luggage.

## JURISDICTION

23.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

24.     Venue in this judicial district is proper under 28 U.S.C. §§ 1391(c)(3) because Defendant is not a resident of the United States.

25.     This Court has personal jurisdiction over Defendant because Defendant has done business and continues to do business in Texas, marketed and promoted its products within Texas, and has committed acts of patent infringement in Texas, including but not limited to: promoting, marketing, and advertising the sale of the Quadrion Bags in Texas; using, offering to sell, and selling the Quadrion Bags in Texas; importing the Quadrion Bags into Texas; inducing others to

---

[1] *Swissdigital USA Co., Ltd. v. Wenger S.A.*, 6:21-cv-00453-ADA-DTG (W.D. Tex. 2021); *Targus Int'l LLC v. Swissdigital USA Co., Ltd.*, 8:20-cv-00782-JLS-DFM (C.D. Cal. 2020).

[2] In the Wenger case, this Court conducted a claim construction hearing and issued an opinion in connection with the Patents-in-Suit.  *See Swissdigital USA Co., Ltd. v. Wenger S.A.*, 6:21-cv-00453-ADA-DTG (W.D. Tex. 2021) at Dkt. Nos. 54 and 55.

commit infringing acts in Texas; and contributorily infringing the Patents-in-Suit by providing, including through its consolidated subsidiaries, a staple article to (1) retailers who, in turn, sell and offer for sale the infringing products in Texas; and (2) customers in Texas who, in turn, use the infringing products.  On information and belief, Defendant and/or its consolidated subsidiaries operate numerous physical retail stores throughout Texas, including within this District. Defendant also sells and offers for sale its products through e-commerce channels in Texas and within this District.  Thus, Defendant knowingly benefits from the availability of the Texas market for its products and intends to serve Texas residents and increase sales in Texas and within this District.  Defendant purposefully directs activities at residents of this forum, and Swissdigital's claims arise out of and relate to these activities.

26.     In the alternative, this Court has personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k) even if Defendant is not subject to personal jurisdiction in any state's courts of general jurisdiction.  These causes of action arise under federal law because the claims fall under 35 U.S.C. § 271.  The exercise of jurisdiction over Defendant is consistent with due process because Defendant has sufficient minimum contact with the United States such that jurisdiction does not offend traditional notions of fair play and substantial justice.  Defendant has purposefully directed its activities at residents of the United States through the sale of the infringing products in the United States via its Samsonite.com Website, consolidated subsidiaries, and U.S. retailers.  Defendant has also purposefully availed itself of the financial benefits of the United States through its direction, supervision, and control of the use in commerce of the Samsonite trademarks, from which it derived substantial profits.  These claims arise out of and relate to the sales of Defendant's infringing products in the United States, and the assertion of jurisdiction is reasonable and fair.  Finally, Defendant knowingly induced retailers to sell and to

offer for sale the infringing products and induced customers to use the products in an infringing manner in the United States.

<u>**COUNT ONE**</u>
<u>**INFRINGEMENT OF U.S. PATENT NO. 10,574,071**</u>

27.　　Plaintiff incorporates by reference the allegations set forth in paragraphs 1–26 herein.

28.　　Pursuant to 35 U.S.C. § 271(a), Defendant has directly infringed (literally and/or under the doctrine of equivalents) at least claim 1 of the '071 Patent by designing, manufacturing, sourcing, distributing, offering for sale or use, and/or selling in the Western District of Texas and elsewhere in the United States bag and luggage products including, but not limited to, the Quadrion Bags that include a sheath for convenient charging.

29.　　In violation of 35 U.S.C. § 271(b), Defendant has infringed (literally and/or under the doctrine of equivalents) at least claim 1 of the '071 Patent indirectly by inducing, causing, urging, encouraging, aiding, and abetting the infringement of the '071 Patent claim by third parties, including its consolidated subsidiaries, retailers, and customers.

30.　　Defendant has done so by affirmative acts, including, but not limited to, selling infringing products, marketing the infringing capabilities of such products, and providing instructions, technical support, and other encouragement for the use of such products.  Defendant induces infringement of the Patents-in-Suit by U.S. retailers by providing the infringing products to customers and to retailers.  Defendant expends significant time and resources on the design, manufacture, and quality control of its products (which it promotes as "premium-quality," "iconic designs," and "the latest design technology") and the products of its consolidated subsidiaries such that the retailers benefit from the sales and popularity of Samsonite International's products.  Defendant also places its trademarks on products and maintains goodwill in the marks such that

the retailers benefit from sales and popularity of Samsonite International's products and the products of its consolidated subsidiaries. The goodwill in the products, brands, and marks, including *Samsonite*, *Tumi*, *High Sierra*, *ebags*, and *Hartmann*, entices customers to purchase the products and to infringe, and the goodwill also entices retailers to sell and to offer for sale the products.

31.     Defendant knowingly and specifically intended third parties, including, but not limited to, its consolidated subsidiaries, to infringe at least claim 1 of the '071 Patent. On information and belief, Defendant knew of the '071 Patent, performed affirmative acts that constitute induced infringement, and knew or should have known that those acts would induce actual infringement of one or more of the '071 Patent's claims by third parties. Given the extensive market research that Defendant performs, the similarities between Defendant's Quadrion Bags and the '071 Patent, the similarities between the Quadrion Bags and Plaintiff's competing products that embody the asserted claims of the '071 Patent and are marked with this patent number, and the patent infringement litigation, which was newsworthy and publicized by Bloomberg Law and Law360, between Plaintiff and Defendant's direct competitors Targus International LLC and Wenger S.A. surrounding similar products and involving the Patents-in-Suit, Defendant was aware of Plaintiff's patented technology and continues to sell and offer to sell its infringing products, including through its consolidated subsidiaries, and encourage customers to use the patented features of its bags/luggage.

32.     In violation of 35 U.S.C. § 271(c), Defendant has infringed (literally and/or under the doctrine of equivalents), at least claim 1 of the '071 Patent indirectly by contributing to the infringement of at least claim 1 of the '071 Patent. Defendant provides, including through its consolidated subsidiaries, its infringing bag and luggage products—a staple article—to (1) U.S.

retailers who, in turn, sell and offer for sale the infringing products; and (2) to U.S. customers who, in turn, use the infringing products.

33.     Defendant has contributed to the infringement of at least claim 1 of the '071 Patent because it knew that the Quadrion Bags it offered for sale, which feature a "[b]uilt in USB port [that] lets you power devices on the go" "to keep you charged and stress-free," "allow[ing] for easy access to personal portable chargers," were infringing and not suitable for substantial non-infringing use.

34.     On information and belief, Defendant had knowledge of the '071 Patent since at least as early as February 2020, when the '071 Patent issued.

35.     On information and belief, Defendant, while fully aware that at least the Quadrion Bags infringed one or more of the claims of the '071 Patent, offered for sale, sold, and induced others to buy, use, and sell these infringing products.

36.     As a result of Defendant's infringement of the '071 Patent, Plaintiff has suffered monetary losses for which it is entitled to an award of damages that is adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, in no event less than a reasonable royalty.

37.     On information and belief, Defendant's infringement of the '071 Patent has been deliberate, willful, and with full knowledge, or willful blindness to knowledge, of the '071 Patent.

38.     Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendant's willful infringement of the '071 Patent.

39.     The Quadrion Bags meet each and every element of at least claim 1 of the '071 Patent.  The Quadrion Bags meet the preamble "a bag or luggage for convenient charging, comprising."  The Quadrion Bags are bags for convenient charging, as they include an "integrated USB socket" that "lets you power devices on the go."  Samsonite International claims that this

feature keeps a user "charged and stress free."

40.     The Quadrion Bags meet the claim element "a bag or luggage body having a placing space for placing a power storage device inside the bag or luggage body and a power cable outlet on the outer surface of the bag or luggage body."   The Quadrion Bags include a place for placing a power storage device inside the bag and a power cable outlet on the outer surface of the bag body.

41.     The Quadrion Bags meet the claim element "a USB extension cable having a male connector and a female connector having four sides and an operative end." The Quadrion Bags include a USB extension cable with male connector and a female connector having four sides and an operative end.

42.     The Quadrion Bags meet the claim element "wherein the male connector of the USB extension cable is inside the bag or luggage body and is used to connect to the power storage device in the placing space."   The male connector of the USB extension cable is inside the Quadrion Bags and is used to connect to the power storage device in the placing space.

43.     The Quadrion Bags meet the claim element "wherein the female connector is retained outside and adjacent to the power cable outlet with one side of the four sides of the female connector in communication with the bag or luggage body, and the other three sides of the female connector are covered by a water proof sheath that protects the female connector and provides it in a flat position and wherein the sheath is above and covers the power cable outlet."   The female connector of the Quadrion Bags is retained outside and adjacent to the power cable outlet.   Three sides of the female connector are covered by a water proof sheath and provides it in a flat position and is above and covers the power cable outlet.   The remaining side is in communication with the bag or luggage body.

44.     The Quadrion Bags meet the claim element "wherein the sheath does not cover the operative end of the female connector which is exposed and fixedly attached above the exterior of the bag such that the operative end of the female connector does not need to be moved and the bag or luggage body does not need to be opened to accept a charging interface of a product to be charged."  The operative end of the Quadrion Bags' female connector is exposed and not covered by the sheath.  The operative end of the female connector is fixedly attached to the bag, and as it is on the exterior of the bag, the bag does not need to be opened to accept a charging interface of a product to be charged.

## COUNT TWO
## INFRINGEMENT OF U.S. PATENT NO. 10,931,138

45.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1–44 herein.

46.     Pursuant to 35 U.S.C. § 271(a), Defendant has directly infringed (literally and/or under the doctrine of equivalents) at least claim 23 of the '138 Patent by designing, manufacturing, sourcing, distributing, offering for sale or use, and/or selling in the Western District of Texas and elsewhere in the United States, luggage products including, but not limited to, the Quadrion Bags that include a sheath for a USB charger for convenient charging of personal devices such as smart phones, tablets, or any device that requires recharging.

47.     In violation of 35 U.S.C. § 271(b), Defendant has infringed (literally and/or under the doctrine of equivalents) at least claim 23 of the '138 Patent indirectly by inducing, causing, urging, encouraging, aiding, and abetting the infringement of the '138 Patent claim by third parties, including its consolidated subsidiaries, retailers, and customers.

48.     Defendant has done so by affirmative acts, including but not limited to selling infringing products, marketing the infringing capabilities of such products, and providing

instructions, technical support, and other encouragement for the use of such products.  Defendant induces infringement of the Patents-in-Suit by U.S. retailers by providing the infringing products to customers and to retailers.  Defendant expends significant time and resources on the design, manufacture, and quality control of its products (which it promotes as "premium-quality," "iconic designs," and "the latest design technology") and the products of its consolidated subsidiaries such that the retailers benefit from the sales and popularity of Samsonite International's products.  Defendant also places it trademarks on products and maintains goodwill in the marks such that the retailers benefit from sales and popularity of Samsonite International's products and the products of its consolidated subsidiaries.  The goodwill in the products, brands, and marks, including *Samsonite*, *Tumi*, *High Sierra*, *ebags*, and *Hartmann*, entices customers to purchase the products and to infringe, and the goodwill also entices retailers to sell and to offer for sale the products.

49.     Defendant knowingly and specifically intended third parties, including but not limited to its consolidated subsidiaries, to infringe at least claim 23 of the '138 Patent.  On information and belief, Defendant knew of the '138 Patent, performed affirmative acts that constitute induced infringement, and knew or should have known that those acts would induce actual infringement of one or more of the '138 Patent's claims by third parties.  Given the extensive market research that Defendant performs, the similarities between Defendant's Quadrion Bags and the '138 Patent, the similarities between Defendant's Quadrion Bags and Plaintiff's competing products that embody the asserted claims of the '138 Patent and are marked with this patent number, and the patent infringement litigation, which was newsworthy and publicized by Bloomberg Law and Law360, between Plaintiff and Defendant's direct competitors Targus International LLC and Wenger S.A. surrounding similar products and involving the Patents-in-Suit, Defendant was aware of Plaintiff's patented technology and continues to sell and offer to sell

its infringing products, including through its consolidated subsidiaries, and encourage customers to use the patented features of its bags/luggage.

50.     On information and belief, Defendant had knowledge of the '138 Patent since at least as early as February 2021, when the '138 Patent issued.

51.     On information and belief, Defendant, while fully aware that at least the Quadrion Bags infringed one or more of the claims of the '138 Patent, offered for sale, sold, and induced others to buy, use, and sell these infringing products.

52.     In violation of 35 U.S.C. § 271(c), Defendant has infringed (literally and/or under the doctrine of equivalents), at least claim 23 of the '138 Patent indirectly by contributing to the infringement of at least claim 23 of the '138 Patent.  Defendant provides its infringing bag and luggage products—a staple article—to (1) U.S. retailers who, in turn, sell and offer for sale the infringing products; and (2) to U.S. customers who, in turn, use the infringing products.

53.     Defendant has contributed to the infringement of at least claim 23 of the '138 Patent because it knew that the Quadrion Bags it offered for sale, which feature a "[b]uilt in USB port [that] lets you power devices on the go" "to keep you charged and stress-free," "allow[ing] for easy access to personal portable chargers," were infringing and not suitable for substantial non-infringing use.

54.     As a result of Defendant's infringement of the '138 Patent, Plaintiff has suffered monetary losses for which it is entitled to an award of damages that is adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, in no event less than a reasonable royalty.

55.     On information and belief, Defendant's infringement of the '138 Patent has been deliberate, willful, and with full knowledge, or willful blindness to knowledge, of the '138 Patent.

56.     Plaintiff has suffered damages in an amount to be determined at trial by reason of

Defendant's willful infringement of the '138 Patent.

57.     The Quadrion Bags meet each and every element of at least claim 23 of the '138 Patent.  The Quadrion Bags meet the preamble "A sheath for convenient charging."  The Quadrion Bags are bags for convenient charging, as they include an "integrated USB socket" that "lets you power devices on the go."  Samsonite International claims that this feature keeps a user "charged and stress free."

58.     The Quadrion Bags meet the claim element "a sheath having a raised portion that extends above an outer surface of a body, wherein the raised portion has a USB opening, and a surrounding bottom portion surrounding at least a portion of the raised portion."  The Quadrion Bags include a raised integrated USB socket.

59.     The Quadrion Bags meet the claim element "wherein the body has an inner surface, an outer surface and a body opening between the inner surface and the outer surface."

60.     The Quadrion Bags meet the claim element "wherein the sheath is at the body opening with the raised portion above the outer surface and at least a portion of the surrounding bottom portion is in communication with a portion of the body."

61.     The Quadrion Bags meet the claim element "wherein the sheath has a female end of a USB cable in the USB opening, wherein the female end of the USB cable has four sides, an operative end and a cord end and the operative end of the female end of the USB cable is retained in the USB opening to provide the female end of the USB cable in a flat position with the operative end of the female connector being uncovered and above the outer surface of the body."  The Quadrion Bags include a USB extension cable with a male connector and a female connector having four sides and an operative end.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief, as follows:

A.      That Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 10,574,071, together with all rights of recovery under such patent for past infringement thereof;

B.      That United States Patent No. 10,574,071 is valid and enforceable in law and that Defendant has infringed said patent;

C.      Awarding to Plaintiff its damages caused by Defendant's infringement of United States Patent No. 10,574,071;

D.      That Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 10,931,138, together with all rights of recovery under such patent for past infringement thereof;

E.      That United States Patent No. 10,931,138 is valid and enforceable in law and that Defendant has infringed said patent;

F.      Awarding to Plaintiff its damages caused by Defendant's infringement of United States Patent No. 10,931,138;

G.      Entering a preliminary and permanent injunction against Defendant, its officers, employees, attorneys, all parent and subsidiary corporations and affiliates, their assigns and successors in interest, and those persons in active concert or participation with any of them who receive notice of the injunction, enjoining them from continuing acts of infringement of the Patents-in-Suit;

H.      That Defendant's infringement has been willful and said damages be trebled pursuant to 35 U.S.C. § 284;

I.      That this is an exceptional case and awarding to Plaintiff its costs, expenses, and

reasonable attorney fees pursuant to 35 U.S.C. § 285; and

J.      Awarding to Plaintiff such other and further relief as the Court may deem just and

proper.

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b) Plaintiff hereby demands a trial by jury for all

issues triable by jury.

Dated:  March 14, 2023

Respectfully submitted,

By: */s/ Jacqueline P. Altman*
Dariush Keyhani (*pro hac vice to be filed*)
Frances H. Stephenson (*pro hac vice to be filed*)
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
T. 202.748.8950
F. 202.318.8958
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com

Jacqueline P. Altman
State Bar No. 24087010
John P. Palmer
State Bar No. 15430600
John A. "Andy" Powell
State Bar No. 24029775
USPTO Reg. No. 71,533
NAMAN HOWELL SMITH & LEE, PLLC
400 Austin Ave., Suite 800
Waco, Texas 76701
jaltman@namanhowell.com
palmer@namanhowell.com
apowell@namanhowell.com

19

ANDY TINDEL
Texas State Bar No. 20054500

MT²LAW GROUP
MANN | TINDEL | THOMPSON
112 East Line Street, Suite 304
Tyler, Texas 75702
Tel:     (903) 596-0900
Fax:     (903) 596-0909
Email:   atindel@andytindel.com

*Attorneys for Plaintiff Swissdigital USA Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of March, 2023, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys or record who have who have consented to accept this Notice as service of this document by electronic means.

*/s/ Jacqueline P. Altman*
Jacqueline P. Altman