**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| SWISSDIGITAL USA CO., LTD., *Plaintiff*, v. SAMSONITE INTERNATIONAL S.A., *Defendant.* | Civil Action No. 6:23-cv-00196-ADA **JURY TRIAL DEMANDED** |

**SAMSONITE INTERNATIONAL S.A.'S MOTION**
**TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF FACTS .................................................................................. 2

     A.    Swissdigital And The Complaint ................................................................ 2

     B.    Samsonite International and the Accused Products ................................... 2

III.   APPLICABLE LEGAL STANDARDS ............................................................ 3

     A.    Rule 12(b)(6) Motions To Dismiss ............................................................ 3

     B.    Personal Jurisdiction ................................................................................. 4

     C.    Motions To Transfer under § 1404(a) ....................................................... 6

IV.   ARGUMENT ....................................................................................................... 7

     A.    Personal Jurisdiction Cannot Be Established Over Samsonite International Based On The Actions Of Its Subsidiaries ............................ 7

     B.    Texas Has No Personal Jurisdiction over Samsonite International. .................... 10

          1.    Samsonite International Has No Minimum Contacts With Texas. ........... 10

          2.    The Controversy Does Not Arise Out Of Or Relate To Samsonite International's Contacts With Texas .......................... 12

          3.    Texas Has No General Jurisdiction Over Samsonite International ......... 13

          4.    Exercising Jurisdiction Does Not Comport With Traditional Notions Of Fair Play And Substantial Justice ................................ 13

     C.    Alternatively, This Case Should Be Transferred To D. Mass. ........................... 15

          1.    Venue Is Proper In D. Mass. ............................................................ 15

          2.    The Private Interest Factors Support Transfer. ................................. 16

               a.    The Relative Ease Of Access To Sources Of Proof Is Far Greater In D. Mass. .................................... 16

               b.    The Availability Of Compulsory Process Favors Transfer. .......... 17

               c.    The Willing Witnesses Are Overwhelmingly In D. Mass. ........... 17

               d.    All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive ....................... 18

          3.    The Public Interest Factors Also Support Transfer. ............................... 19

               a.    D. Mass. Has An Interest In Having Localized Interests Decided At Home. ............................... 19

               b.    Court Congestion Does Not Favor Keeping This Case In Texas. ................................................ 20

               c.    Familiarity With the Governing Law and Conflicts Of Law ........ 20

V.    CONCLUSION ................................................................................................................. 20

### TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*In re Acer America Corp.*,
    626 F.3d 1252 (Fed. Cir. 2010) ........................................................................................18

*Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*,
    450 Fed. App'x 326 (5th Cir. 2011) ..................................................................................8

*Aguilar-Ayala v. Ruiz*,
    973 F.2d 411 (5th Cir. 1992) ............................................................................................17

*In re Apple Inc.*,
    No. 2021-181, (Fed. Cir. Nov. 15, 2021) ......................................................................6, 7

*In re Apple, Inc.*,
    581 F. App'x 886 (Fed. Cir. 2014) ...................................................................................17

*In re Apple, Inc.*,
    979 F.3d 1332 (Fed. Cir. 2020)................................................................................. *passim*

*Applied Food Scis. V. New Star 21, Inc.*,
    Civ. No. W-07-CA-359, 2009 WL 9120113 (W.D. Tex. Jan. 23, 2009) .............................12

*Architettura Inc. v. DSGN Assocs. Inc.*,
    Civ. No. 3:16-cv-3021-S, 2018 WL 3428705 (N.D. Tex. July 13, 2018) ...........................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................3, 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................3, 4

*Burger King Corp. v. Rudezewicz*,
    471 U.S. 462 (1985) ....................................................................................................5, 14

*Conley v. Gibson*,
    355 U.S. 41 (1957) ............................................................................................................3

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ....................................................................................................5, 13

*Dalton v. R & W Marine, Inc.*,
    897 F.2d 1359 (5th Cir. 1990) ...........................................................................................7

*DataQuill, Ltd. v. Apple Inc.*,
    No. A-13-CA-706-SS, 2014 WL 2722201 (W.D. Tex. June 13, 2014) ................................19

*Diagnostic Affiliates of Ne. Hou, LLC v. United Health Grp., Inc.*,
No. 2:21-CV-00131, 2022 U.S. Dist. LEXIS 14130 (S.D. Tex. Jan. 18, 2022) ........................7

*In re Dish Network L.L.C.*,
No. 2021-183, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) ...............................................6, 19

*Ferrigno v. Philips Elecs. N. Am. Corp.*,
No. C-09-03085 RMW, 2010 U.S. Dist. LEXIS 59036 (N.D. Cal. June 1,
2010) ......................................................................................................................................8

*Fintiv, Inc. v. Apple Inc.*,
No. 6:18-CV-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ...................16, 17

*Freudensprung v. Offshore Tech. Servs., Inc.*,
379 F.3d 327 (5th Cir. 2004) ..............................................................................4, 5, 12, 13

*In re Google LLC*,
855 Fed. Appx. 767 (Fed. Cir. 2021) .....................................................................................19

*In re Google LLC*,
No. 2021-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) ...................................................17

*Hargrave v. Fibreboard Corp.*,
710 F.2d 1154 (5th Cir. 1983) ................................................................................................7

*In re Hoffman-La Roche, Inc.*,
587 F.3d 1333 (Fed. Cir. 2009) .......................................................................................17, 19

*In re HP Inc.*,
No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ...............................................18

*In re Hulu, LLC*,
No 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) .........................................6, 17, 20

*International Shoe Co v. Washington*,
326 U.S. 310 (1945) ..........................................................................................................4, 5

*In re Juniper Networks, Inc.*
14 F. 4th 1313 (Fed. Cir. 2021) .................................................................................7, 19, 20

*In re Juniper Networks, Inc.*,
No. 2021-156, 2021 WL 4519889 (Fed. Cir. Oct. 4, 2021) ............................................17, 20

*Lifetime Industries, Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017) ..............................................................................................3

*McFadin v. Gerber*,
587 F.3d 753 (5th Cir. 2009) ..................................................................................................5

*Mink v. AAA Development LLC,*
    190 F.3d 333 (5th Cir. 1999) ..........................................................................11, 12

*Monkton Ins. Servs. v. Ritter,*
    768 F.3d 429 (5th Cir. 2014) ...................................................................................10

*In re Netscout Sys., Inc.,*
    No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021)..............................6, 18

*In re Nintendo Co.,*
    589 F.3d 1194 (Fed. Cir. 2009)..................................................................................7

*Open Text v. Alfresco,*
    No. 6:20-cv-0920-ADA, (W.D. Tex. Nov. 22, 2021)...............................................19

*In re Pandora Media, LLC,*
    No. 2021-172, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021)......................................6

*PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.,*
    No. 6:11-cv-655, 2013 WL 9600333 (E.D. Tex. Mar. 21, 2013)..........................19

*Religious Tech. Ctr. v. Liebreich,*
    339 F.3d 369 (5th Cir. 2003) .....................................................................................4

*Revell v. Lidov,*
    317 F.3d 467 (5th Cir. 2002) ...................................................................................13

*In re Samsung Elecs. Co.,*
    2 F.4th 1371 (Fed. Cir. 2021) .................................................................6, 7, 19, 20

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.,*
    365 F.3d 353 (5th Cir. 2004) .....................................................................................4

*Swierkiewicz v. Sorema N.A.,*
    534 U.S. 506 (2002).....................................................................................................3

*In re TS Tech USA Corp.,*
    551 F.3d 1315 (Fed. Cir. 2008)................................................................................20

*In re Volkswagen AG,*
    371 F.3d 201 (5th Cir. 2004) ...............................................................................6, 18

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) ...........................................................................1, 6, 18

*Westfall v. Miller,*
    77 F.3d 868 (5th Cir. 1996) ......................................................................................4

*Wet Sounds, Inc. v. Audio Formz, LLC*,
    No. A-17-CV-141-LY, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017) .................................18

*Wild v. Advanced Termite Control, Inc.*,
    1:17-CV-443-RP, 2019 WL 653220 (W.D. Tex. Feb. 14, 2019) ......................................12, 14

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997)......................................................................................11

**Statutes**

28 U.S.C. § 1400(b) ...................................................................................................................15

28 U.S.C. § 1404(a) ................................................................................................................5, 6

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)..................................................................................................................3

Fed. R. Civ. P. 12 .........................................................................................................................1

Pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), Defendant Samsonite International S.A. ("Samsonite International") respectfully moves the Court to dismiss Plaintiff Swissdigital USA Co., Ltd.'s, ("Swissdigital") Amended Complaint (Dkt. No. 13), or, in the alternative, transfer this case to the clearly more convenient venue, the District of Massachusetts.

## I.   INTRODUCTION

The Court should dismiss Swissdigital's Complaint because exercising jurisdiction here would be improper.  Samsonite International is a Luxembourg company with its registered office and offices at 13-15 Avenue de la Liberté, L-1931 Luxembourg, registered with the Luxembourg Register of Commerce and Companies (Registre de Commerce et des Sociétés, Luxembourg, under number B 147.735), and separately with joint headquarters in two locations—Luxembourg and Mansfield, Massachusetts—and is thus not subject to general jurisdiction in Texas.  Samsonite International is also not subject to specific jurisdiction in Texas because it has never supplied any products related to anything in the Amended Complaint directly or indirectly to the State of Texas. Indeed, Swissdigital's allegations that Samsonite International takes part in the allegedly infringing activities is pure speculation with zero citations to factual support—for good reason, as Samsonite International ***does not perform any of the accused activities***.

Alternatively, Samsonite International requests that the Court transfer this case to the District of Massachusetts ("D. Mass.").  This case has numerous connections to Massachusetts, but none to Texas, much less to Waco.  A straightforward application of the *Volkswagen* factors shows this case should be transferred to D. Mass., where Samsonite International has a joint headquarters and where Samsonite LLC, the relevant entity, and relevant witnesses and evidence are located.  All of the key factors favor transfer, while ***none*** favor keeping this case in Waco.

1

## II.    STATEMENT OF FACTS

### A.    Swissdigital And The Complaint

Swissdigital is a Delaware limited liability company with a principal place of business in Buffalo, New York.  Dkt. No. 13 at ¶ 2.  Swissdigital filed its Complaint in this Court on March 14, 2023*, see id*., and its Amended Complaint on March 30, 2023.  In the Amended Complaint, Swissdigital alleges that Samsonite International infringes four patents by "designing, manufacturing, sourcing, distributing, offering for sale or use, and/or selling" certain bag and luggage products, including the Quadrion line of products.  *Id.* at ¶¶ 18, 30, 48, 67, 84.

### B.    Samsonite International and the Accused Products

Samsonite International is a group head holding company that is registered in Luxembourg.  Ex. A[1] at 1; Livingston Decl. at ¶ 12.  Samsonite has a registered office in Luxembourg and joint headquarters in Luxembourg and in Mansfield, Massachusetts.  Livingston Decl. at ¶ 12.

The main operating entities for the Samsonite Group in the United States are Samsonite LLC and Tumi Inc., a New Jersey Corporation with principal place of business in New Jersey.  *Id.* at ¶ 2.  Samsonite LLC, along with its affiliates Samsonite Company Stores, LLC ("Samsonite Company Stores") and Direct Marketing Ventures, LLC ("DMV"), has a principal place of business at 575 West Street, Suite 110, Mansfield, MA 02048.  *Id.* at ¶ 3.  Most of Samsonite LLC's employees are also based in Mansfield, Massachusetts (none are based in Texas).  *Id.* at ¶ 6.    Samsonite International has no employees who reside in the United States.  *Id.* at ¶ 15.  Samsonite International's corporate functions are carried out by personnel from Samsonite International's affiliate companies, including by Samsonite LLC and contracted third parties.  *Id.*

---

[1] Ex. A is a translation of Samsonite International's page from the Register of Commerce and Companies.  For reference, an untranslated version of the document is attached as Ex. B.

2

While some Samsonite International directors are based in the United States, none are in Texas. Ex. A at 2-4.

The Quadrion line of products that Swissdigital accuses of infringement in this case was designed by Samsonite LLC.  Livingston Decl. at ¶ 7.  The products are manufactured by a supplier located in Asia using USB components supplied by a second supplier also in Asia.  *Id.* at ¶ 8.

While Samsonite International's Board of Directors makes strategic decisions that affect the Samsonite group as a whole, Samsonite International has no involvement in the group's operations in the United States or in any country at all at a product level.  *Id*. at ¶ 13.  Nor does Samsonite International direct or control activities with respect to products, other than through general oversight.  *Id.*  As such, Samsonite International is not involved in the design, manufacture, sourcing, distribution, offer for sale, or sale of the accused products identified in Swissdigital's Complaint (or any other products), in the United States or otherwise.  *Id.* at ¶¶ 13-14.

## III.   APPLICABLE LEGAL STANDARDS

### A.   Rule 12(b)(6) Motions To Dismiss

A proper complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Such statements must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

As the Federal Circuit explained in *Lifetime Industries, Inc. v. Trim-Lok, Inc.*, "[t]o survive a motion to dismiss under Rule 12(b)(6) a complaint must 'contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.""'  869 F.3d at 1376 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Meeting this requirement requires a plaintiff to do more than plead facts that are merely consistent with a defendant's liability."  *Id.* (internal quotation marks omitted) (quoting

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)).  As the Supreme Court explained in *Iqbal*, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," and as it explained in *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  556 U.S. at 678; 550 U.S. at 555.  A complaint is insufficient if it only "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  Merely pleading the "bare elements of [a] cause of action" is insufficient.  *Id.* at 687.

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pled facts in the complaint and review them in the light most favorable to the plaintiff. However, in the Fifth Circuit, courts do "not 'strain to find inferences favorable to the plaintiffs.'" *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (quoting *Westfall v. Miller*, 77 F.3d 868, 870 (5th Cir. 1996)).

### B.      Personal Jurisdiction

To determine whether a federal district court has personal jurisdiction over a nonresident defendant, the district court first considers whether exercising jurisdiction over the defendant comports with due process.  *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). If the requirements of due process are satisfied, the court then determines whether the exercise of jurisdiction is authorized by the jurisdictional long-arm statute of the state in which the court sits. *Id*.  Because the Texas long-arm statute extends to the limit of due process, the two inquiries are the same for district courts in Texas.  *Id.*

The United States Supreme Court has articulated a two-pronged test to determine whether a federal court may properly exercise jurisdiction over a nonresident defendant: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice."

*International Shoe Co v. Washington*, 326 U.S. 310, 316 (1945); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). The touchstone of the analysis is "whether the defendant's conduct shows that it reasonably anticipates being haled into court" in the forum state. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

A defendant's "minimum contacts" may give rise to either specific personal jurisdiction or general personal jurisdiction, depending on the nature of the suit and the defendant's relationship with the forum state. *Freudensprung*, 379 F.3d at 343. "A court may exercise specific jurisdiction when 1) the defendant purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; ***and*** 2) the controversy arises out of or is related to the defendant's contacts with the forum state." *Id.* Even when the controversy is not related to the defendant's contacts with the forum state, however, a court may nevertheless exercise general jurisdiction over the defendant if the defendant has engaged in "continuous and systematic contacts" in the forum. *Id.* General jurisdiction requires affiliations so continuous and systematic as to render the foreign company at home in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 133 (2014). If the defendant satisfies neither of these tests, the exercise of personal jurisdiction is not proper. *Int'l Shoe*, 326 U.S. at 316.

To determine whether exercising jurisdiction comports with traditional notions of fair play and substantial justice, courts consider: 1) the burden on the defendant, 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and advancement of fundamental social policies. *Burger King Corp. v. Rudezewicz*, 471 U.S. 462, 477 (1985).

### C.     Motions To Transfer under § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In analyzing a motion to transfer under § 1404(a), the law of the regional circuit applies. *In re Samsung Elecs. Co*., 2 F.4th 1371, 1375 (Fed. Cir. 2021); *In re Apple, Inc*., 979 F.3d 1332, 1336 (Fed. Cir. 2020) ("*Apple I*").

Under section 1404(a), the moving party must first show that the claims "might have been brought" in the proposed transferee district. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312-13 (5th Cir. 2008) ("*Volkswagen II*"). This first requirement is plainly met here because Samsonite International is not a Texas corporation and is not headquartered in Texas.

Second, the movant must show "good cause" by demonstrating that the "transferee venue is clearly more convenient" than the transferor district. *Volkswagen II*, 545 F.3d at 315. In evaluating convenience, courts weigh both private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id*. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*.

The convenience of the witnesses is the most important factor in the transfer analysis. *In re Apple Inc*., No. 2021-181, slip op. at 4-5 (Fed. Cir. Nov. 15, 2021) ("*Apple II*"); *Samsung*, 2 F.4th at 1379; *In re Dish Network L.L.C*., No. 2021-183, 2021 WL 4911981, at *2 (Fed. Cir. Oct.

21, 2021); *In re Hulu, LLC*, No 2021-142, 2021 WL 3278194, at *5 (Fed. Cir. Aug. 2, 2021).  This convenience includes both party witnesses and third-party witnesses.  *See, e.g.*, *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *3-4 (Fed. Cir. Oct. 13, 2021); *In re Netscout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *3 (Fed. Cir. Oct. 13, 2021).  When most witnesses and evidence are closer to the transferee venue and few or no convenience factors favor the venue chosen by the plaintiff, the case should be transferred.  *See Apple II*, No. 2021-181, slip op. at 10; *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re Juniper Networks, Inc.* 14 F. 4th 1313, 1323 (Fed. Cir. 2021) ("*Juniper I*"); *Samsung*, 2 F. 4th at 1379; *Apple I*, 979 F.3d at 1342.

## IV.   ARGUMENT

There is no specific or general personal jurisdiction over Samsonite International in Texas.  Samsonite International has no activities in Texas and lacks the minimum contacts necessary to establish jurisdiction.  An exercise of personal jurisdiction over Samsonite International here would also not comport with notions of fair play and substantial justice.

Even if exercising jurisdiction were proper here, D. Mass. is a clearly more convenient venue in view of the private and public interest factors, and the case should be transferred.

### A.   Personal Jurisdiction Cannot Be Established Over Samsonite International Based On The Actions Of Its Subsidiaries

"Generally, a subsidiary's contacts with a forum cannot serve as the basis for holding a parent corporation amenable to personal jurisdiction in that forum."  *Diagnostic Affiliates of Ne. Hou, LLC v. United Health Grp., Inc.*, No. 2:21-CV-00131, 2022 U.S. Dist. LEXIS 14130, at *9 (S.D. Tex. Jan. 18, 2022) (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983)).  "[T]he mere existence of a parent-subsidiary relationship will not support the assertion of jurisdiction over a foreign parent." *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990).  Although this is the general rule, "there may be times when a parent corporation so

dominates its subsidiary that the two cannot be considered separate and distinct entities." *Diagnostic Affiliates*, 2022 U.S. Dist. LEXIS 14130, at *9-10.  In such cases, where the plaintiff is able to establish a prima facie case for alter ego liability, a court may exercise jurisdiction over a parent based on the actions of its subsidiary.  *See Ferrigno v. Philips Elecs. N. Am. Corp.*, No. C-09-03085 RMW, 2010 U.S. Dist. LEXIS 59036, at *8-9 (N.D. Cal. June 1, 2010).  However, the 5th Circuit has held that "the plaintiff has a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to the parent." *Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 Fed. App'x 326, 331 (5th Cir. 2011).

Here, the allegations in Swissdigital's Complaint are based entirely on the actions of Samsonite International's subsidiaries.  Samsonite International is solely a holding company and conducts no activities in Texas, let alone the design, manufacture, sourcing, distribution, and sale of the specific product lines Swissdigital accuses of infringement.  Livingston Decl. at ¶¶ 13-14. The Samsonite group's U.S. operations with respect to the accused products are run by Samsonite International's subsidiary, Samsonite LLC, and its affiliates, Samsonite Company Stores (an Indiana corporation with its principal place of business in Massachusetts) and DMV (a Colorado corporation with its principal place of business also in Massachusetts).  *Id.* at ¶¶ 3-5, 7, 10. Samsonite International does not direct or control these entities' activities, and is not involved in any United States operations, much less at a product level as Swissdigital alleges.  *Id.* at ¶¶ 13-14.

Swissdigital attempts to attribute the allegedly infringing actions to Samsonite International, but its conclusory allegations do not come close to meeting the high bar for establishing that Samsonite International is but an alter ego for its subsidiaries.  Swissdigital's infringement allegations are mainly tied to two Samsonite websites that Swissdigital dubs the "Samsonite Corporate Website" (https://corporate.samsonite.com/en/home.html) and the

"Samsonite.com Website." (https://shop.samsonite.com/).  Dkt. No. 13 at ¶¶ 13, 15.  But as Swissdigital recognizes in the Amended Complaint, neither of these websites lists Samsonite International on their face—instead, they list "Samsonite IP Holdings S.A.R.L.," a different Samsonite subsidiary, as the copyright owner.  *Id.* at ¶ 16.  If Swissdigital had fully investigated publicly available information, it would have found that the Samsonite.com Website is actually operated by the aforementioned DMV, an affiliate of Samsonite LLC located in Massachusetts.  *See* https://shop.samsonite.com/terms-of-use.html; https://shop.samsonite.com/privacy-policy.html; Livingston Decl. at ¶ 16.  Further, the Samsonite Corporate Website is used solely for addressing investor relations.  *Id.* at ¶ 17.  There are no products sold or offered for sale on the Samsonite Corporate Website, let alone the accused products, and the website thus has no relation to the purported infringing activities alleged in Swissdigital's Amended Complaint.  Swissdigital's allegation that Samsonite International "directs and controls" the activities of its subsidiaries (Dkt. No. 13 at ¶ 11) is likewise false, and cannot provide a basis for imputing contacts to Samsonite International.  Livingston Decl. at ¶¶ 13-14.

It follows that Swissdigital's other allegations regarding Samsonite International's involvement in the allegedly infringing activities are also false.  Samsonite International does not "direct[] and control[] Samsonite-owned retail stores," or "lease retail stores, distribution centers, office facilities, and equipment," in Texas or otherwise.  Dkt. No. 13 at ¶ 12; Livingston Decl. at ¶ 14.  Samsonite International does not "own[], manage[], and provide[] content for its website shop.samsonite.com."  Dkt. No. 13 at ¶ 13; Livingston Decl. at ¶ 16.  Samsonite International does not sell any products, including the Quadrion products Swissdigital accuses of infringement.  Dkt. No. 13 at ¶ 14; Livingston Decl. at ¶ 13.  Samsonite International does not "advertise[], sell[], and conduct[] business throughout the United States," and has never "offer[ed] for sale" or sold any

bag and luggage products in the United States.  Dkt. No. 13 at ¶ 17; Livingston Decl. at ¶¶ 13-14.

Samsonite International does not design, manufacture, source, distribute, offer for sale, or sell any

products at issue, nor does it market the products' capabilities, provide instructions or support, or

participate in quality control.  *Id.* at ¶¶ 30, 32, 48, 50, 67, 69, 84, 86; Livingston Decl. at ¶¶ 13-14.

Accordingly, Swissdigital has not alleged facts sufficient to establish alter ego status, and

personal jurisdiction over Samsonite International cannot be established through its subsidiaries.

### B.   Texas Has No Personal Jurisdiction over Samsonite International.

Texas does not have personal jurisdiction over Samsonite International because Samsonite

International has not purposefully directed its activities toward Texas or purposefully availed itself

of the privileges of conducting activities here.  Swissdigital makes conclusory jurisdictional

allegations in its Amended Complaint that are demonstrably false.  Swissdigital alleges that this

Court has personal jurisdiction over Samsonite International because Samsonite International 1)

promoted, marketed, advertised, used, offered for sale, sold, and imported the Quadrion bags; 2)

induced and contributed to infringement by its subsidiaries and its customers; and 3) operated

physical stores and e-commerce channels that sell the accused products.  Dkt. No. 13 at ¶ 27.

However, as discussed above, Samsonite International has done none of these things, all of which

are, at best, activities conducted by Samsonite subsidiaries.

### 1.   Samsonite International Has No Minimum Contacts With Texas.

To establish personal jurisdiction over a nonresident defendant, "the plaintiff must show

that the nonresident defendant purposefully availed itself of the benefits and protections of the

forum state by establishing 'minimum contacts' with the forum state."  *Monkton Ins. Servs. v.*

*Ritter*, 768 F.3d 429, 431 (5th Cir. 2014).  Here, Samsonite International lacks the minimum

contacts with the state of Texas to confer general or specific jurisdiction.  Samsonite International

10

did not purposefully avail itself of the benefits of conducting activities in Texas.  It does not make any sales in Texas, hire any employees in Texas, or otherwise run any operations at all in Texas.

Tellingly, Swissdigital does not cite any evidence actually linking Samsonite International to the purported infringing activities alleged in the Amended Complaint.  Swissdigital mainly points to two websites—the Samsonite.com Website and the Samsonite Corporate Website—to support its allegation that Samsonite International is tied to allegedly infringing activities.  Dkt. No. 13 at ¶¶ 13, 15.  But Samsonite International does not operate the Samsonite.com Website, and the Samsonite Corporate Website is used solely for investor relations and has no connection to any of the allegedly infringing activities.  Livingston Decl. at ¶¶ 16-17.

Even if Samsonite International did operate both websites, that fact would be insufficient to show that Samsonite International purposefully availed itself of the benefits of conducting activities in Texas.  For website-based contacts for personal jurisdiction, the Fifth Circuit has adopted the *Zippo* "sliding scale" test.  *Mink v. AAA Development LLC,* 190 F.3d 333, 336-37 (5th Cir. 1999) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).  Under *Zippo*, Courts look to the "nature and quality of commercial activity that an entity conducts over the internet."  *Zippo*, 952 F. Supp. at 1124.

The *Zippo* decision sets forth two extremes to assessing jurisdiction for Internet use.  *See Mink*, 190 F.3d at 336.  At one end of the spectrum are situations where a defendant clearly does business with residents of other states, which involves the knowing and repeated transmission of computer files over the internet.  *Id*.  Personal jurisdiction is proper in this situation.  *Id*.  On the other end of the spectrum are situations where a defendant merely establishes a passive web site that does nothing more than advertise on the internet.  *Id*.  Personal jurisdiction is not appropriate in these situations.  *Id.*  Where the defendant's interactive website is accessible in Texas, but the

11

defendant does not conduct commerce or direct advertising specifically towards Texas, finding personal jurisdiction over Defendants is unreasonable.  *Wild v. Advanced Termite Control, Inc*., 1:17-CV-443-RP, 2019 WL 653220, at *2 (W.D. Tex. Feb. 14, 2019) (citing *Applied Food Scis. V. New Star 21, Inc*., Civ. No. W-07-CA-359, 2009 WL 9120113, at *4 (W.D. Tex. Jan. 23, 2009)).

Here, Samsonite International has not "do[ne] business over the Internet" with residents of Texas, *see Mink*, 190 F.3d at 336, nor directed advertising specifically towards the state of Texas. *See Wild*, 2019 WL 653220, at *2.  Although residents of Texas may have accessed the websites, the mere possibility that forum residents have visited a website—even an extremely interactive one—does not alone constitute minimum contacts between the website's owner and the forum.  *Id*. Further, as discussed above, the Samsonite.com Website clearly states (in public view) that it is operated by DMV, not Samsonite International, and the Samsonite Corporate Website has no products on sale at all, including the accused Quadrion products.

Accordingly, Samsonite International lacks minimum contacts with the State of Texas, and the exercise of jurisdiction over Samsonite International is improper.

### 2. The Controversy Does Not Arise Out Of Or Relate To Samsonite International's Contacts With Texas

To establish specific personal jurisdiction, Plaintiffs must also show that this controversy arises out of or relates to a Defendant's contacts in the State of Texas.  *Freudensprung*, 379 F.3d at 343.  In Texas, this requires "a substantial connection between the contacts and the operative facts of the litigation."  *Architettura Inc. v. DSGN Assocs. Inc*., Civ. No. 3:16-cv-3021-S, 2018 WL 3428705, at *2 (N.D. Tex. July 13, 2018).

There is no connection between Samsonite International and the State of Texas.  Samsonite International has not run any operations, sold any products, or hired employees in Texas.  In fact, Samsonite International does not play any role in the design, development, manufacture, testing,

importation, marketing, or sales of the accused products, in Texas or otherwise. Because Samsonite International does not have any contacts with Texas, this controversy cannot and does not arise out of or relate to Samsonite International' contacts with Texas.

### 3. Texas Has No General Jurisdiction Over Samsonite International

A court may exercise general jurisdiction over the defendant if the defendant has engaged in "continuous and systematic contacts" with the forum state. *Freudensprung*, 379 F.3d at 343. General jurisdiction requires affiliations so continuous and systematic as to render the foreign company at home in the forum state. *Daimler*, 571 U.S. at 133. Where a defendant is not incorporated in a state, does not have a principal place of business there, and a small percentage of the defendant's sales occur in that state, exercise of general jurisdiction is improper. *Id.* at 139.

As discussed above, Samsonite International's contacts with the state of Texas are minimal, if any, and certainly do not rise to the level of "continuous and systematic." Samsonite International is not incorporated in Texas. It maintains no offices in Texas, much less a principal place of business. Samsonite International also employs no one in the state of Texas and does not conduct regular business activity with any Texas entity. Although Samsonite websites can be accessed by people in Texas, the Fifth Circuit has explained that the maintenance of a website accessible in Texas is not enough to maintain general jurisdiction. *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002). Taken together, these contacts are not enough to make Samsonite International at home in Texas. Accordingly, this Court does not have general jurisdiction over Samsonite International.

### 4. Exercising Jurisdiction Does Not Comport With Traditional Notions Of Fair Play And Substantial Justice

Since Samsonite International lacks minimum contacts with Texas sufficient to sustain personal jurisdiction, the Court need not consider whether exercising jurisdiction over Samsonite

International comports with traditional notions of fair play and substantial justice.  *See Wild*, 2019 WL 653220, at *3.  However, even if the Court determines that Samsonite International does have minimum contacts with Texas, exercising jurisdiction over Samsonite International would not comport with traditional notions of fair play and substantial justice.

Courts examine four factors in determining whether exercise of jurisdiction comports with traditional notions of fair play and substantial justice: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies and advancement of fundamental social policies.  *Burger King*, 471 U.S. at 477.  None of these factors counsel toward exercising jurisdiction here.

First, the burden to Samsonite International to litigate in Texas is severe.  Samsonite International is a Luxembourg company, and its only office in the United States is in Massachusetts, in a different time zone and requiring hours of travel.  None of its directors or employees are in Texas.  Samsonite International would have to expend significant time and expense litigating this lawsuit in Texas.

Second, while Texas has an interest in in adjudicating disputes involving products sold in its retail stores, the interest is not any stronger than that of other states or countries where Samsonite International's products are sold.

Third, Swissdigital has an interest in effective relief, but as it alleges in its complaint, it is a Delaware company with an address (presumably its principal place of business) in New York. Dkt. No. 13 at ¶ 2.  Considering its address in New York, it would likely be more convenient for Swissdigital to litigate in Massachusetts (which is geographically closer) than in Texas.

14

Finally, the interstate judicial system's interest in obtaining most efficient resolution of controversies and advancement of fundamental social policies is better served by adjudicating this dispute in Massachusetts, where Samsonite International has a headquarters and where Samsonite International's subsidiaries involved in the design, marketing, and sales of the accused products are located.  No interest is served by litigating this case in Texas, which has no connection to Samsonite International, Swissdigital, or any of the facts alleged in the Amended Complaint.

Because exercising jurisdiction over Samsonite International does not comport with traditional notions of fair play and substantial justice, the Court should decline to exercise jurisdiction here.

## C.   Alternatively, This Case Should Be Transferred To D. Mass.

Even if the Court finds that it can properly exercise personal jurisdiction over Samsonite International, it should transfer the case because D. Mass. is a clearly more convenient venue.  The private and public interest factors all favor transfer here.

### 1.   Venue Is Proper In D. Mass.

As a threshold requirement, it must be true that Swissdigital could have filed this lawsuit against Samsonite International in the transferee district.  A patent infringement case may be brought in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).

Although Samsonite International is a foreign entity and does not reside in the United States, it has a joint headquarters in Mansfield, Massachusetts.  *See* https://corporate.samsonite.com/en/contact-us.html.  The accused Quadrion products were designed by Samsonite LLC in Mansfield, Massachusetts.  Livingston Decl. at ¶ 6-7.  Accordingly, D. Mass. is an appropriate transferee venue, and the threshold requirement is met.

###### 2.      The Private Interest Factors Support Transfer.

###### a.      The Relative Ease Of Access To Sources Of Proof Is Far Greater In D. Mass.

The relative ease of access to sources of proof is far greater in D. Mass.  "In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored."  *Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 13, 2019).  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."

As explained above, Samsonite International's only physical address in the United States is its joint headquarters in Mansfield, Massachusetts—also the location of Samsonite LLC, which designed the accused Quadrion products.  Livingston Decl. at ¶ 7.  The products are manufactured by a third-party supplier in Asia.  *Id.* at ¶ 8.  The products are imported into the United States by Samsonite LLC.  *Id.* at ¶ 9.  Unsurprisingly, then, most, if not all, of the documents regarding the design, development, marketing, and sales of the Quadrion products are either with Samsonite LLC in Massachusetts, or overseas.  *Id.* at ¶ 10-11.

Like Samsonite International, Swissdigital does not appear to have any meaningful presence in Texas.  Swissdigital's only address pled in the Amended Complaint is in Buffalo, New York.  The sole inventor of the four patents asserted by Swissdigital in this case, Li Zhijian, is listed in the patents as located in China.  Any relevant documents Swissdigital has are presumably located at its New York address or in China with the inventor of the patents, not in Waco.

There are **_no_** relevant documents or repositories in Texas, while documents relevant to Swissdigital's claims are solely in Massachusetts or abroad. This factor weighs in favor of transfer.

### b.      The Availability Of Compulsory Process Favors Transfer.

Transfer is favored when a transferee forum has absolute subpoena power over a greater number of third-party witnesses.  *In re Hoffman-La Roche, Inc*., 587 F.3d 1333, 1337-38 (Fed. Cir. 2009); *Genentech*, 566 F.3d at 1345; *Hulu*, 2021 WL 3278194, at *4 n.2.  The ability to compel live trial testimony is crucial for evaluating a witness's testimony.  *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).  This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue."  *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) ("*Apple III*").

As discussed above, the third-party suppliers involved with the manufacture of the accused Quadrion products and the inventor of the asserted patents are all located in Asia.  Samsonite International is not aware of a single third-party witness within this Court's subpoena power.  This factor therefore weighs strongly in favor of transfer.  *Genentech*, 566 F.3d at 1345 (concluding that compulsory-process factor "weighs in favor of transfer" where "there is a substantial number of witnesses within the subpoena power of the [transferee venue] and no witness who can be compelled to appear in the [transferor venue]").

### c.      The Willing Witnesses Are Overwhelmingly In D. Mass.

The Federal Circuit has repeatedly recognized the importance of employee witnesses residing in the transferee venue, the convenience of which a district court may not disregard.  *See, e.g.*, *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *4 (Fed. Cir. Oct. 6, 2021); *In re Juniper Networks, Inc.*, No. 2021-156, 2021 WL 4519889, at *2 (Fed. Cir. Oct. 4, 2021) ("*Juniper II*").  In fact, the "convenience of witnesses is the single most important factor in the transfer analysis."  *Fintiv*, 2019 WL 473678, at *6.  "[T]he convenience of the witnesses is best served if the court can 'minimize the time when [witnesses] are removed from their regular work or home

responsibilities.'"  *NetScout*, 2021 WL 4771756, at *3 (second alteration in original) (quoting *Volkswagen I*, 371 F.3d at 205).

All Samsonite witnesses relevant to the accused Quadrion products are either in Massachusetts or abroad.  The individuals responsible for the design, development, quality assurance, manufacturing, marketing, and sales of the Quadrion products reside mainly in Massachusetts.  Livingston Decl. at ¶ 10.  These witnesses would have to spend days away from home and work if trial were to take place in Texas, as opposed to a few hours if the trial takes place in D. Mass.  This travel burden is not insignificant and has often been cited as a key reason why transfer is appropriate.  *E.g., Volkswagen II*, 545 F.3d at 317.  This length of travel also imposes additional burdens beyond travel time, such as meal and lodging expenses.  *Volkswagen I*, 371 F.3d at 204-05; *see also In re Acer America Corp*., 626 F.3d 1252, 1255 (Fed. Cir. 2010). D. Mass. is a clearly more convenient venue for these witnesses.

Meanwhile, there is not a single anticipated witness or relevant employee in Texas. Swissdigital—a Delaware company with an address in New York—has no apparent operations or witnesses in Texas.  In situations like this, where most of the likely witnesses are in the transferee district, this factor weighs in favor of transfer.  *See Apple I*, 979 F.3d at 1341-42; *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 (Fed. Cir. Sept. 25, 2018); *Genentech*, 566 F.3d at 1343; *Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-CV-141-LY, 2017 WL 4547916, at *3 (W.D. Tex. Oct. 11, 2017).

### d.   All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

This factor is neutral at worst.  "[T]he existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc*., No. 6:11-cv-655, 2013 WL 9600333, at *5

(E.D. Tex. Mar. 21, 2013).  "[T]he ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer."  *In re Apple, Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020) ("*Apple III*").  Here, however, there are no related actions, making this factor neutral.

### 3.    The Public Interest Factors Also Support Transfer.

#### a.    D. Mass. Has An Interest In Having Localized Interests Decided At Home.

"Local interests are not a fiction" and deserve due consideration in the transfer analysis. *See Samsung*, 2 F.4th at 1380.  D. Mass. has a strong local interest in this matter because it is the location with the most "significant connections between [the venue] and ***the events that gave rise to [the] suit***."  *Apple III*, 979 F.3d at 1344-45 (original emphasis); *see also Dish Network*, 2021 WL 4911981, at *3; *Juniper I*, 14 F.4th at 1319-20.  Indeed, "[t]he most relevant considerations are . . . where the design, development, and sale of the accused products occurred."  *Open Text v. Alfresco*, No. 6:20-cv-0920-ADA, Dkt. 152, slip op. at 18 (W.D. Tex. Nov. 22, 2021).  Here, the research, design, implementation, and marketing of the accused Quadrion products were performed primarily by—and have taken place at—Samsonite LLC in Mansfield, Massachusetts. Relevant witnesses are overwhelmingly in D. Mass.  Furthermore, "[t]he fact that infringement is alleged in the [WDTX] gives that venue no more of a local interest than… any other venue." *Samsung*, 2 F.4th at 1380; *see In re Google LLC*, 855 Fed. Appx. 767, 768(Fed. Cir. 2021).

Because this suit "calls into question the work and reputation of several individuals residing" in D. Mass. where the Accused handbags were designed and developed, D. Mass.'s interest in this matter is "self-evident."  *Hoffman-La Roche*, 587 F.3d at 1336, 1338; *see also Apple III*, 979 F.3d at 1341-42; *DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201,

at *4 (W.D. Tex. June 13, 2014) (factor favored transfer because design and development activity occurred in Cupertino).  D. Mass. thus has a stronger local interest than this district.

### b.  Court Congestion Does Not Favor Keeping This Case In Texas.

"[T]he prospective speed with which [a] case might be brought to trial" is not "of particular significance" in the transfer analysis.  *Samsung*, 2 F.4th at 1380; *Hulu*, 2021 WL 3278194, at *5. At worst, this factor is neutral.  The Federal has "repeatedly noted" that "a proper analysis… looks to the number of cases per judgeship and the actual average time to trial rather than aggressively scheduled trial dates."  *Juniper II*, 2021 WL 4519889, at *3 (citing *Juniper I*, 14 F.4th at 1322); *see also Apple III*, 979 F.3d at 1343.  Following this analysis, there are no significant differences in time-to-trial statistics between this district and D. Mass.  If anything, D. Mass. appears to be less congested with open patent cases.  Specifically, the number of open patent cases before Judge Alan D. Albright *alone* as of May 23, 2023 was 541.  *See* Ex. C.  By contrast, the number of open patent cases in the entirety of D. Mass. as of May 23, 2023 was 61.  *See* Ex. D.  Accordingly, this factor is neutral at worst.

### c.  Familiarity With the Governing Law and Conflicts Of Law

The last two factors are neutral.  There are no perceived conflicts of law and both districts are equally qualified to apply patent law.  *See In re TS Tech USA Corp*., 551 F.3d 1315, 1320-21 (Fed. Cir. 2008).

## V.  CONCLUSION

For the reasons explained above, Samsonite requests that the Court enter the proposed order submitted herewith dismissing Swissdigital's complaint, or, alternatively, transfer this case to the District of Massachusetts.

20

Date: June 20, 2023

Respectfully submitted,

*/s/Neil J. McNabnay*
Neil J. McNabnay
njm@fr.com
Texas Bar No. 24002583
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

**ATTORNEY FOR DEFENDANT
SAMSONITE INTERNATIONAL S.A.**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 20, 2023 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Neil J. McNabnay*
Neil J. McNabnay