**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |
|---|---|
| SWISSDIGITAL USA CO., LTD., | |
| *Plaintiff,* | Civil Action No. 6:23-cv-00196-ADA |
| v. | **JURY TRIAL DEMANDED** |
| SAMSONITE INTERNATIONAL S.A., | |
| *Defendant.* | |

**SWISSDIGITAL USA CO., LTD.'S RESPONSE IN OPPOSITION TO SAMSONITE
INTERNATIONAL S.A.'S MOTION TO DISMISS PLAINTIFF'S
<u>AMENDED COMPLAINT</u>**

**Table of Contents**

I.    BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.   PERSONAL JURISDICTION OVER DEFENDANT IS PROPER UNDER FED. R. CIV.
      P. 4(k)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

      A.    Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            1.    Plaintiff alleges sufficient facts to give rise to claims under federal law. . 7

            2.    Based on Defendant's representations, it is not subject to personal
                  jurisdiction in the transferee venue or elsewhere. . . . . . . . . . . . . . . . . . . . 7

            3.    The federal court's exercise of personal jurisdiction comports with due
                  process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            4.    Jurisdictional discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.  DEFENDANT'S MOTION TO TRANSFER THE CASE TO THE DISTRICT OF
      MASSACHUSETTS SHOULD BE DENIED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      A.    Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      B.    Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

            1.    Defendant has not met its burden of establishing that the case might have
                  been brought in the transferee venue. . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            2.    Defendant fails to demonstrate that D. Mass. is "clearly more
                  convenient" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

                  i.      Ease of Access to Sources of Proof. . . . . . . . . . . . . . . . . . . . . . . .14

                  ii.     Availability of Compulsory Process. . . . . . . . . . . . . . . . . . . . . . . 16

                  iii.    Cost of Attendance for Willing Witnesses. . . . . . . . . . . . . . . . . .16

                  iv.     Other Practical Problems. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

                  v.      Administrative Difficulties Flowing from Court Congestion. . . . 18

                  vi.     Local Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

                  vii.    Remaining Public Interest Factors. . . . . . . . . . . . . . . . . . . . . . . .20

IV.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

## Table of Authorities

**Cases**

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337 (5th Cir. 2004) . . . . . . . . . . . . . . . . 12

*Akoloutheo, LLC v. Sys. Soft Techs., Inc.*,

        No. 4:20-CV-985, 2021 WL 1947343 (E.D. Tex. May 14, 2021) . . . . . . . . . . . . . . . . . . 6

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) . . . . . . . . . . . . 9

*Campbell Pet Co. v. Miale*, 542 F.3d 879 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373 (Fed. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . 6

*Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364 (5th Cir. 2010) . . 8

*Hoffman v. Blaski*, 363 U.S. 335 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Google LLC*, 58 F.4th 1379 (Fed. Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Hoffman-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Stingray IP Sols., LLC,* 56 F.4th 1379 (Fed. Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 19

*In re Vistaprint Ltd.*, 628 F.3d 1342 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Volkswagen, Inc.*, 545 F.3d 304 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360 (Fed. Cir. 2004) . . . . . . . . . . . 6

*Jacobs Vehicle Sys., Inc. v. Pac. Diesel Brake Co.*, 424 F. Supp. 2d 388 (D. Conn. 2006) . . . . . 6

*Kahn v. General Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Kajeet, Inc. v. Trend Micro, Inc.*,

        No. 6:21-CV-389-ADA, 2022 WL 126490 (W.D. Tex. Jan. 12, 2022) . . . . . . . . . . 16, 19

*Marble VOIP Partners LLC v. RingCentral, Inc.*,

        No. W-22-CV-00259-ADA, 2023 WL 3938480 (W.D. Tex. June 9, 2023) . . . . . . . . . 12

*Monterey Rsch., LLC v. Broadcom Corp.*,

        No. W-21-CV-00541-ADA, 2022 WL 526240 (W.D. Tex. Feb. 21, 2022) . . . . . . . . . 18

*Motion Offense, LLC v. Google LLC*,

        No. 6:21-cv-00514-ADA, ECF No. 79 (W.D. Tex. Oct. 4, 2022) . . . . . . . . . . . . . . . . . 18

*ParkerVision, Inc. v. Intel Corp.*,

        No. 6:20-CV-00108-ADA, 2021 WL 401989 (W.D. Tex. Jan. 26, 2021) . . . . . . . . . . . . 15

*Promotions, Inc. v. Cousteau,* 495 F.2d 483 (5th Cir.1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 15

*Salazar v. HTC Corp*., 2017 WL 8943155 (E.D. Tex. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sinox Co. Ltd. v. YiFeng Mfg. Co*.,

     No. 6:21-CV-01022-ADA, 2023 WL 2769440 (W.D. Tex. Mar. 22, 2023) . . . . . . . . . 5, 9

*Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*SVV Tech. Innovations, Inc. v. Asustek Computer Inc.*,

     No. 6:22-CV-311-ADA, 2023 WL 2764761 (W.D. Tex. Apr. 3, 2023) . . . . . . . . . . 18, 19

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,

     563 F.3d 1285 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*VLSI Tech. LLC v. Intel Corp.*,

     No. 6:19-CV-00254-ADA, 2019 WL 8013949 (W.D. Tex. Oct. 7, 2019) . . . . . . . . . . . .16

*Yillio, Inc. v. Map Labs Ltd.*,

     No. 6:21-CV-00482-ADA, 2022 WL 17904537 (W.D. Tex. Dec. 13, 2022) . . . . . . . . . . .6

**Statutes**

Fed. R. Civ. P. 4(k)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 9

35 U.S.C. § 271. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..*passim*

28 U.S.C. §1404. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

Plaintiff Swissdigital USA Co., Ltd. ("Swissdigital" or "Plaintiff") files this response in opposition to Samsonite International's ("Samsonite" or "Defendant")'s Motion to Dismiss its Amended Complaint.  As set forth below, Swissdigital respectfully requests that the Court deny Defendant's Motion in its entirety.

## I.      BACKGROUND

Swissdigital is a Delaware limited liability company headquartered in New York. Am. Compl. (Dkt. No. 13) ¶ 2. Swissdigital sells high-tech intelligent backpacks and other innovative consumer goods throughout the United States, including within this District.  *Id.* at ¶ 4.  Samsonite is the world's largest travel luggage company.   Samsonite, together with its consolidated subsidiaries, designs, manufactures, sources, and distributes products including luggage, bags, and accessories among other products.  Samsonite and its consolidated subsidiaries sell their products throughout the world through a variety of wholesale distribution channels, through their company-operated retail stores, and e-commerce.  Am. Compl. at ¶ 9.

Swissdigital sued Samsonite for patent infringement of two of its patents on March 14, 2023 (Dkt. No. 1) and later amended its complaint to assert two additional patents (four total) on March 30, 2023: United States Patent Nos. 10,574,071 ("the '071 Patent"), 10,931,137 ("the '137 Patent"), 10,931,138 ("the '138 Patent"), and 11,601,009 ("the '009 Patent") (collectively, the "Patents-in-Suit").  Am. Compl. at ¶ 4.

### A.  Samsonite heads and directs the activities giving rise to claims in this action

It is undisputed that "the worldwide Samsonite Group is headed by Samsonite International S.A."  Livingston Decl. at ¶ 13.  Defendant consistently advertises that it is "a leader in the global lifestyle bag industry and is the world's best-known and largest travel luggage company."  *See, e.g.*, **Ex. A** at 3.  According to Defendant's corporate literature, "[w]ith 1,096 company-owned

retail stores in 39 countries by the end of 2020, as well as a variety of wholesale distribution channels and retail websites, Samsonite is truly a global company.  We own and operate three primary manufacturing sites in Belgium, Hungary[,] and India, as well as a small site in Mexico and 19 distribution centers worldwide." Am. Compl. at ¶ 10.  Defendant benefits significantly from its involvement in the U.S. market from which it derives substantial profits and solicits investments based on the sales of Samsonite luggage and backpacks including the accused products throughout the world, including in the U.S.  *Id.* at ¶ 28.

In its most recent annual report, Defendant bolsters its involvement at a product level by listing various of its strategies and objectives including: "continu[ing] to invest in research and development to develop...advanced manufacturing processes, exciting new designs and more sustainable collections, as well as innovative functionalities that deliver real benefits to consumers"; "increase[] investment in marketing to support the company's brands and initiatives"; and "continu[ing] to leverage the Company's [defined by Defendant as Samsonite International S.A.] regional management structure, distribution expertise and marketing engine to extend its brands into new markets and penetrate deeper into existing channels."  **Ex. A** at 3-4.  The annual report describes its financial statements as "financial statements of the Company [i.e. Samsonite International]" and presents the financial success of the entire company (including its subsidiaries) to its investors as belonging to Samsonite International.  Samsonite International claims that its 2022 U.S. sales totaled US$1,058.6 million dollars.  *Id.* at  52, 57.

While Defendant claims to be a holding company, Samsonite has a board of directors and executives, is publicly traded on the Hong Kong stock exchange, and directs the strategy and operations of its wholly owned subsidiaries.  *Id.* at 2-10.  Defendant's own CEO describes his functions as is being "responsible for the Company's overall strategic planning and for **managing**

the Group's operations." **Ex. G**.  Defendant regularly provides shareholders with updates, including on a product level, and issues quarterly and annual reports and other presentations. **Ex. B**.  Defendant admits that it indeed has corporate functions and states that these functions are performed by its affiliate companies including its subsidiaries and third parties under contract with Samsonite.  Declaration of John B. Livingston (Dkt. No. 19-6) ("Livingston Decl.") at ¶ 15. Defendant's CFO Reza Taleghani has also admitted to a direct relationship with Amazon in the U.S.: "Amazon is one of our largest wholesale customers in the U.S…Amazon actually picks up the orders in Asia from us as opposed to waiting for the ship to arrive in the U.S."  Ex. K. at 12. Similarly, Defendant outsources operation of its online store to a third party, Direct Marketing Ventures.  Livingston Decl. at 16.

### B.  Samsonite's admissions and public information supports Plaintiff's claims

Consistent with Samsonite International's representations, Plaintiff alleges that "Samsonite International directs and controls the activities of its consolidated subsidiaries..." that "at all relevant times Defendant was in the business of offering for sale and selling its bag and luggage products in the United States"; and that Defendant directs and controls Samsonite-owned retail stores, including those in the United States and its website.  Am. Compl. ¶¶ 11-13.  Plaintiff demonstrates that these acts give rise to direct infringement and Defendant's motion does not challenge Plaintiff's allegations that at least its Quadrion products practice the limitations of claims of the Patents-in-Suit.  *See e.g., id*. at ¶¶ 41-46, 59-65, 78-82, 95-101.

Plaintiff also pleads that Defendant indirectly infringes the Patents-in-Suit.  *See, e.g., id*. at ¶¶ 51-55, 70-74, 87-91.  Plaintiff alleges that Defendant "contributorily infring[es] the Patents-in-Suit by providing, including through its consolidated subsidiaries, a staple article to (1) retailers who, in turn, sell and offer for sale the infringing products in Texas; and (2) customers in Texas

who, in turn, use the infringing products." *See, e.g.*, Am. Compl. at 27.  Plaintiff also alleges that Defendant induces its U.S. subsidiaries and other U.S. third parties to infringe the Patents-in-Suit and inducing customers to use the products in an infringing manner." *See, e.g.*, *id.* at ¶¶ 33, 51, 70, and 87.

Samsonite has stated that "we will continue to focus on product innovation, offering exciting new products across all our brands and markets, as well as working closely with our suppliers to ensure a healthy inventory position to meet consumer demand in 2023" and "we also intend to raise our investment in marketing in 2023 to support new product launches."  **Ex. A** at 28.  Mr. Gendreau also touts Defendant's tradition of innovation: "one of Samsonite's key long-term competitive advantages *is our strong and enduring tradition of product innovation* and excellence."  *Id.* at 25.

### C. Samsonite's motion fails to address other products that use Plaintiff's patented technology

Plaintiff's Amended Complaint alleges that Samsonite "bag and luggage products **including, but not limited to**, the Quadrion Bags" directly and indirectly infringe the Patents-in-Suit.  *See, e.g.*, Am. Compl. at ¶ 30. Numerous other products sold by Samsonite and its subsidiaries ebags, High Sierra, and American Tourister that practice Plaintiff's patents will be disclosed in Plaintiff's infringement contentions including, but not limited to the following: SXK Prime Expandable Backpack, Samsonite Pro Standard Backpack, Tectonic Sweetwater Backpack, Carrier Tucker Backpack, Samsonite SXK Carry-On Expandable Spinner, Samsonite Pro Carry-On Expandable Spinner, High Sierra Backpack Business Proslim USB Laptop Bag Mercury Heather Black; ebags Pro Slim USB Laptop Backpack, and American Tourister Star Wars Softside Upright Luggage, R2D2, Carry-On 18-Inch.

II.     **PERSONAL JURISDICTION OVER DEFENDANT IS PROPER UNDER FED. R. CIV. P. 4(k)(2)**

This Court has personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(2).

A.      **Applicable Law**

Rule 4(k)(2) establishes that a court has personal jurisdiction over a defendant in a federal claim outside of state-court jurisdiction if "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2); *Sinox Co. Ltd. v. YiFeng Mfg. Co*., No. 6:21-CV-01022-ADA, 2023 WL 2769440, at *2 (W.D. Tex. Mar. 22, 2023). A court may exercise jurisdiction under Rule 4(k)(2) when three requirements are met: (1) the claim arises under federal law; (2) the defendant is not subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction must comport with due process. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1290 (Fed. Cir. 2009); *Sinox Co. Ltd. v. YiFeng Mfg. Co.*, No. 6:21-CV-01022-ADA, 2023 WL 2769440, at *2 (W.D. Tex. Mar. 22, 2023).

Under 35 U.S.C. § 271 (a) a party is liable for direct patent infringement if it, without permission, makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention. Under 35 U.S.C. § 271 (b) a party is liable for inducement of patent infringement if it actively induces infringement of a patent. Under 35 U.S.C. § 271 (c) a party is liable for contributory patent infringement if it offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially

made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

Under 35 U.S.C. §271 (b) and (c) a parent company may be liable for the infringing activities of its subsidiaries even if it is not an alter ego and the subsidiary is not sued. *See Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1375 (Fed. Cir. 2004); *Jacobs Vehicle Sys., Inc. v. Pac. Diesel Brake Co.*, 424 F. Supp. 2d 388, 393 (D. Conn. 2006) (explaining that a parent company may be liable for inducing its subsidiary to commit patent infringement regardless of whether it is the subsidiary's alter ego); *see also*, *Akoloutheo, LLC v. Sys. Soft Techs., Inc.,* No. 4:20-CV-985, 2021 WL 1947343, at *2 (E.D. Tex. May 14, 2021) (holding that a parent may be liable as a joint tortfeasor for direct infringement, inducement, or contributory infringement even where the subsidiary is not sued); *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 492 (5th Cir.1974) ("an agency relationship may justify a finding that a parent corporation 'does business' in a jurisdiction through its subsidiary's local activities").

"When the district court's determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff usually bears only a prima facie burden." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). "To make that showing, [the plaintiff] need only demonstrate facts that, if true, would support jurisdiction over the Defendant[]." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008). "Unless directly contravened, [the plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Id.*; *Yillio, Inc. v. Map Labs Ltd.*, No. 6:21-CV-00482-ADA, 2022 WL 17904537, at *4 (W.D. Tex. Dec. 13, 2022).

        **1.**        **Plaintiff alleges sufficient facts to give rise to claims under federal law**

All of Plaintiff's claims in this case arise out of federal law.  Plaintiff has alleged that Samsonite International has infringed directly under 35 U.S.C. § 271 (a).  Additionally, Plaintiff has alleged that Samsonite has indirectly infringed under 35 U.S.C. § 271 (b) and (c).  *See, infra*, discussion below section III(A)(3).

        **2.**        **Based on Defendant's representations, it is not subject to personal jurisdiction in the transferee venue or elsewhere**

Defendant's motion does not challenge Plaintiff's allegations that personal jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2).  On the one hand, Defendant presents a declaration of John B. Livingston, an employee of Samsonite LLC, that Defendant is a holding company and engages in no activities relating to the accused products that are subject to the claims in this case.  Livingston Decl. at ¶¶ 9, 13-16. On the other hand, in its motion to transfer under §1404, where the burden is on Defendant to produce evidence that D. Mass is the proper venue, Defendant presents no evidence that D. Mass has jurisdiction or venue, and that the case could have been brought there, and simply makes a conclusory statement that D. Mass is an appropriate transferee venue.

The Federal Circuit, in *In re Stingray IP*, recently resolved a district court split by holding that jurisdiction conferred by Federal Rule of Civil Procedure Rule 4(k)(2) cannot be defeated solely by a foreign patent infringement defendant's unilateral post-suit consent to transfer the case to another jurisdiction. *In re Stingray IP Sols., LLC,* 56 F.4th 1379, 1381 (Fed. Cir. 2023).  There, the Federal Circuit held that the Eastern District of Texas erred in transferring a patent infringement suit filed against foreign defendants based on defendants' representations that the Central District of California had both proper jurisdiction and venue and consenting to transfer there. *Id*.  The Federal Circuit reasoned that a foreign defendant "cannot simply use a 'unilateral

statement of consent' to preclude application of Rule 4(k)(2) and 'achieve transfer into a forum it considers more convenient (or less convenient for its opponent).'" *Id*. at 1385.

Samsonite cannot preclude the application of Rule 4(k)(2). By its admissions, Defendant fails to demonstrate that this case could have been brought in the District of Massachusetts. *See infra* section III(B)(1)**.**  Indeed, its Motion and Declaration of John B. Livingston, supports the opposite conclusion.  Defendant takes the position that it is merely "**a holding company**" and the activities of its subsidiaries cannot support jurisdiction.  Mot. at 7-8.  Defendant claims that it does not conduct any activities in the U.S., let alone "design, manufacture, sourcing, distribution, and sale [of the accused products]."  Mot. at 8.  Defendant claims that it does not direct or control the activities of its subsidiaries and "**is not involved in any United States operations**, much less at a product level."  *Id.*  Defendant claims that it "**does not sell any products**" and does not "advertise[], sell[], and conduct[] business throughout the United States."  Mot. at 9.  Defendant claims to "not play any role in the design, development, manufacture, testing, importation, marketing, or sales of the accused products, in Texas **or otherwise**."  Defendant further claims that it has no employees in the U.S.  Livingston Decl. at ¶ 15.

Arguing for transfer, Defendant makes two statements on page 6 and 15, neither of which establish that there is jurisdiction and venue in the District of Massachusetts and the case could have been brought there.  *See infra* section III(B)(1).  Accordingly, by Defendant's admissions, it has not established that this case could have been brought in the District of Massachusetts, therefore this element is satisfied.

### 3.   The federal court's exercise of personal jurisdiction comports with due process

The third prong requires two inquires: (1) whether a defendant has established "certain minimum contacts" with the forum, and (2) whether the exercise of jurisdiction comports with

"traditional notions of fair play and substantial justice." *Sinox Co.,* 2023 WL 2769440, at *3 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  This analysis "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Id.*  Thus, Rule 4(k)(2) serves as a federal long-arm statute.  *Id.*  The Federal Circuit has explained that it is a "rare situation" where fairness prohibits exercise of personal jurisdiction. *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1568 (Fed. Cir. 1994).

The minimum contacts analysis for specific jurisdiction exists includes assessing whether "(1) the nonresident defendant purposefully avails itself of the privileges of conducting activities in the forum state; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 369 (5th Cir. 2010).

Plaintiff alleges under section 271 (a) that Samsonite International directly infringes the Patents in Suit.  Plaintiff alleges that "Defendant has purposefully directed its activities at residents of the United States through the sale of the infringing products in the United States via its Samsonite.com Website, consolidated subsidiaries, and U.S. retailers." It is immaterial that the website is operated by Samsonite International subsidiaries and/or other agents.  It is set up, managed, and controlled at the direction of Samsonite International and Samsonite International has admitted that it uses its subsidiaries and third parties to carry out its operations.  *See* Livingston Decl. at 15.

Samsonite operates (or directs its subsidiaries to operate) retail stores all throughout the country.  Plaintiff's Amended Complaint also avers that "Defendant has also purposefully availed itself of the financial benefits of the United States through its direction, supervision, and control

of the use in commerce of the Samsonite trademarks, from which it derived substantial profits." Defendant's public representations support Plaintiff's allegations. *See supra* at p. 4-5.

Plaintiff also alleges indirect infringement by Samsonite International under 35 U.S.C. § 271 (b) and (c). Plaintiff's Amended Complaint alleges that the accused products are sold in retail stores throughout the U.S. and through Samsonite's website. *See* Am. Compl. at ¶¶ 9, 10, 12, 14, 15, 27. Plaintiff alleges that Defendant knowingly induced U.S. retailers to sell and to offer for sale the infringing products and induced U.S. customers to use the products in an infringing manner. *Id.* at ¶ 28. Plaintiff alleges that "Defendant knowingly and specifically intended third parties, including, but not limited to, its consolidated subsidiaries, to infringe" the claims of the Patents-in-Suit. *Id.* at ¶¶ 33, 51, 70, 87. Plaintiff further alleges that Defendant "contributorily infringing the Patents-in-Suit by providing, including through its consolidated subsidiaries, a staple article to (1) retailers who, in turn, sell and offer for sale the infringing products in Texas; and (2) customers in Texas who, in turn, use the infringing products." Am. Compl. at ¶ 27. Defendant is aware that at least the Quadrion products infringe the Patents-in-Suit yet, while fully able to stop their sale, continue to direct and benefit from the sale of these products. *See* Am. Compl. at ¶¶ 36, 39, 52, 55, 71,74, 88, 91. Defendant is aware that at least the Quadrion products infringe the Patents-in-Suit yet, while fully able to stop their sale, continue to direct and benefit from the sale of these products. *See* Am. Compl. at ¶¶ 36, 39, 52, 55, 71,74, 88, 91.

The exercise of jurisdiction over Defendant is consistent with due process because Plaintiff's Amended Complaint avers that Defendant has both directly and indirectly infringed the Patents-in-Suit and this gives rise to sufficient minimum contacts such that jurisdiction does not offend traditional notions of fair play and substantial justice.

### 4.     **Jurisdictional discovery**

There is at a minimum a dispute of fact over Defendant's contacts with the U.S., including with this forum.  If, however, the Court finds that Plaintiff has not made a prima facie showing that personal jurisdiction is proper, Plaintiff respectfully requests jurisdictional discovery. Consistent with this Court's Order Governing Proceedings in Patent Cases, Swissdigital requests to serve five interrogatories, ten requests for production on defendant and take and ten hours of deposition to address the information raised herein and in Swissdigital's Amended Complaint.

## III.   DEFENDANT'S MOTION TO TRANSFER THE CASE TO THE DISTRICT OF MASSACHUSETTS SHOULD BE DENIED

As set forth below, Defendant has not met its burden of demonstrating that this case should be transferred to the District of Massachusetts and therefore its motion should be denied.

### A.   Applicable Law

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit.  *In re TS Tech USA Corp*., 551 F.3d 1315, 1319 (Fed. Cir. 2008).  28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  *Id*.  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). **The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue.**  *In re Volkswagen, Inc*., 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*").  If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight."  *Action Indus., Inc. v. U.S. Fid. & Guar.*

11

*Co.*, 358 F.3d 337, 340 (5th Cir. 2004).  The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)).  The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*  Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

**The burden to prove that a case should be transferred for convenience falls squarely on the moving party**. *Volkswagen II*, 545 F.3d. at 314; *Marble VOIP Partners LLC v. RingCentral, Inc.,* No. W-22-CV-00259-ADA, 2023 WL 3938480, at *3 (W.D. Tex. June 9, 2023). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is **clearly** more convenient. *Volkswagen II*, 545 F.3d. at 314–15 (emphasis added).  Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id.* When the proposed transferee forum "is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 315.

**B.      Argument**

Defendant has failed to satisfy its elevated burden of proving that the District of Massachusetts is clearly more convenient than the Western District of Texas.  Upon viewing the facts in the proper light, the difference in convenience between the two venues weighs against transfer.  As such, this Court should deny Defendant's Motion to Transfer.

> **1.      Defendant has not met its burden of establishing that the case might have been brought in the transferee venue**

Defendant has not established that this case could have been brought in Massachusetts and therefore its motion to transfer must be denied.  In its brief, Defendant asserts two separate bases for why this case might have been brought in the District of Massachusetts.  First, Defendant argues that D. Mass. is a proper venue because Samsonite *is not a Texas corporation* and *is not headquartered in Texas*.  Mot. at 6.  This argument is without merit.  Whether Samsonite is a Texas corporation/is headquartered in Texas is not relevant to whether Massachusetts is a proper venue. Second, Samsonite argues that the case might have been brought in Massachusetts because Samsonite has a joint headquarters there and one of the accused products was designed by its subsidiary, Samsonite LLC, there.   Again, this fails to establish that venue is proper in the transferee venue.  As Samsonite points out, a patent infringement case may be brought in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement **and** has a regular and established place of business."  Mot. at 15 (emphasis added). Samsonite concedes that it is a foreign entity and does not reside in the U.S.  Therefore, it must establish both that it has a regular and established place of business **and** that it has committed acts of infringement there.  Samsonite has presented evidence that neither of these are true.  Despite calling Massachusetts a "joint headquarters" in some instances, Defendant also claims it has no employees there, is a holding company, and does not partake in any acts that could give rise to

13

infringement in the U.S. (i.e. sales, offers for sales, manufacture, or importation into the U.S. any of the accused products).

Additionally, even if the Quadrion products are designed by a Samsonite subsidiary in Massachusetts, product design by itself is not an act that gives rise to an infringement claim. As Samsonite has failed to meet its burden of establishing that D. Mass. is an appropriate transferee venue, the threshold requirement of section 1404(a) has not been met. Accordingly, Defendant's arguments with respect to convenience should be rejected.

        2.        **Defendant fails to demonstrate that D. Mass. is "clearly more convenient"**

Even if Defendant had established that D. Mass. is a proper venue, the case should not be transferred because Defendant fails to satisfy its elevated burden of proving that the alternative venue is clearly more convenient. As discussed below, the private and public interest factors relevant to this analysis weigh against transfer or are neutral, making the difference in convenience negligible between the two venues.

        i.        **Ease of Access to Sources of Proof**

While Defendant argues for transfer to Massachusetts, Defendant also concedes that it does not have any employees in the U.S. Defendant further concedes that documents relevant to one of the products accused of infringement in this case are spread all over the world. Defendant has offices in Luxembourg, Hong Kong, and Massachusetts. Livingston Decl. at ¶ 12. Its bags and luggage products are manufactured primarily in Asia. *Id*. at ¶¶ 8-11. The USB components are produced by a different supplier in Asia. *Id*. at 8. Because Defendant's documents are all over the world, the first private interest factor is neutral. Moreover, Defendant's briefing addresses only one product line (Quadrion) out of their products that include the Accused USB ports. Thus, even if the Quadrion were designed in Massachusetts and Asia, Samsonite designers of other

products (and their documents relating to design), including Nobuo Maeda (Singapore), Carlos Calderon (Mexico), Erik Sijmons (Belgium), are located all over the world. *See* Ex. D-F. Samsonite International CEO Kyle Gendreau has also recently described Singapore as a "key hub for product and brand development on a global stage." Ex. C at 5-6.

This Court had noted that the Fifth Circuit has indicated a shift in the analysis in this factor, particularly with respect to electronic documents. *SVV Tech. Innovations, Inc. v. Asustek Computer Inc.*, No. 6:22-CV-311-ADA, 2023 WL 2764761, at *7 (W.D. Tex. Apr. 3, 2023). This Court has further held that the location of physical evidence is more important to this analysis than the location of where electronic documents are typically accessed. *Id.* To properly consider this factor, parties must describe with specificity the evidence they would not be able to obtain if trial were held in the alternate forum. *ParkerVision, Inc. v. Intel Corp.*, No. 6:20-CV-00108-ADA, 2021 WL 401989, at *2 (W.D. Tex. Jan. 26, 2021) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981)). Defendant has not done so and its attempts to bolster the breadth and importance of the documents located in Massachusetts should be rejected.

Further, contrary to Defendant's assertions, Samsonite is not merely a "holding company" and without a doubt, Defendant's financial documents are in its possession. It publishes its financials, including its sales in the U.S., in its annual reports and quarterly reports. It has a board of directors, is a publicly traded on the Hong Kong stock exchange, and directs the strategy and operations of its wholly owned subsidiaries. It consistently shares information about its U.S. sales and touts its investment in innovation, research and development, and marketing to its shareholders through various press releases and other communications. Additionally, Samsonite claims that its products are manufactured overseas and then imported into the U.S. Given that the most important

documents and things—documents relating to financials and the accused products themselves—in this case are located outside the country, this factor is neutral.

### ii.      Availability of Compulsory Process

Samsonite argues that the third-party suppliers of the accused Quadrion products and the inventor of the asserted patents are all located in Asia.  The district of Massachusetts has no greater subpoena power over these witnesses than the Western District of Texas does.   Additionally, Defendant has failed to identify any unwilling witnesses.  Accordingly, this factor is neutral.

### iii.      Cost of Attendance for Willing Witnesses

Defendant, traveling from Luxembourg/Asia, will be equally inconvenienced whether traveling to the Western District of Texas or the District of Massachusetts.  When a foreign witness "will be required to travel a significant distance no matter where they testify," the difference between venues is negligible.  *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009). Further, it is commonly true that, in patent litigation, party witnesses are secondary to experts. *See, e.g., Salazar v. HTC Corp.*, 2017 WL 8943155 at *5 (E.D. Tex. 2017) (crediting argument that technical testimony will likely be offered by experts, as opposed to party witnesses); *see also VLSI Tech. LLC v. Intel Corp*, No. 6:19-CV-00254-ADA, 2019 WL 8013949, at *4 (W.D. Tex. Oct. 7, 2019) ("the convenience of one key witness may outweigh the convenience of numerous less important witnesses").  Analyzing this factor proves challenging "when neither party identifies any witnesses by name or job title" who they intend to call.  *See Kajeet, Inc. v. Trend Micro, Inc.*, No. 6:21-CV-389-ADA, 2022 WL 126490, at *5 (W.D. Tex. Jan. 12, 2022).

While Defendant points to law that recognizes the importance of the convenience of employee witnesses residing in the transferee venue, Defendant takes the position that it has no employees in the U.S. let alone within the transferee venue.  And Defendant does identify by name

or job position any witnesses or witness testimony it intends to rely on.  Thus, as Luxembourg company, witnesses employed by Defendant will be equally inconvenienced by their attendance no matter the venue.

In this case, unlike in some patent infringement cases, the claim elements are **visually accessible** on the accused products.  The products do not involve any source code or hidden components.  Any testimony regarding the characteristics and features relevant to infringement will likely be addressed by the parties' experts.  Contrary to Defendant's assertions, Plaintiff's damages expert resides within this district and Plaintiff's technical expert resides in California, making Massachusetts inconvenient for both.

With respect to cost of attendance, even if travel to Boston were a shorter distance for some witnesses, it is more expensive than extended travel to Waco, given the more economical lodging and food options in Waco: (i) Boston: $309 per day for lodging, and $79 per day for meals and incidentals; (ii) Waco: $107 per day for lodging, and $64 per day for meals).  *See* Ex. G and H.

It is a certainty that Plaintiff's technical and damages experts will appear and testify at trial.  On the other hand, it is doubtful that Defendant's background fact witnesses will appear. As such, the Court should weigh primarily the known witnesses' cost of attendance, which, as discussed above, is neutral.  Accordingly, the third private interest factor is neutral.

### iv.    Other Practical Problems

The fourth private interest factor weighs against transfer.  Under the final private interest factor, courts will consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d at 314–15.  "[W]here there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, [the Federal Circuit] cannot say the

trial court clearly [abuses] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010); *SVV Tech. Innovations, Inc. v. Asustek Computer Inc.,* No. 6:22-CV-311-ADA, 2023 WL 2764761, at *9 (W.D. Tex. Apr. 3, 2023). And this Court has consistently considered parallel actions involving the same patents in its analysis under this factor. *See e.g.*, *Motion Offense, LLC v. Google LLC*, No. 6:21-cv-00514-ADA, ECF No. 79, (W.D. Tex. Oct. 4, 2022).

Here, Swissdigital has pending litigation against Wenger S.A. before this Court and Judge Albright, which involves two of the accused patents and pertains to accused backpack and luggage substantially similar to those accused in this case. The Court conducted a Markman hearing and issued an order regarding the claim construction of the claim terms of the '071 and '138 patents. Additionally, the Court conducted extensive hearings relating to discovery where it addressed claimed functionality and Wenger's accused Swissgear products similar to those accused in this case. Accordingly, the Court is familiar with the patents, claims, and technology at issue in this case.

### v.     Administrative Difficulties Flowing from Court Congestion

Because public policy strongly favors the expeditious resolution of patent litigation, the first public interest factor weighs against transfer. Public policy strongly favors the "expeditious resolution of litigation," and "[t]he Federal Circuit has even acknowledged Congress's interest in the 'quick' resolution of patent disputes." *Monterey Rsch., LLC v. Broadcom Corp.*, No. W-21-CV-00541-ADA, 2022 WL 526240, at *14 (W.D. Tex. Feb. 21, 2022) (quoting *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989)). This factor is particularly relevant where a patentee is engaged in product competition in the marketplace and is threatened in the market in a way that might add urgency to case resolution and give some significance to the time-to-trial

difference.  *Cf. In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023) (finding this factor neutral where the patent owner, unlike its predecessor, was not engaged in product competition in the market).  This Court considers the "[t]he speed with which a case can come to trial and be resolved."  *SVV Tech. Innovations, Inc. v. Asustek Computer Inc.*, No. 6:22-CV-311-ADA, 2023 WL 2764761, at *10 (W.D. Tex. Apr. 3, 2023).

The time to trial in the District of Massachusetts is longer than in the Western District of Texas.  *See* Ex. I (showing median time to trial in D. Mass is 32.8 months).  This Court has a "proven track record in expeditiously resolving patent cases specifically," being "able to bring patent cases to trial in approximately two years after the filing of the complaint." *Kajeet, Inc.*, 2022 WL 126490, at *7 (collecting cases); *SVV Tech. Innovations*, 2023 WL 2764761, at *10. This is particularly true given this Court's familiarity with the patents, claims, and technology at issue in this case.  Public policy dictates that this factor weighs against transfer.

### vi.    Local Interest

Because Defendant's products are sold nationwide and Defendant itself is a foreign corporation, the second public interest factor is neutral.  "The sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue."  *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).  Defendant's infringing products are sold throughout the United States, including in this District, the citizens of the Western District of Texas "have no more or less of a meaningful connection to this case than any other venue."  *In re TS Tech USA Corp.*, 551 F.3d at 1321 (citing *In re Volkswagen of Am., Inc.*, 545 F.3d at 318).

Samsonite maintains a substantial business presence throughout Texas, including within this District.  Even if the Court were to accept Defendant's position that it is not involved in any infringing acts in Texas because it does not directly operate its retain stores, Plaintiff alleges that

Defendant induced and is inducing its subsidiaries and customers in Texas to infringe the asserted patents. As such, there is a significant localized interest with respect to Defendant in this District. Having an interest equal to that of any other venue, this factor is neutral.

### vii.    Remaining Public Interest Factors

Swissdigital agrees with Samsonite that these factors are neutral.

The accurate conclusions for each of the private and public interest factors are summarized in the table below.

| Factor | Weight |
|---|---|
| Private: Relative ease of access to sources of proof | Neutral |
| Private: Availability of compulsory process to secure the attendance of witnesses | Neutral |
| Private: Cost of attendance for willing witnesses | Weighs against transfer |
| Private: All other practical problems that make trial of a case easy, expeditious, and inexpensive | Weighs against transfer |
| Public: Administrative difficulties flowing from court congestion | Weighs against transfer |
| Public: Local interest | Neutral |
| Public: Familiarity of the forum with law that will govern the case | Neutral |
| Public: Conflict of laws | Neutral |

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety. In the alternative, Swissdigital has raised disputed issues of fact with respect to personal jurisdiction and therefore it should be permitted to conduct jurisdictional discovery as to the issues raised herein.

Dated:  July 18, 2023                              Respectfully submitted,


                                                   By: */s/ Dariush Keyhani*
                                                   Dariush Keyhani (*admitted pro hac vice*)
                                                   Frances H. Stephenson (*admitted pro hac vice*)
                                                   Keyhani LLC
                                                   1050 30th Street NW
                                                   Washington, DC 20007
                                                   T. 202.748.8950
                                                   F. 202.318.8948
                                                   dkeyhani@keyhanillc.com
                                                   fstephenson@keyhanillc.com

                                                   Jacqueline P. Altman
                                                   State Bar No. 24087010
                                                   John P. Palmer
                                                   State Bar No. 15430600
                                                   John A. "Andy" Powell
                                                   State Bar No. 24029775
                                                   USPTO Reg. No. 71,533
                                                   NAMAN HOWELL SMITH & LEE, PLLC
                                                   400 Austin Ave., Suite 800
                                                   Waco, Texas 76701
                                                   jaltman@namanhowell.com
                                                   palmer@namanhowell.com
                                                   apowell@namanhowell.com

                                                   ANDY TINDEL
                                                   Texas State Bar No. 20054500
                                                   MT²LAW GROUP
                                                   MANN | TINDEL | THOMPSON
                                                   112 East Line Street, Suite 304
                                                   Tyler, Texas 75702
                                                   Tel:      (903) 596-0900
                                                   Fax:      (903) 596-0909
                                                   Email:   atindel@andytindel.com

                                                   *Attorneys for Plaintiff Swissdigital USA Co., Ltd.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 18th day of July, 2023, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record who have who have consented to accept this Notice as service of this document by electronic means.

*/s/ Jacqueline P. Altman*      
Jacqueline P. Altman
