IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SWISSDIGITAL USA CO., LTD.,<br><br>    *Plaintiff*,<br><br>v.<br><br>SAMSONITE INT'L S.A.,<br><br>    *Defendant.* | Civil Action No. 6:23-cv-00196-ADA<br><br>**JURY TRIAL DEMANDED** |

**SAMSONITE INT'L S.A.'S REPLY IN SUPPORT OF**
**<u>MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Samsonite International Does Not Control or Direct its Subsidiaries ............................... 1 | |
| II. | There is No Personal Jurisdiction Over Samsonite International ....................................... 3 | |
| | A. | Personal Jurisdiction Would Be Proper in the District of Massachusetts.............. 3 |
| | B. | This District Lacks Personal Jurisdiction Over Samsonite International. .............. 4 |
| | C. | Swissdigital's Late Request for Jurisdictional Discovery Should Be Denied. ....... 5 |
| III. | The District of Massachusetts Is a Clearly More Convenient Venue. ............................... 6 | |
| | A. | This Litigation Could Have Been Brought in The District of Massachusetts. ....... 6 |
| | B. | The Ease of Access to Sources of Proof Weighs in Favor of Transfer................... 7 |
| | C. | Availability of Compulsory Process Weighs in Favor of Transfer......................... 8 |
| | D. | The Cost of Attendance for Willing Witnesses Weighs in Favor of Transfer........ 8 |
| | E. | The Other Practical Problems Factor is Neutral. .................................................... 9 |
| | F. | The Court Congestion Factor is Neutral. .............................................................. 10 |
| | G. | The District of Massachusetts Has a Strong Local Interest. ................................. 10 |
| IV. | Conclusion ........................................................................................................................ 10 | |

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*AGIS Software Dev. LLC v. Apple, Inc.*,
   No. 2:17-CV-00516-JRG, 2018 WL 2721826 (E.D. Tex. June 6, 2018) ................................9

*Akoloutheo, LLC v. Sys. Soft Techs., Inc.*,
   No. 4:20-CV-985, 2021 WL 1947343 (E.D. Tex. May 14, 2021)............................................2

*Artrip v. Ball Corp.*,
   735 Fed. App'x. 708 (Fed. Cir. 2018)....................................................................................5

*Barrow v. Sutton*,
   No. H-14-200, 2014 WL 12586346 (S.D. Tex. July 16, 2014) ..................................................9

*In re BigCommerce, Inc.*,
   890 F.3d 978 (Fed. Cir. 2018)..................................................................................................6

*BNSF Ry. Co. v. Tyrrell*,
   137 S. Ct. 1549 (2017)..............................................................................................................4

*Certain Underwriters at Lloyd's London v. Pete's Car Smart, Inc.*,
   No. 3:05-CV-1147-B, 2005 WL 8158546 (N.D. Tex. Dec. 2, 2005) .........................................9

*Diece-Lisa Indus., Inc. v. Disney Store USA, L.L.C.*,
   No. 2:12-cv-00400-RWS-RSP, 2020 WL 1332881 (E.D. Tex. Mar. 23, 2020)....................5, 6

*Freeman v. United States*,
   556 F.3d 326 (5th Cir. 2009) ....................................................................................................5

*In re Hoffman-La Roche, Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009)...............................................................................................10

*Instituform Techs., Inc. v. CAT Contracting, Inc.*,
   385 F.3d 1360, (Fed. Cir. 2004) ...............................................................................................1

*Jacobs Vehicle Sys., Inc. v. Pac Diesel Brake Co.*,
   424 F. Supp. 2d 388 (D. Conn. 2006)..................................................................................1, 2

*ParkerVision, Inc. v. Intel Corp.*,
   No. 6:20-CV-00108-ADA, 2021 WL 401989 (W.D. Tex. Jan. 26, 2021) ................................7

*Parks v. State Farm Lloyds*,
   No. MO:17-CV-00200-DC, 2018 WL 11195493 (W.D. Tex. Dec. 15, 2018).........................6

*Product Promotions, Inc. v. Cousteau*,
   495 F.2d 483 (5th Cir. 1974) ....................................................................................................2

*Salaiz v. Am.'s Lift Chairs, LLC*,
    No. EP-22-CV-26-DB, 2022 WL 17548580 (W.D. Tex. Apr. 25, 2022)..................................3

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ............................................................................................9

Samsonite International S.A. ("Samsonite Int'l") does not make, use, market, offer for sale, or sell any products. Tellingly, Swissdigital opted not to take jurisdictional discovery before filing its opposition. Instead, it relies on conclusory allegations in its Amended Complaint, supported only by out-of-context statements from public documents. But as Swissdigital may have learned if it had used the jurisdictional discovery tools this Court provides before filing its opposition, Samsonite Int'l is not involved in any allegedly infringing activities in this District. Thus, the Western District of Texas ("W.D. Tex.") has no personal jurisdiction over Samsonite Int'l. Even if jurisdiction were proper, the District of Massachusetts ("D. Mass.")—where the products were designed, and where documents and witnesses knowledgeable regarding their development, marketing, and sales reside—is the clearly more convenient venue. Swissdigital identifies *zero* witnesses or sources of proof in this District that counsel otherwise. As such, the Court should grant Samsonite Int'l's Motion and dismiss this case or, alternatively, transfer the case to D. Mass.

## I. Samsonite International Does Not Control or Direct its Subsidiaries

Swissdigital's arguments regarding personal jurisdiction and venue depend in large part on misstatements of Samsonite Int'ls operations. Samsonite Int'l does not direct or control its subsidiaries' operations. Dkt. 19-6 at ¶ 13-17. It makes strategic decisions that may affect the Samsonite Group as a whole, but is not involved in product design, development, manufacture, marketing, or sales. *Id.* at ¶ 13. Swissdigital mischaracterizes the law in arguing Samsonite Int'l is responsible for the acts of its subsidiaries merely by being their parent. Opp. at 6. Indeed, *none* of the facts that led the courts to find liability in the cases Swissdigital cites are present here. *Instituform Techs., Inc. v. CAT Contracting, Inc.* involved an individual owner, not parents or subsidiaries. 385 F.3d 1360, 1375 (Fed. Cir. 2004). While *Jacobs Vehicle Sys., Inc. v. Pac Diesel Brake Co.* (an out-of-circuit case) states a parent "*may* be liable" without being its subsidiary's alter ego, the court found no liability because—as here—the parent "took [no] affirmative action

to induce [the subsidiary] to make, use, sell, or offer to sell" infringing products. 424 F. Supp. 2d 388, 393 (D. Conn. 2006) (emphasis added). Similarly, the parent in *Akoloutheo, LLC v. Sys. Soft Techs., Inc.*, was held potentially liable for ***itself*** "selling, making, or using the infringing instrumentality." No. 4:20-CV-985, 2021 WL 1947343, at *2 (E.D. Tex. May 14, 2021). Finally, Swissdigital has not even alleged, let alone established, an agency relationship between Samsonite Int'l and its subsidiaries. *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 492 (5th Cir. 1974).

Swissdigital's cherrypicked citations to evidence purporting to show that Samsonite Int'l "heads and directs" infringing activities (Opp. at 1) are likewise unavailing. The statement regarding being "a leader in the global lifestyle bag industry" refers to ***both*** Samsonite Int'l ***and*** its subsidiaries ("the Group"), not Samsonite Int'l alone. Dkt. 24-2 at 3. Swissdigital also cites a passage from its Amended Complaint (with no supporting citation to evidence) regarding "company-owned retail stores" and "manufacturing sites" (Opp. at 1-2; Dkt. 13 at ¶ 10), but the Motion already clarified that ***Samsonite Int'l*** does not own or operate any stores (Dkt. 19-6 at ¶ 14), and the listed manufacturing sites are in Belgium, Hungary, India, and Mexico—not the U.S. or this District. Dkt. 13 at ¶ 10. While Samsonite Int'l may make "investments" (Opp. at 2), investing is not an act of infringement, and the actual alleged infringing acts—making, marketing, and selling the accused products—are performed by other entities. Dkt. 19-6 at ¶¶ 8-10. Contrary to Swissdigital's assertion, there is no mention of "financial statements of the Company" (Opp. at 2) in Samsonite Int'l's annual report—the financials presented are the sales of ***the Group***. *See* Dkt. 24-2 at 47 ("***The Group*** continued to experience improved net sales. . ." (emphasis added)), 57, n. 1 (clarifying that the US$1,058.6 million number is "***the Group***'s net sales" (emphasis added)). The statement that Samsonite Int'l "manage[s] the Group's operations" (Opp. at 2-3) is nothing new—Samsonite Int'l already explained that it makes strategic decisions affecting the

2

Group as a whole. Dkt. 19-6 at ¶ 13. The statement regarding Samsonite's "focus on product innovation, offering new products across all our brands and markets . . ." (Opp. at 4) refers to the Samsonite *Group*, not Samsonite Int'l. Dkt. 24-2 at 20-29. The statement that Amazon is a US wholesale customer has no relation to whether Samsonite Int'l directs the activities of its subsidiaries—all it shows is that those sales likely occur in Asia. Dkt. 24-12 at 12 ("Amazon actually picks up the orders in Asia . . . as opposed to waiting for the ship to arrive in the U.S.").

None of these statements show what Swissdigital wants them to—that Samsonite Int'l directs and controls the manufacture, marketing, offer for sale, and sale of the allegedly infringing products—nor could they, as Samsonite Int'l simply does not do so. Indeed, even the statement that Swissdigital quotes emphasizes "*regional management structure*" (Opp. at 2)—for example, Samsonite LLC managing U.S. operations. That Swissdigital may add additional accused products later (*id*. at 4) is irrelevant. Hypothetical, future, unserved infringement contentions for products not listed in the complaint are no basis for jurisdiction or venue, and Swissdigital cites no authority to the contrary. Even if other products were relevant, ***Samsonite Int'l*** does not manufacture or sell ***any products***, and the newly identified products are no exception. Dkt. 19-6 at ¶ 13.

## II.     There is No Personal Jurisdiction Over Samsonite International

### A.     Personal Jurisdiction Would Be Proper in the District of Massachusetts.

While not relevant to whether ***W.D. Tex.*** has personal jurisdiction, Swissdigital's argument that Samsonite Int'l is not subject to personal jurisdiction in ***D. Mass.*** fails. While Samsonite Int'l is a foreign entity, it ***has a headquarters*** in D. Mass. Mot. at 1; Dkt. 19-6 at ¶ 12. Even the annual report Swissdigital relies on lists Samsonite Int'l's ***D. Mass. headquarters***. Dkt. 24-2 at 2 (listing Mansfield location as a "joint headquarters"). Personal jurisdiction would therefore be proper in D. Mass. *See*, *e.g.*, *Salaiz v. Am.'s Lift Chairs, LLC*, No. EP-22-CV-26-DB, 2022 WL 17548580, at *2 (W.D. Tex. Apr. 25, 2022) ("[A] defendant corporation resides . . .

where it has its principal place of business." (citing *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017))). Further, exercising personal jurisdiction comports with due process only in D. Mass., where Samsonite Int'l is headquartered, and where Samsonite LLC—the entity responsible for (and with documents relating to) the accused products' design, manufacture, marketing—resides.

### B.     This District Lacks Personal Jurisdiction Over Samsonite International.

By contrast, exercising jurisdiction in this District does not comport with due process. Mot. at 10-15. Swissdigital's argument to the contrary is based ***entirely*** on conclusory, unsupported allegations from its Amended Complaint (Opp. at 8-10 ("The exercise of jurisdiction over Defendant is consistent with due process ***because Plaintiff's Amended Complaint avers. . .***")). The evidence submitted with Samsonite Int'l's motion has already debunked those allegations.

Samsonite Int'l has explained at length why exercising jurisdiction over Samsonite Int'l would not comport with due process. Mot. at 10-15. Rather than rebut any of Samsonite Int'l's arguments, Swissdigital simply regurgitates the same misinformed allegations from its Amended Complaint, completely ignoring the facts Samsonite Int'l has presented. Opp. at 8-10. But the evidence Samsonite Int'l submitted with its Motion shows that all of the allegations Swissdigital relies on are false. Samsonite Int'l does not operate (or direct its subsidiaries to operate) the websites that sell the accused products. Dkt. 19-6 at ¶¶ 16-17. It does not direct or control retail stores, or any entity responsible for allegedly infringing acts, in Texas or otherwise. *Id.* at ¶¶ 13-15; *see supra* at § I. The unrebutted ***facts*** show that Samsonite Int'l has no "minimum" or "continuous and systematic" contacts with Texas, that this case's controversy does not arise out of contacts with Texas, and that the factors for assessing consistency with traditional notions of fair play and substantial justice counsel against exercising jurisdiction here. *See* Mot. at 10-15.

Indeed, if Swissdigital had its way, then any complaint merely alleging direct and indirect infringement would automatically establish personal jurisdiction over a defendant entity,

regardless of that entity's contacts with the forum.  That is not the law.  Although well-pled facts in the complaint are generally reviewed in a light favorable to the plaintiff, Swissdigital has not alleged sufficient, *plausible* facts to support its conclusory allegations, particularly when those allegations are directly refuted by the undisputed facts in Samsonite Int'l's Motion and supporting declaration.  *See*, *e.g.*, *Artrip v. Ball Corp.*, 735 Fed. App'x. 708, 714-15 (Fed. Cir. 2018) (dismissing claims of direct and indirect infringement where facts alleged in amended complaint were "insufficient to state a plausible, rather than merely possible, claim for relief").

        **C.**        **Swissdigital's Late Request for Jurisdictional Discovery Should Be Denied.**

The lack of factual support in Swissdigital's opposition comes as no surprise.  The Court's procedures would have allowed Swissdigital to investigate the purported "minimum dispute of fact" that it contends exists through jurisdictional discovery.  Opp. at 11; s*ee* Standing OGP 4.3—Patent Cases at §§ V-VI.  Rather than utilize the tools the Court provides specifically for this purpose, however, Swissdigital chose to rely solely upon the deficient allegations in its pleading, offering conclusory statements in place of facts gained from jurisdictional discovery.  Regardless, no amount of jurisdictional discovery would change the outcome here—Samsonite Int'l has no connections to Texas or this District.  And Swissdigital is "not entitled to jurisdictional discovery" if it is "not likely to produce the facts needed" to withstand a motion to dismiss.  *Diece-Lisa Indus., Inc. v. Disney Store USA, L.L.C.*, No. 2:12-cv-00400-RWS-RSP, 2020 WL 1332881, at *6 (E.D. Tex. Mar. 23, 2020) (quoting *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009)).

Further, Swissdigital has not even made the preliminary showing of jurisdiction required for such discovery.  Swissdigital's request for jurisdictional discovery should have identified "the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction." *Diece-Lisa*, 2020 WL 1332881 at *7.  Swissdigital has not even ***attempted*** to identify "what facts it believes discovery would uncover and how those facts would

support personal jurisdiction." *Id.* Regardless, despite requesting the Court's permission to serve discovery, Swissdigital served what it dubs "jurisdictional discovery"[1] on July 21, 2023, **after** it filed its opposition, and without waiting for the Court's ruling.

Any discovery Swissdigital obtains now—through discovery served after its opposition in contravention of the Court's rules instructing the opposite (*see* Standing OGP 4.3—Patent Cases at § VI)—cannot be used in these proceedings. Swissdigital cannot file a surreply because Samsonite Int'l does not raise new arguments in its reply. *Parks v. State Farm Lloyds*, No. MO:17-CV-00200-DC, 2018 WL 11195493, at *2 (W.D. Tex. Dec. 15, 2018) ("[A] surreply . . . is limited to addressing only new arguments raised for the first time . . . in [the] reply briefing." (citation and quotations omitted)). Further, "arguments raised for the first time in a surreply . . . are waived." *Id.* at *3. Swissdigital's request for jurisdictional discovery should thus be denied.

### III. The District of Massachusetts Is a Clearly More Convenient Venue.

#### A. This Litigation Could Have Been Brought in The District of Massachusetts.

Venue is proper in D. Mass. because Samsonite Int'l has a headquarters there, and therefore "resides" there. *E.g.*, *In re BigCommerce, Inc.*, 890 F.3d 978, 985-86 (Fed. Cir. 2018) (holding that a corporation resides in the judicial district where it maintains a principal place of business). Swissdigital again focuses on the wrong analysis, completely ignoring this fact. Opp. at 13; *see supra* at § II.A. And while Swissdigital argues that product "design" is not by itself an act that gives rise to patent infringement, Samsonite Int'l has made it clear that entities in D. Mass. are responsible not only for design, but also for development, marketing, and sales of the accused products. Dkt. 19-6 at ¶¶ 10-11.

---

[1] The discovery served is overbroad, going far beyond what could reasonably be considered "jurisdictional" issues. *See* Exs. E (Interrogatories), F (RFPs).

### B.     The Ease of Access to Sources of Proof Weighs in Favor of Transfer.

The relevant documents regarding design, development, marketing, and sales of the accused products are mainly located in D. Mass. *Id*. Swissdigital does not dispute this fact or offer any facts showing otherwise, arguing only that 1) the factor is neutral because relevant documents are spread "all over the world;" 2) Samsonite Int'l has not described the relevant evidence with enough specificity; and 3) Samsonite Int'l is not a holding company because it publishes financials, has a board, is publicly traded, and directs the operations of its subsidiaries. Opp. at 15-16. None of these arguments change the balance of this factor.

First, that some documents are spread "all over the world" is irrelevant—it is undisputed that documents relevant to the accused products are in D. Mass. Dkt. 19-6 at ¶¶ 10-11. While Swissdigital speculates that the designers of *other* products are elsewhere (Opp. at 14-15), no other products are at issue in this case. Even if other products were relevant to this case, Swissdigital has not alleged that *a single document* relevant to those products is in *W.D. Tex.* On the other hand, D. Mass. has documents relating to the actually accused products' design, development, marketing, and sale. Mot. at 16; Dkt. 19-6 at ¶¶ 10-11.

Second, Samsonite Int'l has sufficiently identified the evidence in D. Mass. Swissdigital could have challenged Samsonite Int'l's evidence by taking jurisdictional discovery, and chose not to do so. Regardless, specificity of evidence was not at issue in the case Swissdigital cites, *ParkerVision, Inc. v. Intel Corp.*— the Court determined then that this factor was neutral because the evidence at issue, schematics, was located remotely and not in the transferee venue. No. 6:20-CV-00108-ADA, 2021 WL 401989, at *2-3 (W.D. Tex. Jan. 26, 2021). Here, Samsonite has identified design documents (which likely include schematics), as well as development, marketing, and sales documents for the accused products in D. Mass. By contrast, Swissdigital cannot point to a *single source* of relevant information in W.D. Tex.

7

Finally, the fact that Samsonite Int'l publishes financials, has a board, and is publicly traded has no bearing on this factor, which examines the location of relevant *evidence*. Contrary to Swissdigital's unsupported conclusion, "documents relating to financials and the accused products" (Opp. at 15-16) are not solely located outside the country. Documents regarding the products' *manufacture* and *sale* are in D. Mass. Dkt. 19-6 at ¶¶ 10-11.

Examining the sources of proof in W.D. Tex. against the sources of proof in D. Mass., the balance could not be more one-sided. Samsonite Int'l has identified design, development, marketing, and sales documents for the accused products in D. Mass., while Swissdigital offers only speculation and conjecture about irrelevant documents located "all over the world," and identifies *nothing* in W.D. Tex. This factor clearly weighs in favor of transfer.

### C. Availability of Compulsory Process Weighs in Favor of Transfer.

While true that Samsonite Int'l has not identified any unwilling witnesses to date, Swissdigital has now represented that it intends to add additional accused products to the case. Any third-party witnesses relevant to Samsonite products—former employees of Samsonite entities knowledgeable about the Samsonite Group's operations in the U.S.—are far more likely to reside in D. Mass., where Samsonite Int'l is headquartered and where relevant U.S. subsidiaries and employees reside, than in W.D. Tex. This factor therefore weighs in favor of transfer.

### D. The Cost of Attendance for Willing Witnesses Weighs in Favor of Transfer.

Samsonite Int'l has identified individuals "responsible for the design, development, quality assurance, manufacturing, marketing, and sales" of the accused products in D. Mass. Mot. at 18; Dkt. 19-6 at ¶ 10. Swissdigital ignores these individuals and argues only that unspecified employees working abroad are equally inconvenienced by travel to either venue. Opp. at 16-17. Though Swissdigital suggests that the only relevant witnesses would be those who testify about "characteristics and features relevant to infringement" (*id.*), employees knowledgeable about

8

marketing and sales of the products also reside in D. Mass. Dkt. 19-6 at ¶ 10. And Swissdigital offers no explanation why the fact that the accused features are visually discernible would diminish the importance of key fact witnesses knowledgeable about the design and manufacture of those products. Meanwhile, Swissdigital has not identified a single relevant W.D. Tex. fact witness.

Swissdigital suggests that its expert witness in W.D. Tex. should weigh against transfer, inviting the Court to set a dangerous precedent. If Swissdigital had its way, a plaintiff could simply hire an expert in the forum of their choice and thwart any motion for transfer of venue. That is of course not the law—"the residence or inconvenience of expert witnesses are entitled to little consideration . . . as it is presumed that witnesses who are paid to testify will appear at trial irrespective of the location of the forum." *Certain Underwriters at Lloyd's London v. Pete's Car Smart, Inc.*, No. 3:05-CV-1147-B, 2005 WL 8158546, at *2 (N.D. Tex. Dec. 2, 2005) (citation omitted); *see also Barrow v. Sutton*, No. H-14-200, 2014 WL 12586346, at *4 (S.D. Tex. July 16, 2014) ("The convenience of expert witnesses weighs little" (citation omitted)); *AGIS Software Dev. LLC v. Apple, Inc.*, No. 2:17-CV-00516-JRG, 2018 WL 2721826, at *7 (E.D. Tex. June 6, 2018) (finding witness's "status as an expert witness entitles him to diminished weight").

Swissdigital's argument that per diem living costs in W.D. Tex. are lower than those in Boston should be afforded no credit. Unsurprisingly, Swissdigital cites no authority for its proposition that per diem living cost should even be considered as part of this factor. Swissdigital's premise is also flawed—the relevant Samsonite employees **reside** in D. Mass., and would not need lodging. Dkt. 19-6 at ¶ 10. Travel to W.D. Tex., on the other hand, would require days of travel, imposing significant burden. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008).

E.   **The Other Practical Problems Factor is Neutral.**

This factor is neutral. The fact that the Court "conducted extensive hearings relating to discovery" (Opp. at 18) in the Wenger litigation is completely irrelevant to this litigation. While

true that the Court is likely more familiar with the patents that underwent claim construction in the Wenger litigation, those proceedings only encompassed two of the four patents at issue in this case, and Samsonite Int'l is not bound by the constructions from the Wenger litigation. Wenger and Samsonite Int'l are separate, unrelated entities with no overlap in products, and any claim construction issues in this case are completely distinct from those in the Wenger litigation.

### F. The Court Congestion Factor is Neutral.

Swissdigital does not dispute that W.D. Tex. is a much more congested venue than D. Mass., instead focusing on time to trial statistics. But the difference in time to trial between the two districts is insignificant. Mot. at 20; *compare* Dkt. No. 24-10 at 2 (showing 32.8 months for D. Mass.) *with id.* at 6 (showing 28.2 months for W.D. Tex.). This factor is at worst neutral.

### G. The District of Massachusetts Has a Strong Local Interest.

Once again, Swissdigital ignores the evidence of relevant individuals and evidence located in D. Mass. D. Mass. has a strong local interest in this litigation because it "calls into question the work and reputation" of the individuals who worked on the accused products. *See In re Hoffman-La Roche, Inc.*, 587 F.3d 1333 at 1336, 1338 (Fed. Cir. 2009). Samsonite Int'l's joint headquarters and the entities responsible for the accused products are also in D. Mass. Dkt. 19-6 at ¶¶ 3-12.

Swissdigital's argument that Samsonite Int'l "maintains a substantial business presence throughout Texas" is nonsense. Swissdigital's sole basis for any Samsonite Int'l presence at all in W.D. Tex. is "products . . . sold nationwide" (Opp. at 19-20), which **Samsonite Int'l itself does not sell**. In any case, products are also sold in D. Mass., which clearly has a stronger interest in view of all of the relevant documents, evidence, witnesses, and entities located there.

## IV. Conclusion

For the reasons explained above, Samsonite Int'l requests the Court dismiss Swissdigital's Amended Complaint against Samsonite Int'l entirely, or alternatively transfer the case to D. Mass.

Date: July 25, 2023                                                Respectfully submitted,

/s/Neil J. McNabnay
  Neil J. McNabnay
  njm@fr.com
  Texas Bar No. 24002583
  **FISH & RICHARDSON P.C.**
  1717 Main Street, Suite 5000
  Dallas, TX 75201
  (214) 747-5070 (Telephone)
  (214) 747-2091 (Facsimile)

**ATTORNEY FOR DEFENDANT
SAMSONITE INT'L S.A.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 25, 2023 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

/s/ Neil J. McNabnay
Neil J. McNabnay

11