**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| SWISSDIGITAL USA CO., LTD., <br><br> *Plaintiff*, <br><br> v. <br><br> SAMSONITE INTERNATIONAL S.A., <br><br> *Defendant*. | Civil Action No. 6:23-cv-00196-ADA <br><br> **JURY TRIAL DEMANDED** |

**<u>SAMSONITE'S OPENING CLAIM CONSTRUCTION BRIEF</u>**

## **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 1

II.     OVERVIEW OF THE ASSERTED PATENTS ................................................... 1

     A.   The '071 Patent ........................................................................................ 2

     B.   The '137, '138, and '009 Patents (collectively, the "Continuation Patents") ................................................................................................... 3

III.    DISPUTED TERMS ............................................................................................ 4

     A.   "outer surface of [the/a] [bag or luggage] [body]" ('071 pat., cl. 1, 10; '137 pat., cl. 1, 4, 9, 18; '138 pat., cl. 1, 2, 5, 9, 18, 23; '009 pat., cl. 5, 9, 18, 29) ................................................................................ 4

          1.   "Outermost Surface" is Consistent With the Intrinsic Evidence ............................................................................... 4

          2.   The Prosecution Disclaimer for the '071 Patent Applies to the Continuation Patents. ................................................ 8

     B.   "fixedly attached" ('071 pat., cl. 1, 10) ................................................. 11

     C.   "adjacent to the [power cable outlet/first port]" ('071 pat., cl. 1, 10; '009 pat., cl. 1) .......................................................................................... 14

     D.   "surrounding bottom portion" ('137 pat., cl. 1, 20, 21; '138 pat., cl. 1, 2, 20, 21, 23; '009 pat., cl. 1, 2, 20, 21, 29) ....................................... 16

     E.   "attachment portion that extends around a bottom portion of the sheath" ('137 pat., cl. 7; '138 pat., cl. 8; '009 pat., cl. 8, 9) ................. 22

     F.   "above" ('137 pat., cl. 19; '138 pat., cl. 19; '009 pat., cl. 19) ............. 25

IV.     CONCLUSION .................................................................................................. 29

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Canopy Growth Corp. v. GW Pharms., PLC*,
    No. 6:20-cv-01180-ADA, 2021 WL 8015834 (W.D. Tex. Nov. 27, 2021) ...........................11

*Cordis Corp. v. Boston Sci. Corp.*,
    658 F.3d 1346 (Fed. Cir. 2011)........................................................................................8

*Hakim v. Cannon Avent Group, PLC*,
    479 F.3d 1313 (Fed. Cir. 2007)...............................................................................10, 15

*Implicit L.L.C. v. F5 Networks, Inc.*,
    No. 14-cv-02856-SI, 2015 WL 2194627 (N.D. Cal. May 6, 2015)..........................................9

*Landers v. Sideways, LLC*,
    142 Fed. App'x. 462 (Fed. Cir. 2005).................................................................................23

*MHL Tek, LLC v. Nissan Motor Co.*,
    691 F.Supp.2d 698 (E.D. Tex. 2010) ..................................................................................8

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    562 US. 898 (2014)........................................................................................................22

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003)...............................................................................4, 8, 15

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) .............................................................................14

*Power Integrations, Inc. v. Fairchild*
    711 F.3d 1348 (Fed. Cir. 2013) .........................................................................................26

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
    653 F.3d 1296 (Fed. Cir. 2011)........................................................................................11

*Seabed Geosolutions (US) Inc. v. Magseis FF LLC*,
    8 F.4th 1285 (Fed. Cir. 2021) ......................................................................................8, 16

*Springs Window Fashions LP v. Novo Indus., L.P.*,
    323 F.3d 989 (Fed. Cir. 2003)..........................................................................................10

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
    247 F.3d 1316 (Fed. Cir. 2001)........................................................................................26

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
    789 F.3d 1355 (Fed. Cir. 2015)...................................................................................22, 25

*Traxcell Techs., LLC v. AT&T Corp.*,
   No. 2:17-cv-00718-RWS-RSP, 2019 WL 6037984 (E.D. Tex. Oct. 7, 2019) ........................10

*Traxcell Techs., LLC v. Cellco P'ship*,
   No. 6:20-cv-01175-ADA, 2023 WL 2415583 (W.D. Tex. Mar. 8, 2023).......................4, 8, 10

## I.      INTRODUCTION

Defendant Samsonite International S.A. ("Defendant") hereby submits its opening claim construction brief for the four Asserted Patents: U.S. Patent Nos. 10,574,071 (the "'071 patent"), 10,931,137 (the "'137 patent"), 10,931,138 (the "'138 patent"), and 11,601,009 (the "'009 patent") (collectively, "Asserted Patents").  Plaintiff Swissdigital USA Co., Ltd.'s ("Plaintiff") proposal of "plain and ordinary meaning" for every disputed claim term is inadequate when considering the intrinsic and extrinsic evidence.  Defendant's constructions define each term as it would have been understood (or not understood) by a person of ordinary skill in the art ("POSITA") in view of the intrinsic and extrinsic evidence.

## II.     OVERVIEW OF THE ASSERTED PATENTS

The Asserted Patents relate to integrating a USB charging port on items such as a bag or luggage.  The patents generally claim a "sheath" that houses the female connector of a USB cable to enable charging an external electronic device.  To aid the Court's understanding, Defendant provides exemplary figures below from the patents illustrating certain relevant components.

| Figure 1: Glossary | |
|---|---|
| USB Cable<br><br>Male Connector/End<br><br>Female Connector/End<br><br>*'071 pat., Fig. 2 (annotated)* |  |



| Bag<br><br>Internal Storage For Battery<br><br>Sheath<br><br>*'071 pat., Fig. 9 (annotated)* | |
|---|---|
| USB Cable<br><br>Sheath<br><br>    Open End<br><br>    Closed End<br><br>    Three Sides<br><br>*'137 pat., Fig. 44 (annotated)* | |

### A.    The '071 Patent

The '071 patent describes a backpack for "convenient charging," with an internal storage space for a battery and an output port or outlet so that a USB cable connected to the battery can be used to charge an external device. *E.g.*, '071 patent at Abstract.  The bag allows a user to charge a device "conveniently at any time or any place during traveling, without necessarily opening the

bag or luggage, nor taking out the power source for charging." *Id.* at 1:33-39.  Generally, the male connector of the USB cable connects to the power storage device internal to the bag, while the female connector of the USB cable is exposed outside of the outlet.  *E.g.*, *id.* at 1:47-51, 3:20-23. The externally exposed female connector of the USB cable may have a waterproof "sheath" wrapped on its "outer surface."  *E.g.*, *id.* at 1:51-54, 3:23-25.

**B.    The '137, '138, and '009 Patents (collectively, the "Continuation Patents")[1]**

The '137 patent is a continuation of the '071 patent and also describes a system used for charging external devices using a USB cable.  The '138 patent is a continuation in part of the '137 patent; the '009 patent is a continuation in part of both the '137 and '138 patents.

Although their specifications are not identical, the Continuation Patents commonly focus on the "sheath," which covers the female connector and has at least three sides, a closed end, and an open end.  *E.g.*, '137 pat., Abstract, 1:42-46, 5:9-15.  The sheath may taper down to the closed end to accommodate the cord end of a USB cable female connector, so as to retain the connector to prevent it from falling out.  *E.g.*, *id.* at 5:24-29.  The sheath receives the female connector end of a USB cable through a hole or port in the body the sheath is attached to, holding it in place for convenient charging.  *See*, *e.g.*, *id.* at 1:49-58.

---

[1] Defendant disputes that the '137, '138 and '009 patents are entitled to a priority date of November 18, 2014, based on the alleged priority date of the '071 patent.  For purposes of claim construction, however, Defendant assumes, as asserted by Plaintiff, that the claims of the Continuation Patents are entitled to the '071 patent's priority date.  Regardless, for the terms identified herein, the applied priority date makes no difference for claim construction.

## III.    DISPUTED TERMS

**A.    "outer surface of [the/a] [bag or luggage] [body]" ('071 pat., cl. 1, 10; '137 pat., cl. 1, 4, 9, 18; '138 pat., cl. 1, 2, 5, 9, 18, 23; '009 pat., cl. 5, 9, 18, 29)**

| Defendant's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "the outermost surface of [the/a] [bag or luggage] [body] such that it can be accessed without opening the bag or luggage | Plain and Ordinary Meaning |

Clear prosecution disclaimer limits the scope of the term "outer surface" in the '071 patent to an "outer*most* surface," accessible without opening the bag or luggage.  As the disclaimer in the parent application "appl[ies] equally to the asserted children patents, which are continuations of that parent application," the same "outer surface" term appearing in the Continuation Patents[2] should be similarly construed.  *Traxcell Techs., LLC v. Cellco P'ship*, No. 6:20-cv-01175-ADA, 2023 WL 2415583, at *3 (W.D. Tex. Mar. 8, 2023); *see also*, *e.g.*, *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1333-34 (Fed. Cir. 2003) (finding narrowing disavowals made in parent applications apply to continuation-in-part applications).

### 1.    "Outermost Surface" is Consistent With the Intrinsic Evidence.

Defendant's proposed construction should be adopted because Plaintiff disclaimed any scope of "outer surface" that is not an "outer*most* surface" during prosecution.  On May 31, 2019, the Examiner rejected the independent claims of the application that issued as the '071 patent as anticipated by U.S. Patent Publication No. 2012/0262117 to Ferber ("Ferber").  Ex. 1 (2019-05-31 Non-Final Rejection) at 3-4.  Ferber disclosed a messenger bag with an outlet that had charging connectors 216 (annotated in orange) held inside "pockets" 224 (annotated in green), which were

---

[2] The independent claims of the '071 patent recite an "outlet on the outer surface."  '071 pat., cl. 1, 10.  The Continuation Patents recite substantively identical limitations.  *E.g.*, '137 pat., cl. 1 (reciting "a power cable outlet between the inner surface and the outer surface"); '138 pat., cl. 1 (reciting "an opening between the inner surface and the outer surface"); '009 pat., cl. 1 (reciting "a first port between the inner surface and the outer surface").

inside "compartments" 212 (annotated in blue), and with a flap (partially shown, labeled below) that encloses the entire connector, pocket, and compartment assembly.



**Figure 2: Ferber Fig. 21, from '071 pat. prosecution history (annotated)**

In response to the Examiner's rejection, Plaintiff argued that Ferber "clearly fail[ed] to teach or suggest a power cable outlet on the ***outer surface of the bag or luggage body***":

> [Ferber] Figure 21 is directed to a messenger bag with a flap that must be opened to access the charger. Still further, Ferber provides the connector is removably retained ***inside a connector pocket 224*** that is attached to a compartment 212 that is on the ***interior of the bag*** covered by the messenger flap. . . . This ***clearly fails to teach or suggest, "a power cable outlet on the outer surface of the bag or luggage body"*** . . . Ferber teaches a connector contained in a pocket, attached to another pocket, under a messenger flap.  Ferber also teaches that the connector must be removed from the pocket to charge the device.  This does not teach or suggest the claims.

Ex. 2 (2019-06-25 Applicant Remarks) at 11-12 (emphasis added).  In these remarks, Plaintiff disclaimed any scope of the "outer surface" that encompasses surfaces internal to a bag, such as inside a pocket, compartment, or even under a flap.  Defendant's construction requiring that the claimed "outer surface" be the outermost surface and be accessible without opening the bag thus captures the proper scope of the claims in view of Plaintiff's unmistakable disclaimer.

The claim language itself also supports Defendant's construction.  In further support of its prosecution disclaimer, Plaintiff additionally clarified the claims to add a limitation that the body "does not need to be opened to access a charging interface of a product to be charged."  *Id.* at 2; '071 pat., cl. 1, 10.  In other words, the "outer surface" is the outermost surface (*e.g.*, not inside of a pocket which would need to be opened), such that it is not "inside" of the body, and can be accessed for charging without opening the body.

The specification eliminates any remaining doubt as to the meaning of this term.  One of the problems the '071 patent seeks to overcome is the fact that, in prior art products, "[i]t is necessary to open the bag or luggage for charging, which is quite inconvenient."  *Id.*, 1:26-29.  Accordingly, the specification repeatedly describes "the present invention" as one that enables charging an external device ***without*** having to open the bag or luggage.  *Id.*, 1:33-39 ("The present invention . . . enables the user to charge a device or product . . . ***without necessarily opening the bag or luggage***" (emphasis added)), 1:55-60, 2:26-31, 3:30-35 (similar).  The specification further describes a "sheath" covering the outer surface of the female connector (which is "exposed outside" the outlet formed at the outer surface) for "water proofing."  *Id.*, 1:40-54 ("***The present invention*** is realized in the following way . . . the female connector may be equipped with a ***sheath for water proofing*** wrapped on the outer surface of the female connector" (emphasis added)), 3:14-29, 3:47-59, 3:60-4:5, 4:34-45, 4:46-60, 4:65-5:12 (similar).  Waterproofing would only be needed

for the female connector if the outer surface on which the female connector sits is on the outermost surface of the bag, such that it would have been exposed to rain or moisture.  Consistent with this interpretation, each and every figure of the '071 patent depicting an outer surface of a bag with the claimed sheath which "covers" the outlet depicts the sheath as located on the outermost surface of the bag.  Exemplary figures showing the sheath (annotated in orange) covering the claimed "outlet" are provided below.

| Figure 3: '071 Patent Sheaths Covering Outlets |
|---|



*'071 pat., Fig. 1 (annotated)*    *'071 pat., Fig. 3 (annotated)*

The specification and figures do not anywhere describe or depict a sheath internal to a bag (for example, inside a pocket).

Since "the meaning of [the] claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence." *E.g.*, *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021). Defendant's construction is consistent with Plaintiff's disclaimer during prosecution, the claims, and the specification, and should thus be adopted.

### 2. The Prosecution Disclaimer for the '071 Patent Applies to the Continuation Patents.

The disclaimer from the '071 patent's prosecution history extends to the Continuation Patents. Indeed, "it is settled that prosecution disclaimer attaches to progeny continuation in part applications where the same claim limitation is at issue." *Omega Eng'g*, 334 F.3d at 1335; *see also*, *e.g.*, *id.* at 1334 ("[W]e presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning."). Thus, as this Court has recognized, prosecution disclaimers made during the prosecution of a patent application "apply equally to the asserted children patents, which are continuations of that parent application." *Cellco*, 2023 WL 2415583, at *3; *see also Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1346, 1357 n. 5 (Fed. Cir. 2011) ("a disclaimer in the parent application carries forward into the construction of the same claim term in the child").[3] The disclaimer in the '071 patent's prosecution history disclaiming surfaces inside pockets or under flaps from the scope of the term "outer surface" thus applies equally to that term as used in the Continuation Patents.

The intrinsic evidence of the Continuation Patents does not compel a different result. The specifications of the Continuation Patents contain similar disclosures to the '071 Patent regarding

---

[3] Though it is unclear whether the '137 patent is in fact a continuation as labeled on its face, or is more properly classified as a continuation-in-part, the distinction is irrelevant to the analysis here. *See*, *e.g.*, *MHL Tek, LLC v. Nissan Motor Co.*, 691 F.Supp.2d 698, 708-709 (E.D. Tex. 2010) (collecting cases, noting that the Federal Circuit "considers the prosecution histories of related applications and patents broadly and inclusively, avoiding purely formalistic distinctions . . . between a continuation and a divisional applications." (citation omitted)).

the goal of charging an external device without needing to open the bag or luggage.  *E.g.*, '137 pat., 1:24-25 ("[i]t is no longer necessary to open the bag, luggage, or clothing for charging, which is convenient"); '138 pat., 1:24-25 (same); '009 pat., 1:24-25 (same); *see also* '137 pat., 1:29-37, 1:59-64, 2:17-22, 3:45-50 (similar); '138 pat., 1:29-37, 1:59-64, 2:17-22, 3:59-64 (similar); '009 pat., 1:29-37, 1:65-2:3, 2:24-29, 4:1-6 (similar).  The Continuation Patents' specifications also contain the same disclosures regarding waterproofing of the sheaths.  *E.g.*, '137 pat., 2:22-24 (describing "charging interface" with a "waterproof" feature); '138 pat., 2:22-24 (same); '009 pat., 2:22-24 (same); *see also* '137 pat., 3:33-36, 3:66-4:3, 4:14-16, 4:54-56, 4:66-5:4, 5:12-15, 5:19-23, 5:44-47 (similar); '138 pat., 3:48-50, 4:12-15, 4:27-30, 4:67-5:2, 5:11-14, 5:25-28, 5:32-34, 5:46-49, 5:57-65 (similar); '009 pat., 3:56-59, 4:23-25, 4:37-40, 5:10-12, 5:21-24, 5:35-37, 5:42-45, 5:66-6:2 (similar).  The same disclosures that support Defendant's construction for the '071 patent are thus also present in the Continuation Patents' specifications.

Plaintiff has tried to broaden the scope of the Continuation Patents to reclaim the territory it ceded to overcome Ferber.  Each of the Continuation Patents contain dependent claims reciting a "second outer surface that covers the outer surface," and the confusing limitation that the "outer surface" is "the inside of a pocket."  '137 pat., cl. 4, 18; '138 pat., cl. 5, 18; '009 pat., cl. 5, 18.  The specifications of the Continuation Patents also contain disclosures not found in the '071 patent specification, explaining that "[t]here may be a second outer surface (3300) that covers the outer surface of the body," and that the outer surface may be the inside of a pocket.  '137 pat., 6:27-32; '138 pat., 6:39-44; '009 pat., 6:48-53.

Nevertheless, the disclaimer from the parent '071 patent's prosecution history applies to the Continuation Patents.  Express disclaimer in the Continuation Patents' prosecution is not required for the '071 patent disclaimer to carry over.  *E.g.*, *Implicit L.L.C. v. F5 Networks, Inc.*,

No. 14-cv-02856-SI, 2015 WL 2194627, at *13 (N.D. Cal. May 6, 2015) (finding lack of disclaimer in *child* patent's prosecution history "immaterial," because there was "no evidence . . . much less sufficiently clear evidence, that informed the examiner that the disclaimer [Applicant] made during the [*parent*] patent Reexam would need to be revisited"). To rescind a parent patent's disclaimer, "the prosecution history [of the child patent] must be sufficiently clear to inform the examiner that the previous disclaimer, and the prior art that it was made to avoid, may need to be re-visited." *Hakim v. Cannon Avent Group, PLC*, 479 F.3d 1313, 1318 (Fed. Cir. 2007). Requiring clear rescission of disclaimer in the prosecution history of a child patent ensures that a "*patentee may not state during prosecution that the claims do not cover a particular device and then change position and later sue a party who makes that same device for infringement*." *Id.* at 1318 (quoting *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) (emphasis added)). This is ***exactly*** what Plaintiff has done here.

Withdrawing a disclaimer has "exacting requirements." *Traxcell Techs., LLC v. AT&T Corp.*, No. 2:17-cv-00718-RWS-RSP, 2019 WL 6037984, at *9 (E.D. Tex. Oct. 7, 2019). In *Traxcell,* the court found a parent patent disclaimer had not been rescinded, even though the Applicant referenced the prior amendment leading to the disclaimer ***and*** "revoke[d] any estoppel either express or that may be inferred" in the parent patent's prosecution. *Id.* at *9-10. The disclaimer still carried to the child patents because the Applicant did not "(1) specify what the prior disclaimer was, (2) state the basis of the examiner's previous rejection, [or] (3) identify the prior art that gave rise to the prior disclaimer." *Id.* at *10. Here, the Plaintiff made no attempt whatsoever to meet the exacting standards required for rescission of the '071 patent's prosecution disclaimer.

The doctrine of claim differentiation does not save the Continuation Patents from Defendants' construction, either. While the dependent claims imply that the "outer surface" in the independent claims is not limited to the outermost surface due to claim differentiation, a "construction dictated by the written description or prosecution history" overcomes "[a]ny presumption created by the doctrine of claim differentiation. *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011); *see also Canopy Growth Corp. v. GW Pharms., PLC*, No. 6:20-cv-01180-ADA, 2021 WL 8015834, at *2 (W.D. Tex. Nov. 27, 2021) ("The [claim differentiation] presumption is also rebutted when there is a contrary construction dictated by the written description or prosecution history").

Therefore, the '071 patent prosecution disclaimer extends to the Continuation Patents, and Defendant's proposed construction of "outer surface" should be adopted for all patents.

> **B.**      **"fixedly attached" ('071 pat., cl. 1, 10)**

| Defendant's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "fastened to or adjoined such that it does not move and cannot be removed" | Plain and Ordinary Meaning |

Defendants' proposed construction for the term "fixedly attached" should be adopted because it is drawn directly from Plaintiff's prosecution history disclaimer and arguable lexicography. In distinguishing the Ferber reference, Plaintiff "highlight[ed] a very important distinction between Ferber and the present invention." Ex. 2 (2019-06-25 Applicant Remarks) at 10-11 (emphasis added). Plaintiff contrasted its invention with Ferber's connectors, which can be "removed from the compartment for use," while ***"[t]he entire purpose of the present invention is to provide the female USB connector that does not move (claimed as "fixedly attached").*** *Id.* at 11 (emphasis added). Plaintiff argued that the fact it is "fixedly attached" makes it "more secure and easy to plug the charging interface of the product to be charged into the female connector of

the USB extension cable)."  *Id.*  Plaintiff further contrasted Ferber's "removably retained" connector with the claimed connector "which is exposed and ***fixedly attached*** . . . ."  *Id.* at 11-12 (emphasis added).  Defendant's construction best captures the scope of "fixedly attached" in view of this disclaimer and lexicography—the connector must be fastened to or adjoined, such that it does not move, and cannot be removed.

Other intrinsic evidence confirms Defendant's construction is correct.  The independent claims of the '071 patent recite that the "operative end of the female connector" of the USB cable is "fixedly attached above the exterior of the bag."  '071 pat., cl. 1, 10.  This claim language stands in contrast to that of the Continuation Patents, which recite instead that the operative end is "removably retained" or simply "retained" in a sheath that provides the connector in a position "above the outer surface of the body."  '137 pat., cl. 1; '138 pat., cl. 1; '009 pat., cl. 1.  Being "attached" has a different plain meaning from being simply "retained"—attachment connotes fastening or joinder, while retainment does not.  The contrast between "fixed" attachment and "removable" retainment (claimed in the '137 patent) further cements the distinction.  The '071 patent claims a female connector attached or adjoined such that it is "fixed," or prevents movement or removal, while the '137 patent claims "removably retain[ing]" the connector, effectively requiring the ability to remove the connector.  Even assuming *arguendo* that the plain meaning of "fixedly attached" does encompass some form of removable retainment (it does not), Plaintiff disclaimed any such scope in distinguishing Ferber.  Ex. 2 at 11-12.

The specification of the '071 patent comports with the meaning evident from the prosecution history and claims.  For example, the '071 patent's Abstract describes the female connector-sheath assembly that allows a user to charge external products as a "fixture."  *See* '071 pat., Abstract.  Further, the only use of the word "attach" in the entire '071 patent's specification

is a description of a "dust cap" (highlighted in green) that is "attached" to the side of the female connector (highlighted in orange).  *Id.*, 1:63-67, 3:36-41, 5:18-21.  The figures show that the dust cap is fastened or adjoined to the side of the female USB connector:



**Figure 4: '071 pat. Fig. 2 (annotated)**

Finally, extrinsic evidence showing a POSITA's understanding of the meaning of "fixedly attached" at the time of the invention shows Defendant's construction is correct.  "Attached" means to "fasten or join one thing to another."  Ex. 3 (Longman Dictionary of Am. English (5th Ed., 2014)) at -615; *see also* Ex. 4 (The Am. Heritage Desk Dictionary (2014)) at -634 (defining "attach" as "to fasten or become fastened; connect").  Adding the definition of "fixedly" reinforces the construction already apparent from the intrinsic evidence showing that the connector cannot be moved or removed.  Ex. 5 (Longman Dictionary of Am. English (5th Ed., 2014)) at -663 (defining "fixed" as "firmly fastened to something and in a particular position"); Ex. 6 (The Chambers Dictionary) (13th Ed., 2014)) at -669 (defining "fixed" as "fast ,lasting, permanent; not varying or subject to alteration"); Ex. 7 (The Am. Heritage Desk Dictionary (2014)) at -672 (defining "fixed" as "firmly in position; stationary").

Defendant's construction is thus supported by both the intrinsic and extrinsic evidence, and should be adopted.

### C.   "adjacent to the [power cable outlet/first port]" ('071 pat., cl. 1, 10; '009 pat., cl. 1)

| Defendant's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "lying near, close, contiguous; adjoining; neighboring the [power cable outlet/first port]" | Plain and Ordinary Meaning |

The term "adjacent to" should be construed to mean "lying near, close, contiguous; adjoining; neighboring" as it relates to the distance between the female connector and the power cable outlet and/or first port ("Distance").   Lexicography and disclaimer dominate claim construction when present.   *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (*en banc*).   Plaintiff amended claims 1 and 10 during prosecution of the '071 patent to avoid repeated rejections in view of Ferber because Ferber disclosed a female connector "adjacent to the power cable outlet" (annotated in Fig. 21 of Ferber, below).   Ex. 1 (2019-05-31 Non-final Rejection) at 3–4; *see also* Ex. 8 (2018-11-01 Rejection) at 4–5.



**Figure 5: Ferber Fig. 21 (annotated), from '071 pat. prosecution history**

14

Patentee, in response, disclaimed the Distance in Ferber as "the opposite of adjacent, being *remotely* located" and explicitly defined "adjacent to" as "lying near, close, or contiguous; adjoining; neighboring" to exclude Ferber's Distance.  Ex. 2 (2019-06-25 Applicant Arguments) at 6–7.  Defendant, now, adopts Plaintiff's definition as its proposed construction.  Plaintiff's definition of "adjacent to" disclaims any Distance similar to the Distance disclosed in Ferber. Indeed, Defendant's construction is supported by every sheath-containing Figure in the '071 patent: in each, the Distance is, effectively, zero.  The female connector, with its sheath, is located immediately on top of the power cable outlet.

Patentee's lexicography and disclaimer in the '071 patent also applies to its continuation-in-part, the '009 patent.  *Omega Eng'g,*, 334 F.3d 1314 at 1334 (Fed. Cir. 2003) (importing disclaimer from parent to continuation-in-part).  The '009 patent uses the same disputed term ("adjacent to") to describe the same Distance.  In the '009 patent, the distance is between the portion of the body attached to the surrounding bottom portion and the first port (another name for the power cable outlet).  Plaintiff in the prosecution of '009 patent made no effort to inform the Examiner that its previous disclaimer and lexicography should be rescinded.  *Hakim*, 479 F.3d at 1318; *see also* § III.A.2 (describing the exacting standard for withdrawal of disclaimer in continuations).  Nor is there any evidence that Plaintiff wished such a rescission here.  Indeed, Plaintiff implicitly affirms its previous disavowal, as all figures of the '009 patent show the sheath and its surrounding bottom portion covering the first port—i.e., there is no Distance (like that shown in Ferber).



**Figure 6: Comparison of Ferber to '009 Patent**

*Ferber, Fig. 21 (annotated) (Distance between female connector and first port/power cable outlet)*

*'009 Patent, Fig. 53 (annotated) (no Distance pictured, Female Connector/ Sheath/Surrounding Bottom Portion is "adjacent to" the first port/power cable outlet)*

Since "the meaning of [the] claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence." *E.g.*, *Seabed*, 8 F.4th at 1287. Defendant's construction of "adjacent to" is drawn from the intrinsic evidence and should be adopted for both the '071 and '009 patents.

**D.    "surrounding bottom portion" ('137 pat., cl. 1, 20, 21; '138 pat., cl. 1, 2, 20, 21, 23; '009 pat., cl. 1, 2, 20, 21, 29)**

| Defendant's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "a flat portion that extends outward from the bottom of" | Plain and Ordinary Meaning |

The specification and prosecution history make clear that Defendant's proposed construction of "surrounding bottom portion" is correct, and that a mere "Plain and Ordinary

Meaning" construction here is insufficient.  Each Continuation Patent has claims reciting a "surrounding bottom portion" that surrounds the left and right sides and the closed and open ends of the sheath, with the '138 and '009 patents additionally reciting that the surrounding bottom portion surrounds a "top side."  *E.g.*, '137 pat., cl. 1; '138 pat., cl. 1; '009 pat., cl. 1.  The '138 and '009 patents have additional claims reciting the "surrounding bottom portion" surrounding a "raised portion" with a USB opening.  *E.g.*, '138 pat., cl. 23; '009 pat., cl. 29.

The meaning of "surrounding" is unclear from a plain reading of the claim because a POSITA would have understood the term to have multiple meanings applicable to a "sheath" that retains the female connector of a USB cable.  The plain meaning of "surround" means to "extend on all sides of simultaneously," encircle," or "enclose or confine on all sides."  Ex. 9 (The Am. Heritage Dictionary of the English Language (5th Ed., 2019)) at -642; *see also* Ex. 10 (The Merriam-Webster Dictionary (2019)) at -649 (defining "surround" as "to enclose on all sides; encircle"); Ex. 11 (Collins English Dictionary (8th Ed., 2019)) at -660 (defining "surround" as "to encircle or enclose").  With this plain and ordinary understanding, a "bottom portion" that surrounds the sides of the sheath could be any one of the three configurations in yellow below, depending on the orientation of the sheath.

| Figure 7: '137 pat. figures showing possible "bottom portion" orientations | | |
|---|---|---|
| *'137 pat., Fig. 2 (showing sheath open end pointing down)* | *'137 pat., Fig. 44 (showing connector held flat against the side of the bag)* | *'137 pat., Fig. 2 (rotated, such that sheath open end points sideways* |



The '009 patent also claims a "cable connector *having surrounding sides*, an operative end, a cord end, and a cord," consistent with one of the plain readings of "surrounding" in the "surrounding bottom portion" context.  '009 pat., cl. 29.  The natural reading of "surrounding sides" of a cable connector is the four rectangular sides that encircle the connector.  A bottom portion surrounding those sides would correspond to the example at the far left above.

A detailed read of the specification, however, reveals that the meaning of "surrounding bottom portion" is none of the above, and is instead a flat portion that extends outwardly from the bottom of the sides of the sheath.

| Figure 8: '009 pat. figures showing the "surrounding bottom portion" or "surrounding bottom attachment portion" |
|---|



'009 pat., Fig. 44 (annotated)

'009 pat., Fig. 45 (annotated)

'009 pat., Fig. 46 (annotated)

'009 pat., Fig. 53 (annotated)

The specifications of the Continuation Patents describe a flat "surrounding bottom portion" or "surrounding bottom attachment portion" that surrounds the sides of the sheath, as recited in the claims. *E.g.*, '137 pat., 5:60-62 ("The surrounding bottom attachment portion is a flat portion surrounding the at least three sides, the first tapered closed end and the second open end of the sheath"); '138 pat., 6:6-8 (same); '009 pat., 6:15-18 (same); *see also* '138 pat., 6:52-59 (similar); '009 pat., 6:61-67 (similar). Each figure of the Continuation Patents depicting the "surrounding bottom portion" or "surrounding bottom attachment portion"—corresponding to 4508, 4602, 4402, or 5300 in the figures ('137 pat., 5:57-60; '138 pat., 6:3-6, 6:52-57, 7:39-41; '009 pat., 6:12-15, 6:61-66, 7:47-51)—confirms that the portions are flat portions that extend outwardly from the bottom part of the sides the claimed "portion" surrounds, as depicted above.[4]

The '138 and '009 patent specifications contain an additional disclosure supporting Defendant's construction. The two patents explain that the surrounding bottom portion "surrounding at least a portion of one of the left side (4404), the right side (4406), the top side (4408), the first closed end (4410) and the second open end (4400) of the sheath" means that it "surround[s] a portion of the sheath that extends above the outer surface of a body, as depicted in Figs. 47, 48, and 49." '138 pat., 6:59-65; '009 pat., 7:1-7. As the referenced figures 47-49 and associated specification descriptions show, the surrounding bottom portion is a flat portion that extends outward from the bottom of each side it surrounds.

---

[4] Figures 44, 45, and 46 are identical in the three Later-Filed Patents. Figure 53 appears only in the '138 and '009 patents and is identical in those two patents.



| **Figure 9: '138 pat. figures illustrating surrounding bottom portion** | | |
|---|---|---|
| *'138 pat., Fig. 47* | *'138 pat., Fig. 47* | *'138 pat., Fig. 49* |

The patents' description of these figures shows that the surrounding bottom portion extends outward from the sides that it surrounds.  Figure 47 shows that the left side of the portion (4702) extends out from the bottom of the left side of the sheath (4708) and the right side (4704) from the bottom of the right side of the sheath (4710).  *See* '138 pat., 6:65-7:16; '009 pat., 7:7-27.  Figure 48 shows that the first "end portion" of the surrounding bottom portion (4802) extends from the first closed end of the sheath (4806), and the second "end portion" (4804) from the second open end of the sheath (4808).  *See* '138 pat., 6:65-7:16; '009 pat., 7:7-27.  Fig. 49 shows that the surrounding bottom portion may also extend from more than one side by depicting a surrounding bottom portion (4906) attached to the left side (4902), right side (4905), and the second open end (4900).  *See* '138 pat., 7:16-19; '009 pat., 7:24-27.  Thus, the surrounding bottom portion as claimed must extend outward from the bottom of the sides that it surrounds—the left side, right side, and open/closed ends.  Defendants' construction captures this requirement.

The prosecution history further confirms that the "surrounding bottom portion" must **extend outward** from the sides of the sheath, and cannot simply be, for example, the bottom of the

20

sheath.  During the prosecution of the '137 patent, an Examiner advised Plaintiff that U.S. Patent

No. 10,547,036 ("Ashley") discloses the claimed surrounding bottom portion.  Ex. 12 (2020-06-

12 Examiner Interview Summary) at -209.  In response, Plaintiff distinguished Ashley by arguing

that "Ashley does not teach a surrounding bottom portion as in the claimed invention, but rather

teaches a ***flat closed bottom*** (not surrounding the left side and the right side, the first tapered closed

end and the second open end of the sheath as claimed)."  Ex. 13 (2020-07-06 Applicant Remarks)

at -205.  Plaintiff further argued that "[a]t best, Ashley teaches a bottom cover and not a

surrounding bottom portion as claimed."  *Id.*   Plaintiff also confirmed during prosecution of the

'009 patent that the claimed "surrounding bottom portion" is the portion shown extending from

the bottom of the sheath in Figure 44 (indicated by the arrow below), adding that the portion

"allows for attachment to the body and secure insertion and removal of the cable connector."

| **Figure 10: Figure from '009 patent prosecution history illustrating "surrounding bottom portion"** |
|---|
| *'009 pat., Fig. 44* (Ex. 14 (2022-06-09 Applicant Remarks) at -534 (annotation in original, showing '009 pat., Fig. 44)) <br>  <br> Fig. 44 |

Finally, Plaintiff argued in an interview that the "surrounding bottom portion [of the invention] was not part of the body/bag."  Ex. 15 (2022-06-13 Examiner Interview Summary) at -521.

All of the above-cited intrinsic evidence from the prosecution history supports Defendant's proposed construction.  The claimed "bottom portion" cannot be an enclosed bottom for the sheath or a part of the bag body (instead of the sheath), and is therefore a portion that extends outward from the bottom of the sheath's sides.  Defendant's construction is also consistent with the portion of the figures that Plaintiff expressly pointed to as the claimed "surrounding bottom portion."

Defendant's construction should thus be adopted.

**E.      "attachment portion that extends around a bottom portion of the sheath" ('137 pat., cl. 7; '138 pat., cl. 8; '009 pat., cl. 8, 9)**

| Defendant's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Indefinite | Plain and Ordinary Meaning |

As explained above, the independent claims of the Continuation Patents recite a "surrounding bottom portion."  *E.g.*, '137 pat., cl. 1; '138 pat., cl. 1; '009 pat., cl. 1.  Each of the Continuation Patents additionally have a dependent claim that depends from those independent claims, reciting an "attachment portion that extends around a bottom portion of the sheath."  '137 pat., cl. 7; '138 pat, cl. 8; '009 pat, cl. 8, 9.  Because a POSITA would not be able to determine what an "attachment portion" is, distinct from a "surrounding bottom portion" (or whether there even is a distinction) with reasonable certainty, these claims are indefinite.  *E.g.*, *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1355, 1340-41 (Fed. Cir. 2015) ("A patent is indefinite 'if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'" (quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, 562 US. 898, 901 (2014))).

22

The intrinsic evidence indicates that the "attachment portion" claimed in the dependent claims is the same thing as the "surrounding bottom attachment portion" described in the specification, which in turn is the same thing as the "surrounding bottom portion" claimed in the independent claims.  But the scope of the dependent and independent claims must be different, or the claims would not be patentably distinct from the independent claims.  *See*, *e.g.*, *Landers v. Sideways, LLC*, 142 Fed. App'x. 462, 466 (Fed. Cir. 2005) (finding district court's construction erroneous in part because it would have given two claims the same scope).

The only reference to an "attachment portion" in the Continuation Patents is to a "surrounding bottom attachment portion."  *E.g.*, '137 pat., 5:57-60; '138 pat., 6:3-6; '009 pat., 6:13-15.  All three patents point to the exact same thing as both the "surrounding bottom attachment portion" and simply the "attachment portion."  *Compare* '137 pat., 5:57-60 (referencing "a surrounding bottom attachment portion (***4508 and 4602***)") *with id.*, 5:64-66 (referencing an "attachment portion (***4508 and 4602***)" (emphasis added)); *see also* '138 pat., 6:3-6, 6:10-11; '009 pat., 6:12-15, 6:19-21.  To further confuse the issue, the '138 and '009 patents add additional discussion of a "surrounding bottom portion" separate from the "surrounding bottom attachment portion," but appear to point to the exact same thing for both terms.  *Compare*, *e.g.*, '138 pat., 6:6-8 ("The surrounding bottom attachment portion is a flat portion surrounding the at least three sides, the first tapered closed end and the second open end of the sheath") *with id.*, 6:55-59 (". . . and a surrounding bottom portion (4402) surrounding at least a portion of one of the left side (4404), the right side (4406), the top side (4408), the first closed end (4410) and the second open end (4400) of the sheath"); *see also* '009 pat. at 6:15-18, 6:64-7:1.  The figures also show that the "surrounding bottom attachment portion (4508 and 4602)" and the "surrounding bottom portion (4402)" refer to the same thing.



*See also* '009 pat., Figs. 44-46.

Despite the conflation of these terms in the specification, the claims are written such that "attachment portion that extends around a bottom portion of the sheath," (dependent claims) and "surrounding bottom portion" (independent claims) cannot have the same meaning.   .   The dependent claims at issue do not recite "***the*** attachment portion" or "***the*** bottom portion," as they would do if they were referring back to the "surrounding bottom portion" of the independent claims for antecedent basis.   Rather, the use of the indefinite article "a" and the lack of the word "surrounding" indicates the "attachment portion that extends around a bottom portion of the sheath" claimed in the dependent claims must be distinct from the "surrounding bottom portion" claimed in the independent claims.   No other claim in any of the Continuation Patents recites "a bottom portion of the sheath" or provides any explanation regarding what a bottom portion may be, nor does the specification use that phrase.   Nothing in the prosecution histories of any of the

Continuation Patents clarify the scope of what an "attachment portion" is, separate from the "surrounding bottom portion" or "surrounding bottom attachment portion."

As the intrinsic evidence does not otherwise describe a "bottom portion" separate from the "surrounding bottom portion," a POSITA would not have understood what the claimed "attachment portion" must "extend[] around."[5]  There is no evidence in the claims, specification, or prosecution history that would enable a POSITA to determine the difference in scope between the "attachment portion" claims and the "surrounding bottom portion" claims.  These dependent claims are therefore indefinite.

**F.    "above" ('137 pat., cl. 19; '138 pat., cl. 19; '009 pat., cl. 19)**

| Defendant's Proposed Construction | Plaintiff's Proposed Construction |
| --- | --- |
| Indefinite | Plain and Ordinary Meaning |

The term "above" as recited in the dependent claims of each of the Continuation Patents is indefinite because the claims in question recite nothing about orientation.  Each Continuation Patent contains a dependent claim reciting a sheath attached to a body with the closed end "above" the open end.  '137 pat., cl. 19 ("wherein the sheath is attached to the body with the first tapered closed end above the second open end"); '138 pat., cl. 19 (same); '009 pat., cl. 19 (same).  This term as used in these claims is indefinite because a POSITA would not be able to understand the scope of this term in the dependent claims with reasonable certainty.  *See*, *e.g.*, *E.g.*, *Teva Pharms.* 789 F.3d at 1340-41.

The plain meaning of the term "above" would have been well-understood by a POSITA, regardless of whether the '071 patent's filing date or the Continuation Patents' filing date is

---

[5] Even if the claimed "a bottom portion" were viewed as the previously claimed "surrounding bottom portion," the claims contain no guidance as to where the "surrounding bottom portion" would end and the "attachment portion" would begin.

applied.  *E.g.*, Ex. 3 (Longman Dictionary of Am. English (5th Ed., 2014)) at -612-13 (defining "above" as "in or to a higher position than something else"); Ex. 16 (The Chambers Dictionary (13th Ed., 2014)) at -626-27 (defining "above" as "in or to a position higher than that of"); *see also*, *e.g.*, Ex. 10 (The Merriam-Webster Dictionary (2019)) at -646 (defining "above" as "in or to a higher place than; over"); Ex. 11 (Collins English Dictionary (8th Ed., 2019)) at -657 (defining "above" as "higher than; over").

As applied to the dependent claims at issue, however, the meaning is unclear.  For example, the backpacks and luggage to which the claimed sheath may be attached have multiple natural orientations.  A backpack could be straight up (as when it is worn) or lie on its back, and a luggage can similarly be straight up (as when it is being transported) or lie on its back (as when it is being packed/unpacked).  Which side is "above" or "higher" depends on the orientation of the bag or luggage, and the claims recite nothing about orientation or how a POSITA would determine which side is "above" another to avoid infringing the claim.  The sheath may also be attached to other items such as, for example, "gloves" (*e.g.*, '137 pat., cl. 3)—but it is unclear what a natural "up" orientation of a pair of gloves would be.  The meaning of "above" in these claims is thus unclear, necessitating review of the specifications.  *See*, *e.g.*, *Power Integrations, Inc. v. Fairchild semiconductor Int'l, Inc.*, 711 F.3d 1348, 1361 (Fed. Cir. 2013) ("If . . . [a claim term's] meaning is not clear from a plain reading of the claim, 'we turn to the intrinsic evidence, including the written description, to aid in our construction of that term.'" (quoting *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1326 (Fed. Cir. 2001))).

Unfortunately, the specifications of the Continuation Patents provide no more clarity than the claims.  There is no discussion in any Asserted Patent regarding the proper orientation of a bag, luggage, or any other item for determining when one thing is "above" the other.  The

specifications of the '137 and '138 patents point to numerous figures as depicting a sheath attached to a body with a "closed end" above an "open end," and state that in this configuration, the "open end . . . faces the ground." '137 pat., 6:33-38 (listing figures 1, 4, 6, 7, 8, 9, 10, 32, 33, 34, 36, 37, 38, 40, 41, and 42); '138 pat., 6:45-50 (same). Some of the listed figures show the sheath attached to bag or luggage in an upright orientation. *See*, *e.g.*, '137 pat., Figs. 1, 4, 6, 7, 8, 9, 10, 32, 33, 34. In the remaining figures, it is unclear which way the sheath is facing, because the sheath is represented simply as a rectangle with no way to discern which way is "up" or "down" or which end is "above" the other. *See*, *e.g.*, *id.* at Figs. 36, 37, 38, 40, 41, 42.

Complicating matters further, although the '009 patent cites the same figures as the '137 and '138 patents, the figures of the '009 patent are different from those in the other continuation patents. '009 pat., 6:54-59 (listing same figures as showing a "first tapered closed end above the second open end"). Several figures listed in the '009 patent not only fail to show what it means to for the closed end to be "above" the open end, but also appear to contradict all understanding of the term "above." For example, Figure 8 of the '009 patent, reproduced below with annotations, depicts the sheath as a flat, half-disc shaped portion extending perpendicularly outward from the surrounding bottom portion. When the surrounding bottom portion is attached to, for example, an upright backpack, the closed end would be level with the open end, not "above" it, regardless of the orientation of the sheath, as shown below. If the backpack were lying on its back, the closed end of the sheath would be ***below*** the open end—the opposite of what is claimed.[6]

---

[6] Moreover, there is no description or figure showing what an "above" orientation would be with respect to gloves. Indeed, the Continuation Patents' discussion of the closed end being above the open end fails to list Figure 35—the only figure depicting the sheath attached to a pair of gloves—leaving a POSITA with no guidance. '137 pat., 6:33-38; '138 pat., 6:45-50; '009 pat., 6:54-59; *see also*, *e.g.*, '137 pat., Fig. 35.

| Figure 12: Figures from '009 patent illustrating closed end "above" open end | |
|---|---|
| *'009 pat., Fig. 8 (annotated)* | |
|  | |
| *Representation of '009 pat., Fig. 8 attached to bag lying on its back, causing the "open end" to be above the "closed end" (the opposite of what is claimed)* | *Representation of '009 pat., Fig. 8 attached to bag standing upright, causing the "open end" and "closed end" to be level.* |

Nothing in the prosecution histories of the Continuation Patents provides further clarification for the closed end of the sheath being "above" the open end. Nor would extrinsic evidence help a POSITA understand what "above" means in the context of, for example, a pair of

gloves.  Because a POSITA would not be able to understand the scope of the claims with reasonable certainty, these dependent claims of the Continuation Patents are indefinite.

## IV.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court adopt its proposed constructions for the disputed claim terms of the Asserted Patents.

Dated:  February 29, 2024

**FISH & RICHARDSON P.C.**

By:  */s/ Bailey K. Benedict*

Neil J. McNabnay
njm@fr.com
Texas Bar No. 24002583
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

Bailey K. Benedict
benedict@fr.com
Texas Bar No. 24083139
**FISH & RICHARDSON P.C.**
909 Fannin Street, Suite 2100
Houston, TX 77010
(713) 654-5300 (Telephone)
(713) 652-0109 (Facsimile)

Wonjoon Chung (*Pro Hac Vice*)
chung@fr.com
Georgia Bar No. 396468
**FISH & RICHARDSON P.C.**
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
(404) 892-5005 (Telephone)
(404) 892-5002 (Facsimile)

**ATTORNEYS FOR DEFENDANT
SAMSONITE INTERNATIONAL S.A.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on February 29, 2024 to all counsel of record who are deemed to have

consented to electronic service via the Court's CM/ECF system.

*/s/ Bailey K. Benedict*
Bailey K. Benedict
