**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

SWISSDIGITAL USA CO., LTD.

        *Plaintiff*,

    v.

SAMSONITE INTERNATIONAL S.A.,

        *Defendant*.

Civil Action No. 6:23-cv-00196-ADA-DTG

**JURY TRIAL DEMANDED**

**SWISSDIGITAL USA CO., LTD.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

**Page**

I.  BACKGROUND.................................................................................................... 1

II.  CLAIM CONSTRUCTION LEGAL STANDARDS........................................... 2

    A.  Claim Construction................................................................................... 2

    B.  Departing from the Ordinary Meaning of a Claim Term..........................4

    C.  Indefiniteness ........................................................................................... 5

III.  TERMS DISPUTED BY SAMSONITE .......................................................... 6

    A.  "outer surface of [the/a] [bag or luggage] [body]"................................. 6

    B.  "fixedly attached"...................................................................................12

    C.  "adjacent to the [power cable outlet/first port]".....................................14

    D.  "surrounding bottom portion"................................................................16

    E.  "attachment portion that extends around a bottom portion of the sheath"...............18

    F.  "above"................................................................................................... 20

IV.  CONCLUSION................................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014)............................................2

*Athletic Alts., Inc. v. Prince Mfg.*, 73 F.3d 1573 (Fed. Cir. 1996)....................................3

*Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361 (Fed. Cir. 2003)..................................3

*Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336 (Fed. Cir. 2014)..............................3, 8, 16, 18

*Advanced Media Networks, LLC v. AT&T Mobility LLC*,
    748 F. App'x 308 (Fed. Cir. 2018)..............................................................14

*Baker Hughes Oilfield Operations, Inc. v. Prod. Tool Sol., Inc.*,
    No. 1-17-CV-291-LY, 2020 WL 1916691 (W.D. Tex. Apr. 17, 2020)....................4

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338 (Fed. Cir. 2008)...................9

*BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360 (Fed. Cir. 2017)...................20, 21

*Biogen, Inc. v. Berlex Laby's, Inc.*, 318 F.3d 1132 (Fed. Cir. 2003)..................................9

*Boston Sci. Corp. v. Cook Inc.*, 187 F. Supp. 3d 249 (D. Mass. 2016)...............................6

*ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345 (Fed. Cir. 2022)................6, 21

*Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182 (Fed. Cir. 1998)......................3

*Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988)..................3

*Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319 (Fed. Cir. 2009)...........................*passim*

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002).........................14

*Cyboenergy, Inc. v. Altenergy Power Sys. U.S., Inc.*, No. 6:22-CV-01136-KC,
    2023 U.S. Dist. LEXIS 227791 (W.D. Tex. Dec. 20, 2023).......................................3

*Datanet LLC v. Dropbox, Inc.*, No. 6:22-CV-001142-OLG-DTG,
    2023 WL 7545234 (W.D. Tex. Nov. 10, 2023)........................................................16

*Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 809 F.3d 1223 (Fed. Cir. 2015).................6, 20, 21

*Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314 (Fed. Cir. 2016)........................4

*GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304 (Fed. Cir. 2014)......................4, 5, 14, 15

*Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362 (Fed. Cir. 2014)................................*passim*

*Hand Held Prod., Inc. v. Amazon.com, Inc.*, No. CV 12-768-RGA-MPT,
    2014 WL 2873902 (D. Del. June 24, 2014)...................................................................6

*Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367 (Fed. Cir. 2014)............................................4

*In re Hiniker Co.*, 150 F.3d 1362 (Fed. Cir. 1998)............................................................................2

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004).........2

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004)................................3, 17, 19

*Micropairing Techs. LLC v. Toyota Motor Mfg. Texas Inc.*,
    No. SA-21-CV-00940-XR, 2022 WL 62540 (W.D. Tex. Jan. 5, 2022).....................................4

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014)........................................5, 6, 19, 20

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008).......................4

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)............................................................*passim*

*Pipp Mobile Storage Sys., Inc. v. Innovative Growers Equip., Inc.*,
    No. 21 C 2104, 2022 WL 11048811 (N.D. Ill. Oct. 19, 2022)...................................................21

*Pisony v. Commando Constr., Inc.*, No. W-17-CV-00055-ADA,
    2019 WL 928406 (W.D. Tex. Jan. 23, 2019)....................................................................14

*Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998)....................2, 5, 8

*ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374 (Fed. Cir. 2003)................................................9

*Sesaco Corp. v. Equinom Ltd.*, No. 1:20-CV-01053-LY,
    2022 WL 17257244, (W.D. Tex. Nov. 28, 2022)...............................................................6, 21

*SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331 (Fed. Cir. 2005)...............................20

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370 (Fed. Cir. 2017)............................................5

*Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012)...................4, 5, 15, 17

*3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315 (Fed. Cir. 2013)................................5

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002)............................................2

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997)................................................4

*VDP Patent, LLC v. Welch Allyn Holdings, Inc.*, 623 F. Supp. 2d 414 (S.D.N.Y. 2008).....6, 19, 20

*Ventana Med. Sys. v. Biogenex Laby's, Inc.*, 473 F.3d 1173 (Fed. Cir. 2006)..................................9

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015)....................................................2

*Woodrow Woods & Marine Exhaust Sys., Inc. v. Deangelo Marine Exhaust, Inc.*,
    692 F.3d 1272 (Fed. Cir. 2012)....................................................................................................7

**Statutes**

35 U.S.C. § 112................................................................................................................................5

Plaintiff Swissdigital USA Co., Ltd. ("Swissdigital" or "Plaintiff") files this Responsive Claim Construction Brief in response to Samsonite International S.A. ("Samsonite" or "Defendant")'s Opening Claim Construction Brief. As set forth below, Swissdigital respectfully requests that the claim terms identified by Samsonite be construed as having their ordinary and customary meaning.

## I.    BACKGROUND

U.S. Patent Number 10,574,071 (the '071 Patent) issued on February 25, 2020, on an application filed on August 26, 2015. Plaintiff has asserted claims 1, 6, 9, and 10 of the '071 Patent against Samsonite. U.S. Patent Number 10,931,138 (the '138 Patent) is a continuation-in-part of a continuation of the application that led to the '071 Patent and issued on February 23, 2021. Plaintiff has asserted claims 1, 2, 4–11, and 16–23 of the '138 Patent against Samsonite. U.S. Patent Number 10,931,137 (the '137 Patent) is a continuation of the application that led to the '071 Patent and issued on February 23, 2021. Plaintiff has asserted claims 1, 3–4, 6–10, and 18–21 of the '137 Patent against Samsonite. U.S. Patent Number 11,601,009 (the '009 Patent) is a continuation of an application that is a continuation-in-part of the application that led to the '138 Patent and issued on March 7, 2023. Plaintiff has asserted claims 1, 2, 4–11, 16–21, and 29 of the '009 Patent against Samsonite.

Samsonite presents six claim terms for construction in its Opening Claim Construction Brief. *See* Dkt. No. 49 ("OB"). During claim construction in Swissdigital's case against Wenger S.A., where Swissdigital asserted claims from both the '071 and '138 Patents, this Court previously applied the plain and ordinary meaning to two claim terms Samsonite presently attempts to construe: "fixedly attached" and "adjacent to." *See Swissdigital v. Wenger S.A.*, 6:21-cv-00453-ADA-DTG (W.D. Tex. 2022), Dkt. No. 55 at 5–6, 9.

1

Additionally, despite arguing that two of the claim terms it raises are indefinite, Samsonite provides no expert testimony as to the understanding (or lack thereof) of these claim terms by one of ordinary skill in the art at the time of the invention in the context of the patent, specification, and prosecution history.  Samsonite has not met its burden of proving indefiniteness by clear and convincing evidence and none of the terms raised by Samsonite require construction and should thus be given their ordinary and customary meaning.

## II.    CLAIM CONSTRUCTION LEGAL STANDARDS

### A.    Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  "The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim."  *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998).  "[I]n all aspects of claim construction, 'the name of the game is the claim.'"  *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).  "[T]he context in which a term is used in the asserted claim can be highly instructive."  *Phillips*, 415 F.3d at 1314.  The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone."  *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  But "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally

be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004); *Cyboenergy, Inc. v. Altenergy Power Sys. U.S., Inc.*, No. 6:22-CV-01136-KC, 2023 U.S. Dist. LEXIS 227791, at *5, *16–20 (W.D. Tex. Dec. 20, 2023).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alts., Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (finding an ambiguous prosecution history "unhelpful as an interpretive resource").

The general rule—subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (internal quotation omitted). No construction of

a claim term is necessary when a person of ordinary skill in the art could readily ascertain the meaning of the term.  *See Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014); *Baker Hughes Oilfield Operations, Inc. v. Prod. Tool Sol., Inc.*, No. 1-17-CV-291-LY, 2020 WL 1916691, at *9 (W.D. Tex. Apr. 17, 2020).

"Claim construction is a matter of resolution of disputed meanings and technical scope, . . . not an obligatory exercise in redundancy."  *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims."); *Baker Hughes Oilfield Operations, Inc. v. Prod. Tool Sol., Inc.*, No. 1-17-CV-291-LY, 2020 WL 1916691, at *9 (W.D. Tex. Apr. 17, 2020) (holding that the defendant "ha[d] identified no dispute over claim scope that necessitates construction of the term").  At the claim construction stage, "courts should not resolve questions that do not go to claim scope, but instead go to infringement, or improper attorney argument."  *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016); *see also Micropairing Techs. LLC v. Toyota Motor Mfg. Texas Inc.*, No. SA-21-CV-00940-XR, 2022 WL 62540, at *14 (W.D. Tex. Jan. 5, 2022).

**B.    Departing from the Ordinary Meaning of a Claim Term**

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."  *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed.

Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Sols.*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

### C.    Indefiniteness

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Id.* at 911. "Indefiniteness must be proven by clear and convincing evidence." *Sonix*

*Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017). "The burden of proving indefiniteness . . . remains at all times on the party challenging the validity of the patent." *Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015).

Extrinsic evidence may play a significant role in the indefiniteness analysis, as definiteness is evaluated from the perspective of a person of skill and requires a determination of whether such a skilled person would understand the scope of the claim when it is read in light of the specification. *Nautilus,* 572 U.S. at 908; *Dow Chem.*, 809 F.3d at 1225; *see also Boston Sci. Corp. v. Cook Inc.,* 187 F. Supp. 3d 249, 271 (D. Mass. 2016) (stating that expert testimony "is essential to understand what meaning such a person would take from the wording of the patent's claims and specifications"); *Hand Held Prod., Inc. v. Amazon.com, Inc*., No. CV 12-768-RGA-MPT, 2014 WL 2873902, at *5, *16, *27 (D. Del. June 24, 2014) (pointing to Amazon's lack of expert testimony in ultimately rejecting its indefiniteness arguments); *VDP Patent, LLC v. Welch Allyn Holdings, Inc.*, 623 F. Supp. 2d 414, 423 (S.D.N.Y. 2008) (stating that extrinsic evidence may be necessary to invalidate a claim as indefinite). "Just because a term is susceptible to more than one meaning does not render it indefinite." *ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345, 1351 (Fed. Cir. 2022); *see also Sesaco Corp. v. Equinom Ltd.*, No. 1:20-CV-01053-LY, 2022 WL 17257244, at *4 (W.D. Tex. Nov. 28, 2022).

## III.   TERMS DISPUTED BY SAMSONITE

### A.   "outer surface of [the/a] [bag or luggage] [body]"

| Claim Term, Clause, or Phrase | Asserted Claims | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "outer surface of [the/a] [bag or luggage] [body]" | '071 pat., cl. 1, 10; '137 pat., cl. 1, 4, 9, 18; '138 pat., cl. 1, 2, 5, 9, 18, 23; '009 pat., cl. 5, 9, 18, 29 | No construction necessary; plain and ordinary meaning | "the outermost surface of [the/a] [bag or luggage] [body] such that it can be accessed without opening the bag or luggage" |

**1.    Samsonite has not established an exception to the general rule that "outer surface" carries its plain and ordinary meaning.**

Plaintiff asserts that no construction is necessary and one of ordinary skill in the art at the time of the invention would understand the ordinary and customary meaning of these terms when read in the context of the claims, specification, and prosecution history of the Asserted Patents. *See Phillips*, 415 F.3d at 1313–14.  The two exceptions to the general rule that claims are construed according to their plain and ordinary meaning—when a patentee sets out a definition and acts as his own lexicographer or when a patentee disavows the full scope of the claim term—are not present here.  *See Golden Bridge Tech., Inc.*, 758 F.3d at 1365.

Samsonite has not established that Applicant relinquished the full scope of the term "outer surface" or engaged in lexicography.  *See Cordis Corp.*, 561 F.3d at 1329 (stating that to disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender).  During prosecution, Applicant merely distinguished a prior art reference (Ferber) from the claim language "a power cable outlet on the outer surface of the bag or luggage body."  At no point during the prosecution did Applicant clearly or unmistakably surrender the full scope of the term "outer surface" or engage in lexicography.

Samsonite also improperly attempts to import limitations from embodiments of the figures and specification of the asserted patents and present conclusory attorney argument without the support of a POSITA.  *See Woodrow Woods & Marine Exhaust Sys., Inc. v. Deangelo Marine Exhaust, Inc*., 692 F.3d 1272, 1283 (Fed. Cir. 2012) ("[C]laims should not be confined to the disclosed embodiments.").  For instance, Samsonite does not provide any POSITA support for its conclusion that any surface other than the outermost surface must be inside of the bag or luggage body or that accessing an external pocket would also require a person to open the bag or luggage

body.   Samsonite's interpretations of the specification and claim language are unsupported attorney argument and should be rejected.   The examiner allowed the language as recited, and there is no reason to deviate from that language, which would be well understood by a skilled artisan.  *See Renishaw*, 158 F.3d at 1248 ("The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim.").   Samsonite's attempt to deviate from the ordinary and customary meaning of this claim term falls short of the presumption laid out by the Federal Circuit.  *See Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").   Accordingly, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

### 2. The claim language of the '137, '138, and '009 Patents is not the same as the claim language of the '071 Patent.

Samsonite improperly attempts to bootstrap claim language of the '071 Patent to language found in the '137, '138, or '009 Patents (the "Continuation Patents") that is materially different both in terms of grammar and structure.   While the term "outer surface of [the/a] [bag or luggage] [body]" appears in claims of each asserted patent, grammatically, the indefinite article preceding the claim term differs, and structurally, the relevant component differs:

| Patent | Claim language |
|---|---|
| **'071 pat., cl. 1, 10** | "a ***power cable outlet*** on __the__ outer surface of the bag or luggage body" |
| **'137 pat., cl. 1, 4, 9, 18** | "...***the sheath*** extends above __an__ outer surface of a body," |
| **'138 pat., cl. 1, 2, 5, 9, 18, 23** | "...***the sheath*** extends above __an__ outer surface of a body," |

| '009 pat., cl. 5, 9, 18, 29 | "wherein *the sheath* is separate from and attaches to a body having...**an** *outer surface*...the sheath extends above the outer surface of the body." |
|---|---|

In the recited claim language, Samsonite conspicuously leaves out the indefinite article ("the" in the'071 Patent and "an" in the other asserted patents) and then ignores this meaningful distinction when arguing disclaimer.  "This court has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008).  That "a" or "an" can mean "one or more" is best described as a rule, rather than merely as a presumption or even a convention.  *Id*.  The exceptions to this rule are extremely limited: a patentee must "evince[ ] a clear intent" to limit "a" or "an" to "one."  *Id*.  The subsequent use of definite articles "the" or "said" in a claim to refer back to the same claim term does not change the general plural rule but simply reinvokes that non-singular meaning.  *Id*.

Applicant's discussion of Ferber in the prosecution history identified by Samsonite involves claim language that included the indefinite article **"the"** (i.e. "the outer surface"); not the broader **"an"** recited in the claims of the '137, '138, and '009 Patents.  Therefore, Applicant's statements relating to the narrower claim language (i.e., "the outer surface") cannot be used to limit different, broader claim language (i.e., "an outer surface").  *ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1383 (Fed. Cir. 2003) ("[P]rosecution history is irrelevant to the meaning of [a] limitation [if] the two patents do not share the same claim language."); *Ventana Med. Sys. v. Biogenex Laby's, Inc.*, 473 F.3d 1173, 1182 (Fed. Cir. 2006) ("[P]rosecution disclaimer generally does not apply when the claim term in the descendent patent uses different language."); *Biogen,*

*Inc. v. Berlex Laby's, Inc.*, 318 F.3d 1132, 1139 (Fed. Cir. 2003) ("Arguments made in a related application do not automatically apply to different claims in a separate application.").

The prosecution history identified by Samsonite is also directed to a different component and disposition of said component than the claim language it attempts to construe in the '137, '138, and '009 Patents.  The prosecution history of the '071 Patent relates to **a power cable outlet** that is "**on** the outer surface of the bag or luggage body" while the claim language of the '137, '138, and '009 Patents identified by Samsonite relates to a **sheath** that "**extends above** an outer surface of a body."  Even if, *arguendo*, Applicant made a disclaimer regarding a ***power cable outlet on*** the outer surface of a bag, that disclaimer could not be applied to limit the scope of a different claim term: ***a sheath that extends above*** an outer surface of a body.  *Cordis Corp.,* 561 F.3d at 1329 (explaining that to disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender).

Every word in a claim has meaning, and "an outer surface" (in the Continuation Patents) has a meaning distinct from "the outer surface" (in the '071 Patent).  Accordingly, Samsonite cannot bootstrap materially distinct language from the '071 Patent to rewrite the claims of the Continuation Patents.

### 3. The express language of the dependent claims of the '137, '138, and '009 Patents make Defendant's proposed construction untenable.

The claims of the '137, '138, and '009 Patents make clear the Patentee understood the scope of "an outer surface" to encompass "one or more" outer surfaces.  Indeed, the express claim language of several dependent claims of the Continuation Patents recite various distinct and separate outer surfaces of a bag or luggage body which cannot be a single outer surface (i.e., "outermost surface"), and Defendant's proposed construction (i.e., "the outermost surface...") would render all these claims nonsensical and meaningless:

10

| Patent | Claims |
|---|---|
| '138 Patent | 5. The sheath as in claim 1, further comprising **a second outer surface that covers the outer surface of the body**.<br><br>18. The sheath as in claim 1, wherein **the outer surface of the body is the inside of a pocket**. |
| '137 Patent | 4. The sheath as in claim 1, further comprising **a second outer surface that covers the outer surface of the body**.<br><br>18. The sheath as in claim 1, wherein the **outer surface of the body is the inside of a pocket**. |
| '009 Patent | 5. The sheath as in claim 1, further comprising **a second outer surface that covers the outer surface of the body**.<br><br>18. The sheath as in claim 1, wherein the **outer surface of the body is the inside of a pocket**. |

The specification also supports the plain and ordinary meaning of "an outer surface of a body." '009 Pat. Col. 6, Ln. 48–53 ("There may be a second outer surface (**3300**) that covers the outer surface of the body (**3302**). Similarly, the outer surface of the body may be the inside of a pocket (See FIGS. 28, 29, 30 and 31). The outer surface onto which the sheath is mounted may have an additional cover or be on the inside of a pocket without departing from the present invention."); '138 Pat. Col. 6, Ln. 27–32 (same); '137 Pat. Col. 6, Ln. 39–44 (same).

Defendant's proposed construction narrows the scope of the claims directly in contradiction to the plain teachings of the '137, '138, and '009 Patents and should be rejected. Accordingly, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

11

### B.      "fixedly attached"

| Claim Term, Clause, or Phrase | U.S. Pat. No. 10,574,071 Claims | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "fixedly attached" | 1, 10 | No construction necessary; plain and ordinary meaning | "fastened to or adjoined such that it does not move and cannot be removed."[1] |

Plaintiff asserts that no construction is necessary and one of ordinary skill in the art at the time of the invention would understand the ordinary and customary meaning of these terms when read in the context of the claims, specification, and prosecution history of the Asserted Patents. *See Phillips,* 415 F.3d at 1313–14.  The two exceptions to the general rule that claims are construed according to their plain and ordinary meaning—when a patentee sets out a definition and acts as his own lexicographer or when a patentee disavows the full scope of the claim term—are not present here.  *See Golden Bridge Tech., Inc.*, 758 F.3d at 1365.  In Swissdigital's case against Wenger, this Court agreed and rejected Wenger's proposed construction of "connected to the bag or luggage permanently," and explained that "the prosecution history does not mandate permanent attachment," and applied the plain and ordinary meaning of "fixedly attached."  *See Swissdigital v. Wenger S.A.*, 6:21-cv-00453-ADA-DTG (W.D. Tex. 2022), Dkt. No. 55 at 9.

Here, Samsonite proposes substantially the same construction that Wenger did based on prosecution history also previously identified by Wenger.  As in the Wenger case, the prosecution history identified by Samsonite does not support its position, and the Court should reject Samsonite's attempt to rewrite the claim language.

---

[1] Defendant originally proposed a construction of "fastened to or adjoined such that it cannot be removed."  Two days before its brief was due, Defendant "identified an additional clarification" and now proposes "fastened to or adjoined such that **it does not move** and cannot be removed."

Samsonite's contorted interpretation of the prosecution history misrepresents the record. The "very important distinction" between Ferber and the present invention "highlighted" by the Applicant is not, as Samsonite argues, that Ferber's connectors can be removed and Applicant's USB connectors cannot; rather, Ferber's connectors ***must be removed to be used***:

> This highlights a very important distinction between Ferber and the present invention. The connectors of Ferber are contained within the compartment, **unless they are to be used**. At that point, **_they are removed_ from the compartment for use**.
>
> Dkt. No. 49-3 at 10 (emphasis added).

Thus, during prosecution, the Applicant distinguished Ferber's teaching of a connector that **required removal to be used**:

> The connector 40 fits inside the pocket 42 **and may be placed there when it is not connected to a mobile device**.
>
> Dkt. No. 49-3 at 8 (emphasis added).
>
> Ferber teaches a connector contained in a pocket, attached to another pocket, under a messenger flat. **Ferber also teaches that the connector** *must be removed* **from the pocket to charge the device**. This does not teach or suggest the claims.
>
> Dkt. No. 49-3 at 13 (emphasis added).

Contrary to Samsonite's argument, the Applicant did not disclaim the scope of "fixedly attached" or engage in lexicography. At best, Applicant merely distinguished the claimed "fixedly attached" USB connector from the Ferber connector that **must** be removed from a pocket **to be used**. The prosecution history in no way supports Samsonite's argument that Plaintiff narrowed the plain and ordinary meaning of "fixedly attached."

Samsonite also attempts to narrow the scope of "fixedly attached" with attorney argument regarding the scope of other claim language in the other asserted patents ("removably retained" or "retained"). This attorney argument, without any reasoning or support from a person of ordinary

skill in the art at the time of the invention, should be rejected. Similarly, Samsonite's argument that "extrinsic evidence showing a POSITA's understanding of the meaning of 'fixedly attached' at the time of the invention shows Defendant's construction is correct" is without merit. Samsonite's generic dictionary definitions of the individual words "attached" and "fixed" and conclusory argument that these definitions represent a "POSITA's understanding" do not represent an understanding of a POSITA with respect to the meaning of "fixedly attached" within the context of the claims, specification, and prosecution history of the Asserted Patents. *See Phillips,* 415 F.3d at 1313–14.

Thus, Samsonite's proposed construction and its attempt to create a non-infringement argument under the guise of a proposed claim construction should be rejected. *See GE Lighting Sols.*, 750 F.3d at 1309 (explaining that the standard for finding disavowal is "exacting"); *Pisony v. Commando Constr., Inc.*, No. W-17-CV-00055-ADA, 2019 WL 928406, at *6 (W.D. Tex. Jan. 23, 2019). Samsonite's attempt to deviate from the ordinary and customary meaning of these terms and phrases falls short of the presumption laid out by the Federal Circuit. *See Advanced Media Networks, LLC v. AT&T Mobility LLC*, 748 F. App'x 308, 311 (Fed. Cir. 2018) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). Accordingly, as in the Wenger case, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

### C.    "adjacent to the [power cable outlet/first port]"

| Claim Term, Clause, or Phrase | Asserted Claims | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "adjacent to the [power cable outlet/first port]" | '071 pat., cl. 1, 10; '009 pat., cl. 1 | No construction necessary; plain and ordinary meaning | "lying near, close, contiguous; adjoining; neighboring the [power cable outlet/first port]" |

Plaintiffs asserts that no construction of "adjacent to the [power cable outlet/first port]" is necessary and one of ordinary skill in the art at the time of the invention would understand the ordinary and customary meaning of these terms when read in the context of the claims, specification, and prosecution history of the '071 Patent. *See Phillips*, 415 F.3d at 1314. In Swissdigital's case against Wenger, this Court agreed and rejected Wenger's proposed construction of "adjoining" and applied the plain and ordinary meaning of "adjacent to." *See Swissdigital v. Wenger S.A.*, 6:21-cv-00453-ADA-DTG (W.D. Tex. 2022), Dkt. No. 55 at 5–6.

The two exceptions to the general rule that claims are construed according to their plain and ordinary meaning—when a patentee sets out a definition and acts as his own lexicographer or when a patentee disavows the full scope of the claim term—are not present here. *See Golden Bridge Tech., Inc.*, 758 F.3d at 1365; *Thorner*, 669 F.3d at 1367 (Fed. Cir. 2012) ("[A] patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope.").

The prosecution history identified by Defendant does not support its conclusion and fails to establish either of the two exceptions for deviating from the plain and ordinary meaning apply. *See GE Lighting*, 750 F.3d at 1309 ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). Defendant has not established that Plaintiff relinquished the full scope of the term "adjacent to," and contrary to its argument, Applicant did not explicitly define "adjacent to." *Cordis Corp.*, 561 F.3d at 1329 (explaining that to disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender). Rather, during prosecution, Applicant merely distinguished a prior art reference (Ferber) that disclosed an aperture "remotely located" from the connector, correctly characterizing the reference

as "the opposite of adjacent" and further stating that "**no reasonable reading of Ferber could find the female connector retained adjacent to the power cable outlet**." *See* Dkt. No. 49-2 at 6–7 (emphasis added).

Defendant's attempt to deviate from the ordinary and customary meaning of this claim term falls short of the presumption laid out by the Federal Circuit. *Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").

Even if some of Defendant's proposed constructions may overlap with a POSITA's understanding of the ordinary and customary meaning of this claim term, "merely rephrasing or paraphrasing the plain language of a claim by substituting synonyms does not represent genuine claim construction." *Datanet LLC v. Dropbox, Inc.*, No. 6:22-CV-001142-OLG-DTG, 2023 WL 7545234, at *6 (W.D. Tex. Nov. 10, 2023) (cautioning against a construction that, at best, unnecessarily paraphrases the claim term). Accordingly, as in the Wenger case, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

D.     **"surrounding bottom portion"**

| Claim Term, Clause, or Phrase | Asserted Claims | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "surrounding bottom portion" | **'137 pat., cl. 1, 20, 21; '138 pat., cl. 1, 2, 20, 21, 23; '009 pat., cl. 1, 2, 20, 21, 29** | No construction necessary; plain and ordinary meaning | "a flat portion that extends outward from the bottom of" |

Plaintiffs asserts that no construction of "surrounding bottom portion" is necessary and one of ordinary skill in the art at the time of the invention would understand the ordinary and customary meaning of these terms when read in the context of the claims, specification, and prosecution history of the '071 Patent. *See Phillips*, 415 F.3d at 1314. The two exceptions to the general rule that claims are construed according to their plain and ordinary meaning—when a patentee sets out

16

a definition and acts as his own lexicographer or when a patentee disavows the full scope of the claim term—are not present here. *See Golden Bridge Tech., Inc.*, 758 F.3d at 1365; *Thorner*, 669 F.3d at 1367 ("[A] patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope.").

Samsonite's dictionary definitions regarding the meaning of "surround" in isolation and opinions regarding how a POSITA would understand the claim (including its "possible 'bottom portion' orientations"), without the support of a POSITA, are unsupported attorney argument and should be rejected.

Furthermore, to the extent Defendant's proposed construction references the Asserted Patents' specification and figures, these references do not support its proposed construction, are inconsistent with the disclosures in the specification, and improperly attempt to narrow the scope of the claims by adding limitations that do not exist in the prosecution history or specification of the Asserted Patents. *See Cordis Corp.*, 561 F.3d at 1329 ("To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender."). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co.*, 358 F.3d at 913.

Applicant's discussion of the prior art reference, Ashley, during prosecution of the '137 Patent does not amount to disclaimer. Applicant distinguished Ashley as "not a cover for a USB cord, [but] an integrated device with significant on board functionality." Dkt. 49-14 at 6–7.



Ashley Reference, Dkt. 49-14 at 5.

At no point did Applicant narrow the scope of the term "surrounding bottom portion" during the prosecution of this claim.

Defendant's attempt to deviate from the ordinary and customary meaning of this claim term falls short of the presumption laid out by the Federal Circuit.  *See Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."). Accordingly, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

### E.    "attachment portion that extends around a bottom portion of the sheath"

| Claim Term, Clause, or Phrase | Asserted Claims | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "attachment portion that extends around a bottom portion of the sheath" | '137 pat., cl. 7; '138 pat., cl. 8; '009 pat., cl. 8, 9 | No construction necessary; plain and ordinary meaning | Indefinite |

18

The claim language "attachment portion that extends around a bottom portion of the sheath" includes terms commonly used in the English language that are well understood and, when read in light of the specification delineating the patent and the prosecution history, informs, with reasonable certainty, those skilled in the art about the scope of the invention at the time of the invention. *Nautilus, Inc.*, 572 U.S. at 901. Defendant's argument that this claim term is indefinite is based on its faulty premises derived from its incorrect proposed construction of "surrounding bottom portion." The claim language as allowed was reviewed by a patent examiner and found to be definite. Samsonite's contention that this claim term is indefinite is conclusory attorney argument without any reasoning or support from a person of ordinary skill in the art at the time of the invention and should be rejected. *See VDP Patent, LLC*, 623 F. Supp. 2d at 423 (stating that extrinsic evidence may be necessary to invalidate a claim as indefinite).

Furthermore, to the extent Defendant's proposed construction references the Asserted Patent's specification and figures, these references do not support its proposed construction, are inconsistent with the disclosures in the specification, and improperly attempt to narrow the scope of the claims by adding limitations that do not exist in the prosecution history or specification of the Asserted Patents. *See Cordis Corp.*, 561 F.3d at 1329 ("To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender."). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co.*, 358 F.3d at 913.

Accordingly, Samsonite has not met its burden of proving by clear and convincing evidence that the term is indefinite. *Dow Chem. Co.*, 809 F.3d at 1227 (Fed. Cir. 2015) ("The

burden of proving indefiniteness . . . remains at all times on the party challenging the validity of the patent"); *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017) (holding that the "failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence"). Defendant has not proposed an alternative construction. Accordingly, no construction is necessary and the ordinary and customary meaning of this claim term should be applied.

**F.     "above"**

| Claim Term, Clause, or Phrase | Asserted Claims | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "above" | '137 pat., cl. 19; '138 pat., cl. 19; '009 pat., cl. 19 | No construction necessary; plain and ordinary meaning | Indefinite |

The word "above" is a term commonly used in the English language, is well understood, and, when read in light of the specification delineating the patent and the prosecution history, informs, with reasonable certainty, those skilled in the art about the scope of the invention at the time of the invention. *See Nautilus, Inc.*, 572 U.S. at 901. The claim language as allowed was reviewed by a patent examiner and found to be definite. Samsonite's contention that the term "above" is indefinite is conclusory attorney argument without any reasoning or support from a person of ordinary skill in the art at the time of the invention and should be rejected. *See VDP Patent, LLC*, 623 F. Supp. 2d at 423 (stating that extrinsic evidence may be necessary to invalidate a claim as indefinite).

"The test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1340–41 (Fed. Cir. 2005); *Pipp Mobile Storage Sys., Inc. v. Innovative Growers Equip., Inc.*, No. 21 C 2104, 2022 WL 11048811, at *7 (N.D. Ill. Oct. 19, 2022). "Just

because a term is susceptible to more than one meaning does not render it indefinite." *ClearOne, Inc.*, 35 F.4th at 1351 ("Such a test would render nearly every claim term indefinite so long as a party could manufacture a plausible construction."); *Sesaco Corp.*, 2022 WL 17257244, at *9.

A POSITA with knowledge of the various products disclosed in the Asserted Patents would understand the meaning of "above."  Opinions of lawyers that a POSITA would not know what "above" means because a backpack or luggage has "multiple natural orientations" cannot be a basis to determine a claim is indefinite.  Similarly, Samsonite's attorneys' uncertainty as to "what a natural 'up' orientation" would be does not establish that a POSITA would not know how to practice the claims reciting this limitation.

Accordingly, Samsonite has not met its burden of proving by clear and convincing evidence that the term is indefinite.  *See Dow Chem. Co.*, 809 F.3d at 1227 ("The burden of proving indefiniteness . . . remains at all times on the party challenging the validity of the patent"); *BASF Corp.*, 875 F.3d at 1365 (holding that the "failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence").  Defendant has not proposed an alternative construction.  Accordingly, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

## IV.    CONCLUSION

For all of the reasons given above, Plaintiff respectfully requests that all of the terms identified by Samsonite be given their ordinary and customary meanings.

Dated:  March 21, 2024

Respectfully submitted,

By: */s/ Dariush Keyhani*
Dariush Keyhani (*admitted pro hac vice*)
Frances H. Stephenson (*admitted pro hac vice*)
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
T. 202.748.8950
F. 202.318.8958
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com

Jacqueline P. Altman
State Bar No. 24087010
John P. Palmer
State Bar No. 15430600
John A. "Andy" Powell
State Bar No. 24029775
USPTO Reg. No. 71,533
NAMAN HOWELL SMITH & LEE, PLLC
400 Austin Ave., Suite 800
Waco, Texas 76701
jaltman@namanhowell.com
palmer@namanhowell.com
powell@namanhowell.com

Andy Tindel
Texas State Bar No. 20054500
MT2LAW GROUP
MANN | TINDEL | THOMPSON
112 East Line Street, Suite 304
Tyler, Texas 75702
Tel: (903) 596-0900
Fax: (903) 596-0909
atindel@andytindel.com

*Attorneys for Plaintiff Swissdigital USA Co., Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 21, 2024 the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys or record who have who have consented to accept this Notice as service of this document by electronic means.

*/s/ Dariush Keyhani*
Dariush Keyhani
