**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| SWISSDIGITAL USA CO., LTD., | |
| *Plaintiff*, | Civil Action No. 6:23-cv-00196-ADA |
| v. | **JURY TRIAL DEMANDED** |
| SAMSONITE INTERNATIONAL S.A., | |
| *Defendant*. | |

## SAMSONITE'S REPLY CLAIM CONSTRUCTION BRIEF

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     DISPUTED TERMS ........................................................................................... 1

     A.    "outer surface of [the/a] [bag or luggage] [body]" ('071 pat., cl. 1, 10; '137 pat, cl. 1, 4, 9, 18; '138 pat., cl. 1, 2, 5, 9, 18, 23; '009 pat., cl. 5, 9, 18, 29) ........................................................................ 1

          1.    The '071 Patent Intrinsic Evidence Shows that the "Outer Surface" is the "Outermost Surface." ........................................ 2

          2.    The Disclaimer Carries to the Continuation Patents. .................. 4

     B.    "fixedly attached" ('071 pat., cl. 1, 10) ................................................ 7

     C.    "adjacent to the [power cable outlet/first port]" ('071 pat., cl. 1, 10; '009 pat, cl. 1) ...................................................................................... 9

     D.    "surrounding bottom portion" ('137 pat., cl. 1, 20, 21; '138 pat., cl. 1, 2, 20, 21, 23; '009 pat., cl. 1, 2, 20, 21, 29) ...................................... 10

     E.    "attachment portion that extends around a bottom portion of the sheath" ('137 pat., cl. 7; '138 pat., cl. 8; '009 pat., cl. 8, 9) ................ 11

     F.    "above" ('137 pat., cl. 19; '138 pat., cl. 19; '009 pat., cl. 19) ............ 13

III.    CONCLUSION ................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Canopy Growth Corp. v. GW Pharms, PLC*,
  No. 6:20-cv-01180-ADA, 2021 WL 8015834 (W.D. Tex. Nov. 27, 2021) ............................7

*Capital Mach. Co., Inc. v. Miller Veneers, Inc.*,
  524 Fed. App'x. 644 (Fed. Cir. 2013)................................................................................5, 6

*Cordis Corp. v. Boston Sci. Corp.*,
  658 F.3d 1347 (Fed. Cir. 2011)..............................................................................................4

*Duval Wiedmann, LLC v. Inforocket.com, Inc.*,
  No. A-8-CA-028 LY, 2009 WL 10669314 (W.D. Tex. Apr. 21, 2009)...................................1

*Graham v. John Deere Co. of Kansas City*,
  383 U.S. 1 (1966)...................................................................................................................4

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995)..................................................................................................4

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003)..............................................................................................4

*Pall Corp. v. Micron Separations, Inc.*,
  66 F.3d 1211 (Fed. Cir. 1995)................................................................................................1

*Philips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)..............................................................................................8

*Regents of Univ. of Minnesota v. AGA Med. Corp.*,
  717 F.3d 929 (Fed. Cir. 2013)................................................................................................6

*ResQNet.com, Inc. v. Lansa, Inc.*,
  346 F.3d 1374 (Fed. Cir. 2003)..............................................................................................5

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
  653 F.3d 1296 (Fed. Cir. 2011)..............................................................................................6

*Swissdigital USA Co., Ltd. v. Wenger S.A.*,
  No. 6:21-cv-00453-ADA-DTG (W.D. Tex.), Dkt. No. 36 ......................................................9

*Teva Pharms., USA, Inc. v. Sandoz, Inc.*,
  789 F.3d 1335 (Fed. Cir. 2015)............................................................................................12

*Traxcell Techs., LLC v. AT&T Corp.*,
No. 2:17-cv-00718-RWS-RSP, 2019 WL 6037984 (E.D. Tex. Oct. 7, 2019) ........................4

*Traxcell Techs., LLC v. Cellco Partnership*,
No. 6:20-cv-01175-ADA, 2023 WL 2415583 (W.D. Tex. Mar. 8, 2023)........................2, 4, 9

*U.S. v. Jackson*,
426 F.3d 301 (5th Cir. 2005) ..................................................................................................1

*Ventana Med. Sys. v. Biogenex Laby's, Inc.*,
473 F.3d 1173 (Fed. Cir. 2006)...............................................................................................5

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)..................................................................................................3

## I.    INTRODUCTION

Plaintiff Swissdigital USA Co., Ltd. ("Plaintiff") does not substantively address any of the arguments or intrinsic or extrinsic evidence supporting Defendant Samsonite International S.A.'s ("Defendant") proposed constructions.  Instead, Plaintiff spends 5 pages of its 21-page brief reciting well-known claim construction legal principles, then regurgitates those principles in copy-paste arguments for each disputed claim term.  In fact, for several disputed terms, that is the entirety of Plaintiff's argument.[1]  On the other hand, Defendant's proposed constructions are consistent with the intrinsic and extrinsic record—well-settled as the actual ***evidence*** courts examine to construe claim terms.  *E.g.*, *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed. Cir. 1995) ("In construing the claims we look to the language of the claims, the specification, and the prosecution history.  Extrinsic evidence may also be considered, if needed . . . " (citation omitted)).  Plaintiff does not dispute or even address this evidence in its responsive brief.  Accordingly, Defendant's constructions should be adopted.

## II.    DISPUTED TERMS

### A.    "outer surface of [the/a] [bag or luggage] [body]" ('071 pat., cl. 1, 10; '137 pat, cl. 1, 4, 9, 18; '138 pat., cl. 1, 2, 5, 9, 18, 23; '009 pat., cl. 5, 9, 18, 29)

The intrinsic evidence conclusively establishes that the "outer surface" claimed in the asserted patents is the outermost surface.  Plaintiff does not meaningfully dispute that it limited the scope of "outer surface" to the outermost surface during prosecution of the '071 patent.  Indeed, Plaintiff's argument that there is no disclaimer is replete with the very crime it repeatedly accuses Defendant of committing—conclusory, unsupported attorney argument—without a ***single citation***

---

[1] Any substantive arguments Plaintiff raises in its sur-reply for the first time should be ignored. *E.g.*, *U.S. v. Jackson*, 426 F.3d 301, 304, n. 2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief . . . are waived."); *Duval Wiedmann, LLC v. Inforocket.com, Inc.*, No. A-8-CA-028 LY, 2009 WL 10669314, at *10, n. 59 (W.D. Tex. Apr. 21, 2009) (finding argument "raise[d] for the first time in [plaintiff's] reply" need not be addressed).

to the intrinsic record.  Thus, it is essentially undisputed that the term "outer surface" in the '071

patent should be construed as the "outermost surface . . . such that it can be accessed without

opening the bag or luggage," and Defendant's construction should be adopted.

Plaintiff's argument that the disclaimer should not apply to the '137, '138, and '009 patents

depends entirely on the difference between the use of the article "the" versus the article "a"—a

distinction without a difference when viewed in context of the claims—and issues Defendant

already addressed in its opening brief.  Because the same "outer surface" term appears in the

related patents and the intrinsic and extrinsic evidence show that the term has the same meaning

in those patents, Defendant's construction should be adopted for those patents, as well.

### 1.     The '071 Patent Intrinsic Evidence Shows that the "Outer Surface" is the "Outermost Surface."

As explained in Defendant's opening brief, Plaintiff disclaimed any scope of the term

"outer surface" that is not the outer***most*** surface during prosecution of the '071 patent.  Dkt. No.

49 (Op. Br.) at 4-6.  Plaintiff's response to this argument is that it did not disclaim claim scope,

but "merely distinguished a prior art reference (Ferber)."  Dkt. No. 51 (Resp. Br.) at 7.

Yet that is precisely what a disclaimer is.  Statements in prosecution made to "distinguish

the prior art" lead to disclaimer of claim scope.  *See*, *e.g.*, *Traxcell Techs., LLC v. Cellco*

*Partnership*, No. 6:20-cv-01175-ADA, 2023 WL 2415583, at *2-3 (W.D. Tex. Mar. 8, 2023)

("The Court finds these prosecution statements to ***distinguish the prior art*** clearly disclaim devices

in which performance data is detected by a wireless communication device." (emphasis added)).

Plaintiff's statements during prosecution of the '071 patent clearly disclaim an "outer surface" on

the interior of a bag:

> [Ferber] Figure 21 is directed to a messenger bag with a flap that
> must be opened to access the charger. Still further, Ferber provides
> the connector is removably retained ***inside a connector pocket 224***
> that is attached to a compartment 212 that is on the ***interior of the***

> *bag* covered by the messenger flap. . . . This ***clearly fails to teach or
> suggest, "a power cable outlet on the outer surface of the bag or
> luggage body"*** . . . Ferber teaches a connector contained in a pocket,
> attached to another pocket, under a messenger flap.  Ferber also
> teaches that the connector must be removed from the pocket to
> charge the device.  This does not teach or suggest the claims.

Dkt. No. 49-3 (Ex. 2 to Op. Br.) 11-12 (emphasis added).  By distinguishing the Ferber prior art

reference with connectors "inside" a pocket or the "interior" of the bag, Plaintiff limited the scope

of "outer surface" to one that is ***not*** on the inside or interior.  Plaintiff's conclusory, unsupported

argument that "[a]t no point during the prosecution did Applicant clearly or unmistakably

surrender the full scope of the term 'outer surface'" (Dkt. No. 51 (Resp. Br. at 7)) is simply wrong.

The claim language (which recites that the body "does not need to be opened to access a

charging interface") and specification (which, *inter alia*, describes the "present invention" as

enabling charging "without necessarily opening the bag or luggage") further supports a

construction of the "outer surface" as the "outermost surface . . . such that it can be accessed

without opening the bag or luggage."  Dkt. No. 49 (Op. Br.) at 6-8.  Plaintiff argues that is not the

case, because 1) Defendant's construction improperly imports limitations from the specification

without POSITA support; 2) the examiner allowed the claims as recited; and 3) Defendant's

construction deviates from the plain meaning of the claims.  Dkt. No. 51 (Resp. Br.) at 7-8.

None of these arguments hold water.  First, expert testimony providing a POSITA's

position is extrinsic evidence.  "In most situations, an analysis of the intrinsic evidence alone will

resolve any ambiguity in a disputed claim term," and "it is improper to rely on extrinsic evidence."

*E.g.*, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).  The Court should

reject Plaintiff's invitation to ***require*** expert testimony as a threshold for claim construction,

particularly where—as here—the intrinsic evidence is dispositive.  Second, that the examiner

allowed the claims is irrelevant.  It is well-settled law that "claims that have been narrowed in

order to obtain the issuance of a patent by distinguishing the prior art cannot be sustained to cover that which was previously by limitation eliminated from the patent." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 33 (1966). Finally, the plain meaning of the claims must be viewed in light of the specification and prosecution history. *See*, *e.g.*, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-80 (Fed. Cir. 1995) ("Claims must be read in view of the specification . . . the court should also consider the patent's prosecution history."). As explained above and in the opening brief, Defendant's construction is consistent with the specification and prosecution history.

Because the intrinsic evidence in the '071 patent is clear that the "outer surface" refers to the "outermost surface," Defendant's proposed construction should be adopted.

### 2.    The Disclaimer Carries to the Continuation Patents.

The disclaimer in the '071 patent prosecution applies equally to the related '137, '138, and '009 patents because Plaintiff never rescinded the disclaimer. *Cellco*, 2023 WL 2415583, at *3 (finding disclaimers "made during prosecution of a parent application . . . apply equally to the asserted children patents, which are continuations of that parent application"); *see also*, *e.g.*, *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1333-34 (Fed. Cir. 2003) (finding narrowing disavowals made in parent applications apply to continuation-in-part applications); *Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1357, n. 5 (Fed. Cir. 2011) ("a disclaimer in the parent application carries forward into the construction of the same claim term in the child").

As explained in Defendant's opening brief, withdrawing a disclaimer from a parent patent's prosecution for a related child patent has "exacting requirements." *Traxcell Techs., LLC v. AT&T Corp.*, No. 2:17-cv-00718-RWS-RSP, 2019 WL 6037984, at *9 (E.D. Tex. Oct. 7, 2019). Plaintiff makes no attempt to show that it has satisfied those exacting requirements during the prosecution of any of the '137, '138, or '009 patents (collectively, "Continuation Patents"). Instead, Plaintiff

argues that the disclaimer does not apply at all, because the language of the claims is different. Plaintiff is wrong.

The fact that the '071 patent claims recite "*the* outer surface" while the Continuation Patents' claims recite "*an* outer surface" is a distinction without a difference as it pertains to the claim language. All asserted patents recite the *substantive* term at issue, "outer surface," and the intrinsic evidence in the Continuation Patents matches that in the '071 patent showing that the "outer surface" claimed in the Continuation Patents is the same outermost surface claimed in the '071 patent. *See* Dkt. No. 49 (Op. Br.) at 8-9 (listing intrinsic evidence showing the Continuation Patents do not need to be opened for charging and have waterproof sheaths). Plaintiff cites no case where a court found disclaimer not to apply where substantive language was identical, and the difference in claim language was based solely on a definite versus indefinite article. *See ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1383 (Fed. Cir. 2003) (finding no disclaimer due to "scant" prosecution history that had only a terminal disclaimer); *Ventana Med. Sys. v. Biogenex Laby's, Inc.*, 473 F.3d 1173, 1182 (Fed. Cir. 2006) (finding disclaimer for claim term "dispensable directly to a sample" did not apply to later patent that completely lacked this limitation).

Nor does it matter that the '071 patent recites a "power cable outlet" that is "on" the outer surface, while the Continuation Patents recite a "sheath" that "extends above" an outer surface. Regardless of what claim language surrounds the term "outer surface," that term refers to the same outermost surface in all of the asserted patents because the unmistakable disclaimer in the '071 patent carries across the related Continuation Patents. *See*, *e.g.*, *Capital Mach. Co., Inc. v. Miller Veneers, Inc.*, 524 Fed. App'x. 644, 649 (Fed. Cir. 2013) ("Because each patent-in-suit has clear and unmistakable disclaimer in either a parent or a child, we interpret the term 'flitch' consistently across all the patents"). In *Capital Mach. Co.*, the Federal Circuit held that unmistakable

disclaimer of the term "flitch" as limited to a "tapered flitch" applied to all related patents, even though some of the patents recited simply a "flitch," while others specifically recited a "tapered flitch." *Id.* at 647-49. Likewise, here, Plaintiff disclaimed any "outer surface" that is not an "outer***most*** surface," even though some of the patents recite simply an "outer surface" while others specifically recite that "the female connector does not need to be moved and the bag or luggage body does not need to be opened to accept a charging interface of a product to be charged." Whether a "power outlet" is "on" that outer surface, or a "sheath" "extends above" that same outer surface, is of no moment.

Further, exact identity of claim language is not required, as Plaintiff suggests, because the "outer surface" term recited in all patents refers to the identical surface, or there are, at best, "immaterial differences." *E.g.*, *Regents of Univ. of Minnesota v. AGA Med. Corp.*, 717 F.3d 929, 944 (Fed. Cir. 2013) ("The appropriate focus is on the scope of the claim element . . . . This is why our cases . . . carry[] disclaimer forward if there are only ***immaterial differences***" (emphasis added)); *see also id.* at 943 ("[O]ur cases establish that the two patents must have the same ***or closely related*** claim limitation language [for disclaimer to carry to a subsequent patent]" (emphasis added)). The intrinsic evidence shows that the "outer surface" in the Continuation is the same "outer surface" in the '071 patent. Dkt. No. 49 (Op. Br.) at 8-9. Plaintiff identifies no evidence to the contrary.

Plaintiff's argument that claim differentiation (though Plaintiff fails to call it that) prevents the '071 patent disclaimer from applying to the Continuation Patents likewise falls flat. *See* Dkt. No. 51 (Resp. Br.) at 10-11. As explained in Defendant's opening brief and as this Court has already recognized, a "construction dictated by the written description or prosecution history" overcomes "[a]ny presumption created by the doctrine of claim differentiation." *Retractable*

*Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011); *Canopy Growth Corp. v. GW Pharms, PLC*, No. 6:20-cv-01180-ADA, 2021 WL 8015834, at *2 (W.D. Tex. Nov. 27, 2021) ("The [claim differentiation] presumption is also rebutted when there is a contrary construction dictated by the written description or prosecution history." (quotation omitted)). Plaintiff points to no withdrawal of disclaimer or other evidence showing why that principle does not apply here.

Accordingly, Defendant's proposed construction of the "outer surface . . . " as the "outermost surface . . . " should be adopted  for the Continuation Patents.

### B.    "fixedly attached" ('071 pat., cl. 1, 10)

Lexicography and disclaimer mandate Defendant's construction of "fixedly attached." Plaintiff explained during prosecution of the '071 patent that it claimed "fixedly attached" to show "[t]he entire purpose of the present invention," which "is to provide the female USB connector that does not move."  Dkt. No. 49 (Op. Br.) at 11-12; Dkt. No. 49-3 (Ex. 2 to Op. Br.) at 11. Plaintiff's conclusory assertion that lexigraphy is not present here (Dkt. No. 51 (Resp. Br.) at 12-14) does not change that fact.  Even assuming Plaintiff's self-serving argument that it ***only*** distinguished Ferber as having connectors that "required removal to be used" is true (it is not), this lexicography conclusively establishes that "fixedly attached" means the USB connector cannot move.  Plaintiff presents no evidence or argument to the contrary.

Plaintiff's assertion that Defendant's construction is "substantially the same" as Wenger's from related litigation is easily debunked by a simple comparison of the proposed constructions. *Compare* Dkt. No. 49 (Op. Br.) at 11 (proposing "fastened to or adjoined such that it does not move and cannot be removed") *with* Dkt. No. 51 (Resp. Br.) at 12 (indicating Wenger proposed "connected to the bag or luggage permanently").  Defendant's construction here has nothing to do with "permanent attachment," and simply adopts Plaintiff's lexicography during prosecution.

7

Plaintiff's argument that it distinguished Ferber **solely** because Ferber required removal of the connectors before use is contrary to the plain language in the prosecution history.  It may be true, as Plaintiff suggests, that Plaintiff also disclaimed connectors that "must be removed to be used."  Dkt. No. 49-3 (Ex. 2 to Op. Br.) at 11 ("The connectors of Ferber are contained with the compartment, unless they are to be used.  At that point, they are removed from the compartment for use."), 12 ("Ferber also teaches that the connector must be removed from the pocket to charge the device.").  But that does not change the fact that Plaintiff distinguished Ferber's "removably retained" connectors as "clearly fail[ing] to suggest . . . the female connector <u>which is exposed and fixedly attached above the exterior of the bag</u> . . ." *Id.* at 11-12 (emphasis in original).  The disclaimer of "removably retained" connectors from the scope of "fixedly attached" is a substantively distinct issue from whether or not a connector "must be removed" to be used.  That distinction between a "retained" connector and "fixedly attached" connector is further cemented by the use of the term "retained" in the Continuation Patents.  Dkt. No. 49 (Op. Br.) at 12.  The specification also supports the distinction—a point Plaintiff does not even attempt to dispute.  *Id.* at 12-13.

Finally, Plaintiff takes issue with Defendant's recitation of dictionary definitions reflecting the understanding of these terms by a POSITA.  Dkt. No. 51 (Resp. Br.) at 14.  But it is settled law that dictionaries are "useful to assist in understanding the commonly understood meaning of words. . . ."  *E.g.*, *Philips v. AWH Corp.*, 415 F.3d 1303, 1322 (Fed. Cir. 2005) (en banc).  The dictionary definitions provide evidence consistent with the intrinsic evidence.  Dkt. No. 49 (Op. Br.) at 13.

At bottom, Plaintiff does not dispute that there is lexicography defining the term "fixedly attached," that the **relevant** portions of the prosecution history and specification support

Defendant's construction, or that Defendant's construction is consistent with contemporaneous dictionary definitions. Instead, Plaintiff argues that Defendant's construction is the same as a completely different construction, points to an ***irrelevant*** portion of the prosecution history, and argues that the Court should require expert testimony to interpret dictionary definitions. None of Plaintiff's arguments move the needle, and Defendant's intrinsic and extrinsic evidence stands unrebutted. Defendant's construction should therefore be adopted.

### C.     "adjacent to the [power cable outlet/first port]" ('071 pat., cl. 1, 10; '009 pat, cl. 1)

Defendant's proposed construction for this term is correct because Plaintiff defined "adjacent to" as "lying near, close, or contiguous; adjoining; neighboring" during prosecution. Dkt. No. 49-3 (Ex. 2 to Op. Br.) at 6-7. While Plaintiff attempts to distract the Court by arguing that the Court rejected Wenger's proposed construction in related litigation, Plaintiff argued in that litigation that the problem with Wenger's proposed construction was that Wenger only selected the "narrowest exemplary dictionary definition" (that is, "adjoining") from those Plaintiff inserted in prosecution. *Swissdigital USA Co., Ltd. v. Wenger S.A.*, No. 6:21-cv-00453-ADA-DTG (W.D. Tex.), Dkt. No. 36, at 9. That concern is not present here.

Plaintiff argues that it "merely distinguished" Ferber as showing "remotely located" connectors that were the "opposite of adjacent." Dkt. No. 51 (Resp. Br. at 15-16). Once again, that is what a disclaimer is. *See*, *e.g.*, *Cellco*, 2023 WL 2415583, at *2-3. By distinguishing the distance between the aperture and connector disclosed in Ferber as being the "opposite" of "adjacent," Plaintiff disclaimed such distances from the scope of the term "adjacent." Dkt. No. 49 (Op. Br.) at 14-16. That disclaimer also applies to the '009 patent, and Plaintiff does not dispute that it does.

The remainder of Plaintiff's argument is simply that Defendant's construction deviates from the "ordinary and customary meaning" of the term "adjacent." Dkt. No. 51 (Resp. Br.) at 16. Of course, Plaintiff itself argued that the construction Defendant proposes—that "adjacent" means "lying near, close, or contiguous; adjoining; neighboring"—was the ordinary and customary meaning during prosecution. Dkt. No. 49-3 (Ex. 2 to Op. Br.) at 6-7. Plaintiff offers no explanation for the change in position. Nor does it provide any evidence—intrinsic or extrinsic— to support its contention.

Plaintiff's conclusory arguments that there is no lexicography or disclaimer, or that Defendant's construction is not the ordinary and customary meaning, do nothing to counterbalance the intrinsic evidence Defendant has identified. Defendant's construction should be adopted.

### D.      "surrounding bottom portion" ('137 pat., cl. 1, 20, 21; '138 pat., cl. 1, 2, 20, 21, 23; '009 pat., cl. 1, 2, 20, 21, 29)

As explained in Defendant's opening brief, Defendant's proposed construction for the term "surrounding bottom portion" is correct because it is supported by legion intrinsic and extrinsic evidence. Dkt. No. 49 (Op. Br.) at 16-22. Plaintiff counters with the same tired arguments: conclusory, unsupported statements that lexicography and disavowal are not present; that expert testimony is required; unsupported assertions that there is no specification or prosecution history support for Defendant's construction; and a conclusory argument that Defendant's construction is not the ordinary and customary meaning of the term. Dkt. No. 51 (Resp. Br.) at 16-18.

Plaintiff's now-familiar, unsupported arguments merit no reply. Extrinsic expert testimony is not a requirement for claim construction. Defendant's brief sets forth intrinsic and extrinsic evidence and explains how that evidence supports its proposed construction. Dkt. No. 49 (Op. Br.) at 16-22. That evidence informs the ordinary and customary meaning of the term

"surrounding bottom portion" when viewed in light of the claims, specification, and prosecution history, confirming Defendant's construction is correct. *See id.*

The single piece of prosecution history Plaintiff cites—a discussion of the Ashley prior art reference—does not change that result. Plaintiff points to a portion of the prosecution history where it described Ashley as "not a cover for a USB cord, [but] an integrated device with significant on board functionality." Dkt. No. 51 (Resp. Br.) at 17-18. That is irrelevant. Regardless of whether Plaintiff distinguished Ashley as "not a cover for a USB cord," Plaintiff *also* distinguished Ashley as "not teach[ing] a surrounding bottom portion as in the claimed invention, but rather . . . a flat closed bottom (not surrounding the left side and the right side, the first tapered closed end and the second open end of the sheath as claimed)." Dkt. No. 49-14 (Ex. 13 to Op. Br.) at -205 (p. 7). Plaintiff similarly distinguished the claimed "surrounding bottom portion" from Ashley's teaching of "a bottom cover." *Id.* In an interview, Plaintiff explained that the "surrounding bottom portion [of the invention] was not part of the body/bag." Dkt. No. 49-16 (Ex. 15 to Op. Br.) at -521 (p. 2). These statements in the prosecution history constitute a disclaimer confirming Defendant's construction is correct. Dkt. No. 49 (Op. Br.) at 21-22.

Defendant's construction is mandated by the intrinsic and extrinsic evidence. Plaintiff offers no *evidence* to the contrary. Defendant's construction should be adopted.

## E.   "attachment portion that extends around a bottom portion of the sheath" ('137 pat., cl. 7; '138 pat., cl. 8; '009 pat., cl. 8, 9)

The term "attachment portion that extends around a bottom portion of the sheath" is indefinite when viewed in light of the specification and claims. Plaintiff's response does not (1) demonstrate any difference in claim scope between the "surrounding bottom portion" and "attachment portion" claims; (2) point to any prosecution history providing certainty as to the distinction between the two claim terms; or (3) provide any intrinsic or extrinsic evidence in

support of its arguments.  The arguments Plaintiff does raise—that the term is plain English, and that Defendant's argument is based on construction of another term—are meritless.

Defendant agrees with Plaintiff's argument that the phrase "attachment portion that extends around a bottom portion of the sheath," ***standing in isolation***, is composed of terms commonly used in the English language.  But of course, claim terms are not construed in a vacuum.  When viewed in light of the claims and specification, the term is indefinite because there is no difference in scope between the "surrounding bottom portion" and the "attachment portion that extends around a bottom portion."  Dkt. No. 49 (Op. Br.) at 22-25.  *E.g.*, *Teva Pharms., USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1340-41 (Fed. Cir. 2015) ("A patent is indefinite 'if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'" (quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014))).

Plaintiff then confusingly argues that Defendant's argument is based on an incorrect construction of "surrounding bottom portion."  Dkt. No. 51 (Resp. Br.) at 19.  That is simply false. The term "attachment portion that extends around a bottom portion of the sheath" is indefinite because when the specification (including the figures) and claims are viewed together, there is no distinction between the "surrounding bottom portion" and the "attachment portion."  *See* Dkt. No. 49 (Op. Br.) at 23-25.  This holds true regardless of what construction is applied to "surrounding bottom portion."

Otherwise, Plaintiff again resorts to the same unsupported, conclusory arguments—expert testimony is required, the examiner allowed the claim language, the specification does not support Defendant's construction.  Dkt. No. 51 (Resp. Br.) at 19-20.  There is no real dispute that the "attachment portion" term is indefinite.

**F.    "above" ('137 pat., cl. 19; '138 pat., cl. 19; '009 pat., cl. 19)**

As explained in Defendant's opening brief, the term "above" is indefinite because the claims, specification, prosecution history, and extrinsic evidence recite nothing about orientation. Dkt. No. 49 (Op. Br.) at 25-29.   Nothing informs a POSITA what the "up" orientation of a bag, luggage, or a pair of gloves is, and the intrinsic evidence only further confuses the issue.  *See id.* This claim term is thus indefinite.

Plaintiff regurgitates the same familiar arguments—the term is common English; expert testimony is necessary because attorneys are not POSITAs.  Dkt. No. 51 (Resp. Br.) at 20-21. Defendant already agreed the term "above" has a common meaning.  Dkt. No. 49 (Op. Br.) at 25-26.  It is when applying that meaning to the claims and specification that the scope of the term cannot be reasonably ascertained in the context of the patents.  *Id.* at 26-29.  And expert testimony is not a requirement for claim construction, despite Plaintiff's apparent misunderstanding of the law.  Defendant's construction should be adopted.

**III.    CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court adopt its proposed constructions for the disputed claim terms of the Asserted Patents.

Dated:  April 8, 2024                            **FISH & RICHARDSON P.C.**

                                                 By:  */s/ Bailey K. Benedict*
                                                      Neil J. McNabnay
                                                      njm@fr.com
                                                      Texas Bar No. 24002583
                                                      **FISH & RICHARDSON P.C.**
                                                      1717 Main Street, Suite 5000
                                                      Dallas, TX 75201
                                                      (214) 747-5070 (Telephone)
                                                      (214) 747-2091 (Facsimile)

                                                      Bailey K. Benedict
                                                      benedict@fr.com
                                                      Texas Bar No. 24083139
                                                      **FISH & RICHARDSON P.C.**
                                                      909 Fannin Street, Suite 2100
                                                      Houston, TX 77010
                                                      (713) 654-5300 (Telephone)
                                                      (713) 652-0109 (Facsimile)

                                                      Wonjoon Chung (*Pro Hac Vice*)
                                                      chung@fr.com
                                                      Georgia Bar No. 396468
                                                      **FISH & RICHARDSON P.C.**
                                                      1180 Peachtree Street NE, 21st Floor
                                                      Atlanta, GA 30309
                                                      (404) 892-5005 (Telephone)
                                                      (404) 892-5002 (Facsimile)

                                                 **ATTORNEYS FOR DEFENDANT**
                                                 **SAMSONITE INTERNATIONAL S.A.**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 8, 2024 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Bailey K. Benedict*
Bailey K. Benedict