**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| SWISSDIGITAL USA CO., LTD., | |
| *Plaintiff*, | Civil Action No. 6:23-cv-00196-ADA |
| v. | **JURY TRIAL DEMANDED** |
| SAMSONITE INTERNATIONAL S.A., | |
| *Defendant.* | |

**SAMSONITE INTERNATIONAL S.A.'S RESPONSE TO SWISSDIGITAL USA CO.,
LTD.'S OBJECTIONS TO THE MAY 14, 2024 REPORT AND RECOMMENDATION
(DKT. NO. 59)**

## <u>TABLE OF CONTENTS</u>

I.    PROCEDURAL HISTORY ........................................................................................... 1

II.   ARGUMENT ............................................................................................................... 3

    A.    Plaintiff's Belated Arguments Are Waived. .......................................................... 4

        1.    Judge Gilliland Correctly Found that Rule 4(k)(2) Does Not Apply ......... 6

        2.    Defendant Is Subject to General Jurisdiction in Massachusetts. ................ 7

        3.    Alternatively, Defendant Is Subject to Specific Jurisdiction in
            Massachusetts. ......................................................................................... 10

    B.    The R&R Correctly Found That Defendant Is Not Subject to Specific
        Jurisdiction in This District.................................................................................. 13

        1.    Defendant Lacks Minimum Contacts with Texas or this District............. 13

        2.    Defendant Lacks the Requisite Minimum Contacts with the
            United States. .......................................................................................... 14

        3.    Exercising Personal Jurisdiction Would Not Comport with
            Traditional Notions of Fair Play and Substantial Justice......................... 15

    C.    Even if the Court Sustains All of Plaintiff's Objections, the Case Should
        Still be Transferred to D. Mass. .......................................................................... 17

III.   CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*BNSF Ry. Co. v. Tyrell*,
   581 U.S. 402 (2017)....................................................................................................5

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985).............................................................................................11, 16

*Croy v. United States*,
   No. DR-22-CV-00005-AM/VRG, 2023 WL 6393888
   (W.D. Tex. Oct. 2, 2023) ...................................................................................4, 5, 16

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)....................................................................................................5

*Direct Biologics, LLC v. McQueen*,
   No. 1:22-CV-381-SH, 2022 WL 1409984 (W.D. Tex. May 4, 2022)....................................11

*Freudensprung v. Offshore Tech. Servs., Inc.*,
   379 F.3d 327 (5th Cir. 2004) .................................................................................5, 10

*Gilmour v. Intertek USA, Inc.*,
   No. 3:16-CV-00266, 2018 WL 3055749 (S.D. Tex. June 20, 2018)........................................4

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010)......................................................................................................7

*Merial Ltd. v. Cipla Ltd.*,
   681 F.3d 1283 (Fed. Cir. 2012).....................................................................................6

*Rothschild Locaiton Techs., LLC .v Geotab United Staes*,
   No. 6:15-cv-682-RWS-JDL, 2016 WL 2847975 (E.D. Tex. May 16, 2016) ...........................4

*In re Stingray IP Sols., LLC*
   56 F.4th 1379 (Fed. Cir. 2023......................................................................................6

*Touchcom, Inc. v. Bereskin & Parr*,
   574 F.3d 1403 (Fed. Cir. 2009)....................................................................................6

*Travelers Health Ass'n. v. Virginia*,
   339 U.S.643 (1950)...................................................................................................11

**Statutes**

28 U.S.C. § 1404(a) ....................................................................................................4

**Other Authorities**

Federal Rule of Civil Procedure 4(k)(2) ............................................................................... *passim*

In a last-ditch attempt to salvage a lawsuit filed against the wrong entity in the wrong forum, Plaintiff Swissdigital USA CO. Ltd. ("Plaintiff") repeats the same tired arguments that have already been disproven by the factual record and rejected by Judge Gilliland in the Report and Recommendation ("R&R"), and improperly inserts new arguments never before this Court. Plaintiff also misrepresents the procedural and factual record.  But none of this moves the needle from the only correct conclusion under the facts of this case—jurisdiction is improper in W.D. Tex., and Judge Gilliland correctly recommended that the case be dismissed.  Defendant Samsonite International S.A. ("Defendant") therefore requests that the Court adopt Judge Gilliland's recommendation to grant its Motion to Dismiss or, in the Alternative, Transfer ("Motion").

## I.      PROCEDURAL HISTORY

Plaintiff's recitation of the procedural posture of this case contains several misrepresentations and omissions that bear mention.

First, any suggestion that Defendant's request for supplemental briefing was improper is false—as should be clear from the fact that the Court ***granted*** that request already.  *See generally* Dkt. No. 59 (R&R).  It was Plaintiff who first requested supplemental briefing once venue discovery was completed.  Ex. A (Aug. 14, 2023 Eml re Discovery Dispute).  At a hearing regarding the propriety of Plaintiff's late-requested jurisdictional discovery, the Court granted the requested discovery, but denied the request for supplemental briefing, indicating Plaintiff may renew the request if needed after the jurisdictional discovery was complete.  Dkt. No. 29 (Minute Entry); Dkt. No. 43 (Sealed Hearing Tr.) at 7:20-8:7.

After months of jurisdictional discovery, Plaintiff agreed that jurisdictional discovery was complete.  Dkt. No. 41-1 (Supp. Br.), Ex. E, at 2.  Plaintiff also indicated that it did not intend to file any supplemental briefing, *id.*, likely because it had uncovered nothing supporting its claim

1

that jurisdiction is proper in this district.  Plaintiff thus chose to forego the opportunity offered by the Court at the August 29 hearing to request additional briefing.  Plaintiff's choice has no relation to *Defendant's* decision to separately request leave to file supplemental briefing of its own to provide the Court the benefit of facts uncovered through jurisdictional discovery.  Plaintiff's apparent argument that Defendant's request for supplemental briefing was somehow improper because the Court allowed *only* Plaintiff leave to request supplemental briefing (*see* Dkt. No. 62 (Pltf. Objs.) at 3) is nonsensical, made even more so since the Court has already granted Defendant's motion for leave to file supplemental briefing.  Dkt. No. 59 (R&R).[1]

Second, Plaintiff's assertion that it "did not have an opportunity to respond to Defendant's additional briefing before the Court made its recommendation" is likewise false.  As Defendant pointed out in its reply in support of its motion for leave to file the supplemental brief, Plaintiff improperly, but fully, addressed the substance of Defendant's proposed supplemental brief in its opposition to Defendant's motion for leave.  *See* Dkt. No. 47 (Mot. for Leave Reply) at 2-3; Dkt. No. 45 (Mot. for Leave Opp.) at 3-6 (substantively responding to arguments in the supplemental brief).  Plaintiff already took it upon itself to respond to the substance of Defendant's supplemental brief, and has not been prejudiced.

Finally, Plaintiff's repeated, unfounded accusations in its recitation of the procedural history and found throughout its objections to the R&R that Defendant somehow delayed or withheld information during jurisdictional discovery are false.  Moreover, they are irrelevant at

---

[1] Plaintiff further misrepresents that Defendant submitted its request "[a]midst a discovery dispute." Dkt. No. 62 (Pltf. Objs.) at 3.  Although Plaintiff drafted a discovery dispute chart, after receiving Defendant's responsive positions, Plaintiff chose not to submit the dispute to the Court and "agree[d] that venue discovery is closed." Dkt. No. 41-1 (Supp. Br.), Ex. E, at 2.  Contrary to Plaintiff's representation, there was no live discovery dispute when Defendant submitted its request for supplemental briefing.

this stage; venue discovery is complete.  *See* Dkt. Nos. 41 (Mot. for Supp. Br.), 48 (Status Report). This Court has procedures to address discovery disputes; the parties availed themselves of those procedures.  *See* Ex. A (Aug. 14, 2023 Eml re Discovery Dispute).  In fact, during that procedure, the Court ordered a 30(b)(6) deposition on venue which ***Plaintiff*** twice canceled, and then never rescheduled.  Dkt. No. 46-1 at 4-5.  It is not Defendant's conduct during jurisdictional discovery that was dilatory.  Rather, Defendant fully engaged with Plaintiff's burdensome discovery requests. The fact that Plaintiff did not uncover facts supporting jurisdiction in this District as a result of that discovery does not mean that Defendant withheld anything, and Plaintiff's improper, baseless accusations should be ignored in their entirety.

## II.    ARGUMENT

Judge Gilliland correctly found in the R&R that (1) Defendant's corporate headquarters in Mansfield, Massachusetts subjects Defendant to jurisdiction there; (2) that Defendant lacks sufficient minimum contacts to serve as a basis for subjecting Defendant to personal jurisdiction in Texas; and (3) that exercising personal jurisdiction over Defendant would not comport with the traditional notions of fair play and substantial justice.  *See generally* Dkt. No. 59 (R&R).  Notably, Plaintiff waived the argument that Defendant raised proper jurisdiction in Massachusetts for the first time in reply because that argument was not before the Court when Judge Gilliland issued the R&R, despite multiple opportunities for Plaintiff to alert the Court.

Even if they are considered, Plaintiff's arguments fail.  If the Court accepts Plaintiff's argument that Defendant is to be held accountable for any of its subsidiaries' acts of alleged infringement in this case, then Massachusetts—where the products were designed, developed, marketed, and sold—has jurisdiction, and Rule 4(k)(2) does not apply.  On the other hand, if Rule 4(k)(2) does apply, it must be the case that the actions of Defendant's subsidiaries in Massachusetts are ***not*** attributed to Defendant (*see* Dkt. No. 19 (Mot.) at 7-10; Dkt. No. 25 (Mot. Reply) at 1-3).

But then Defendant has no contacts with Texas or the U.S. at all, because it does not direct or control its subsidiaries' design, development, marketing, and sale of products in the U.S.  Under either of Plaintiff's theories, there is no jurisdiction in Texas.

Finally, even if the case is not dismissed, it should be transferred to D. Mass. under 28 U.S.C. § 1404(a) because D. Mass. is the clearly more convenient venue.

### A.      Plaintiff's Belated Arguments Are Waived.

The proper time for Plaintiff to alert the Court regarding Defendant's allegedly new argument that jurisdiction is proper in Massachusetts has long passed.  ("Arguments that are raised for the first time after a report and recommendation is filed are generally waived unless they concern subject matter jurisdiction."  *Croy v. United States*, No. DR-22-CV-00005-AM/VRG, 2023 WL 6393888, at *3 (W.D. Tex. Oct. 2, 2023); *see also Gilmour v. Intertek USA, Inc.*, No. 3:16-CV-00266, 2018 WL 3055749, at *1 (S.D. Tex. June 20, 2018) (finding arguments raised "for the first time in [] objections to the Magistrate Judge's Report and Recommendation" were "not properly before the Court for consideration"); *Rothschild Locaiton Techs., LLC .v Geotab United Staes*, No. 6:15-cv-682-RWS-JDL, 2016 WL 2847975, at *3 (E.D. Tex. May 16, 2016) (adopting Report and Recommendation after declining to consider "new arguments not presented in the original briefing . . . or those already properly considered by the Magistrate Judge").

Defendant's reply was submitted on July 25, 2023, nearly a year ago.  Dkt. No. 25 (Motion Reply).  Since then, the parties have engaged in months of jurisdictional discovery and submitted a new round of supplemental briefing.  Dkt. No. 41-1 (Supp. Br.), 45 (Mot. for Leave Opp.), 47 (Mot. for Leave Reply).  Over that year, Plaintiff never once raised that it believed Defendant raised a new argument in reply, sought a chance to address such an argument, ***or sought any discovery on the issue***.  *See generally* Dkt. No. 45 (Mot. for Leave Opp.).  If Plaintiff truly thought it had been prejudiced by an inability to address an argument Defendant allegedly raised for the

first time on reply, it could, and should, have sought a surreply or a supplemental brief to address the argument. Plaintiff could also have taken discovery to determine whether the Massachusetts headquarters truly was Defendant's principal place of business, including written discovery or a 30(b)(6) deposition—indeed, that is the entire point of jurisdictional discovery. Instead, Plaintiff stayed silent, expressly declined to file a supplemental brief (Dkt. No. 41-1 (Supp. Br.), Ex. E, at 2), and repeatedly declined to take Defendant's 30(b)(6) deposition, despite Defendant offering multiple dates. *See* Dkt. No. 46-1 (Mot. for Leave Opp., Ex. B). Only now, after Judge Gilliland has issued a R&R, does Plaintiff raise this novel argument.

The Court should reject this gamesmanship and attempt to inject new issues at the eleventh hour, and dismiss Plaintiff's belated arguments as waived. *See, e.g.*, *Croy*, 2023 WL 6393888, at *3. The R&R Correctly Found That Defendant is Subject to Personal Jurisdiction in the District of Massachusetts.

A court may exercise general jurisdiction over a defendant if the defendant has engaged in "continuous and systematic contacts" in the forum. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). General jurisdiction requires affiliations so continuous and systematic as to render the foreign company "at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 133 (2014). A foreign corporation is "at home" at its place of incorporation or its principal place of business, but a corporate defendant's operations also "may be so substantial and of such a nature as to render the corporation at home in that State." *BNSF Ry. Co. v. Tyrell*, 581 U.S. 402, 413 (2017) (quoting *Daimler*, 571 U.S. at 139). Rule 4(k)(2) establishes jurisdiction over a defendant if "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). Here, Rule 4(k)(2) does not apply because Defendant has identified

an alternate venue where suit is possible—in other words, it has shown that it is "subject to jurisdiction in [another] state's courts of general jurisdiction." *Id.* That ends the inquiry.

The cornerstone of Plaintiff's argument is a strawman based on *In re Stingray IP Sols., LLC*, that "suggesting an alternative forum with no basis for personal jurisdiction but for [Defendant's] consent" is insufficient to confer jurisdiction on Massachusetts. 56 F.4th 1379, 1385 (Fed. Cir. 2023); *see* Dkt. No. 62 (Pltf. Objs.) at 4-5. That is not what happened here. Defendant did not simply "consent" to jurisdiction in Massachusetts. Instead, Defendant has established that it has a ***joint*** headquarters in Mansfield, Massachusetts, and is therefore subject to general jurisdiction there. Additionally, the evidence adduced in jurisdictional discovery demonstrates that Defendant would at least be subject to ***specific*** jurisdiction in Massachusetts. The facts thus show, and Judge Gilliland correctly recognized, that Defendant is subject to jurisdiction in Massachusetts.

### 1.    Judge Gilliland Correctly Found that Rule 4(k)(2) Does Not Apply

Plaintiff completely ignores the purpose of Rule 4(k)(2) in its arguments. As the Federal Circuit has recognized, "the purposes of Rule 4(k)(2) are best achieved when the defendant is afforded the opportunity to avoid the application of the rule only when it designates a suitable forum in which the plaintiff could have brought suit." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009). A federal court is "entitled to use Rule 4(k)(2)" only "if the defendant contends that he cannot be sued in the forum state ***and refuses to identify any other where suit is possible***." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012) (quoting *Touchcom*, 574 F.3d at 1415) (emphasis added).

Here, Defendant has identified a suitable forum in which Plaintiff could have brought suit—D. Mass. As discussed in more detail below, the facts adduced in the parties' briefing and prolonged jurisdictional discovery establish that Massachusetts has jurisdiction over Defendant.

Because Defendant has identified another forum state where suit could properly have been brought, Judge Gilliland properly found that Rule 4(k)(2) does not apply. As Plaintiff offers no reason why jurisdiction would be proper if the rule did not apply, that determination settles the issue, and Plaintiff's objections should be overruled in their entirety.

### 2.    Defendant Is Subject to General Jurisdiction in Massachusetts.

Defendant has a "joint headquarters" in Mansfield, Massachusetts, with its other joint headquarters in Luxembourg. Dkt. No. 19 (Mot.) at 1, 2, 14-15. Defendant also has another office located in Hong Kong. Dkt. No. 19-6 (Livingston Decl.) at ¶ 12. While true that a corporation cannot be deemed "at home" in all of its locations worldwide, the difference here is clear—the Mansfield and Luxembourg locations make up Defendant's "joint headquarters," while the Hong Kong office is simply an office.[2] *See, e.g., id.* at ¶ 12. It is well-established that a corporation's "principal place of business" or "nerve center" will "typically be found ***at its corporate headquarters***." *E.g., Hertz Corp. v. Friend*, 559 U.S. 77, 78 (2010) (emphasis added).

Defendant informed Plaintiff before jurisdictional discovery began that its Massachusetts location is ***joint*** headquarters—that is, it acts as the company's "nerve center" and principal place of business, ***jointly*** with its Luxembourg location. *See, e.g.*, Dkt. No. 19 (Mot.) at 1, 2, 15-16; Dkt. No. 19-6 (Livingston Decl.) at ¶ 12; Dkt. No. 25 (Mot. Reply) at 3, 10; *see also* Dkt. No. 41-1 (Supp. Br.) at 2. Defendant's Board of Directors makes strategic decisions that affect the Samsonite Group as a whole, and is the "actual center of direction, control, and coordination." *Id.*

---

[2] The documentation Plaintiff points to as showing Defendant's "Principal Place of Business in Hong Kong" (Dkt. No. 62 (Pltf. Objs.) at 8-9) is a blatant attempt to mislead the Court. The cited documentation identifies Defendant's "Principal Place of Business in Hong Kong"—that is, the principal place *in Hong Kong* where it conducts business. *See, e.g.*, Dkt. No. 24-2 (Ex. A to Mot. Opp.) at 5. This does *not* in any way imply that Defendant's "Principal Place of Business" for purposes of a jurisdictional analysis is in Hong Kong. As Defendant has maintained from the beginning, its joint headquarters are in Massachusetts and Luxembourg.

The company's corporate functions are performed by subsidiary Samsonite LLC personnel located in the Mansfield location.  Dkt. No. 19-6 (Livingston Decl.) at ¶ 15.

Plaintiff's attempt to separate out the two joint headquarters locations into separate entities is a futile exercise, because the Mansfield, Massachusetts and Luxembourg locations act as a single, "joint" headquarters.  The two headquarters jointly act as Defendant's single principal place of business.   For example, Defendant's 2022 Annual Report shows lists its "Joint Corporate Headquarters" as both locations under "Corporate Information":



Dkt. No. 24-2 (Ex. A to Mot. Opp.) at 5 (annotated).

Plaintiff faults Judge Gilliland's reliance on Exhibit D to Defendant's supplemental brief because the letterhead only names "Samsonite" and not "Samsonite International."  Dkt. No. 62 (Pltf. Objs.) at 10.  But the letterhead in question lists one member of ***Samsonite International's***

Board of Directors—Kyle Gendreau—sending a message to other members of **Samsonite International's** Board of Directors. *Compare* Dkt. No. 42-4 (Ex. C to Mot. Opp.) at 1 (listing Kyle Gendreau as sender and Tim Parker, Paul Etchells, Ying Yeh, Tom Korbas, Jerome Griffith, Angela Brav[e], and Claire Bennett as recipients) *with* Dk. No. 19-2 (Ex. A to Mot.) at 3-5 (listing the same individuals as *Samsonite International's* "Director(s)/Manager(s)"). Kyle Gendreau, who Plaintiff concedes is located in Massachusetts (Dkt. No. 62 (Pltf. Objs.) at 10), is also the CEO and Executive Director of Defendant's Board of Directors, while the other listed directors are all either "Non-Executive Directors" or "Independent Non-Executive Directors." Dkt. No. 24-2 (Ex. A to Mot. Opp.) at 5 (see image above). These facts show that Defendant's joint headquarters (including the Massachusetts location) make up Defendant's "nerve center."

Further, Plaintiff's argument that a single meeting of Defendant's Board of Directors occurring in Singapore indicates that Massachusetts is not Defendant's nerve center is nonsense. Dkt. No. 62 (Pltf. Objs.) at 10-11. The fact that one Board of Directors meeting—whether attended in person or otherwise—occurred in a different location does not change the location of Defendant's nerve center. Apparently recognizing the fallacy in its logic, even Plaintiff stops short of arguing that Singapore is Defendant's principal place of business. *See id.*

Plaintiff's final argument sets up another strawman—this time, that Defendant would have contested jurisdiction if Plaintiff had brought suit in Massachusetts—and accuses Defendant of "attempts at manipulation." *Id.* at 11. But Defendant has already requested in the alternative that this case be transferred to D. Mass. *E.g.*, Dkt. No. 19 (Mot.) at 15-20. In other words, Defendant has represented to this Court that it is willing to litigate this case in D. Mass. If Plaintiff had brought suit in the right jurisdiction in the first place, Defendant would have litigated the case on

its merits there.[3]  Plaintiff's unsupported hypotheticals and unfounded accusations are no basis to overturn Judge Gilliland's well-reasoned decision.

The facts show that Defendant has joint headquarters—one in Mansfield, Massachusetts, and one in Luxembourg—that act as its principal place of business and nerve center.  Plaintiff's mischaracterizations of the record and conjecture do not change that fact.  Judge Gilliland correctly found that Defendant is subject to jurisdiction in Massachusetts.

### 3. Alternatively, Defendant Is Subject to Specific Jurisdiction in Massachusetts.

Even if Defendant were not subject to general jurisdiction in Massachusetts, under Plaintiff's interpretation of the facts Defendant is, at a minimum, subject to specific jurisdiction there.  Plaintiff attributes all of Defendant's subsidiaries or the Samsonite Group's activities to Defendant.  *See generally* Dkt. No. 62 (Pltf. Objs.).  Assuming for the sake of argument that is true—though it is not, *see* Dkt. No. 19 at 7-10, Dkt. No. 25 at 1-3, —the Samsonite Group's contacts specific to the state of Massachusetts confer specific jurisdiction on Massachusetts.  "A court may exercise specific jurisdiction when 1) the defendant purposely directed its activities toward the forum or purposefully availed itself of the privileges of conducting activities there; and 2) the controversy arises out of or is related to defendant's contacts with the forum state." *Freudensprung*, 379 F.3d at 343.  Plaintiff does not address specific jurisdiction in its objections. *See generally* Dkt. No. 62 (Pltf. Objs.).

If the Samsonite Group's operations are considered in their entirety, as Plaintiff urges, there can be no question that Defendant purposefully availed itself of the privileges of conducting

---

[3] To be clear, while Samsonite agrees it would be subject to general jurisdiction in D. Mass, it maintains that the case against it should be dismissed, even in D. Mass, under Rule 12(b)(6) because it does not perform any of the accused acts.  However, that argument is not jurisdictional and does not bear on the issues raised in Plaintiff's Objections to the R&R.

activities in the state of Massachusetts.  Defendant's sole physical presence in the U.S. is its joint headquarters in Mansfield, Massachusetts.  *E.g.*, Dkt. No. 19 (Mot.) at 16, Dkt. No. 19-6 (Livingston Decl.) at ¶ 7; Dkt. No. 24-2 (Ex. A to Mot. Opp.) at 2.  That headquarters is shared with Samsonite LLC, one of two entities mainly responsible for the Samsonite Group's operations in the U.S.  Dkt. No. 19 (Mot.) at 2, 16; Dkt. No. 19-6 (Livingston Decl.) at ¶ 12.  The Samsonite LLC employees in Massachusetts carry out Defendant's corporate functions.  Dkt. No. 19 (Mot.) at 2-3; Dkt. No. 19-6 (Livingston Decl.) at ¶¶ 6, 15.  Samsonite LLC and its employees carry out all of the Samsonite Group's U.S. operations from Massachusetts in conjunction with other affiliates in the Samsonite Group. Dkt. No. 19 (Mot.) at 8; Dkt. No. 19-6 (Livingston Decl.) at ¶¶ 3-5, 7, 10.  Defendant's Executive Vice President, General Counsel, and Joint Company Secretary works at the Mansfield headquarters and is employed by Samsonite LLC.  *Id.* at ¶ 1.  These facts show that Defendant has purposely availed itself of conducting activities in the state of Massachusetts.  Because there are "continuing obligations" between Defendant and residents of the forum of Massachusetts (Samsonite LLC and its employees), Defendant "manifestly has availed [it]self of the privilege of conducting business there."  *E.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (quoting *Travelers Health Ass'n. v. Virginia*, 339 U.S.643, 648 (1950)); *see also Direct Biologics, LLC v. McQueen*, No. 1:22-CV-381-SH, 2022 WL 1409984, at * 7 (W.D. Tex. May 4, 2022) (finding purposeful availment where Defendant worked for a company based in the state for four years, repeatedly traveled to the headquarters in the state, and "directed his employment activities and communications" to that headquarters).

Further, the controversy in this case—alleged infringement of Plaintiff's patents by the design, manufacture, marketing, and sale of Samsonite-branded products—decidedly arises out of and is related to Defendant's contacts with Massachusetts.  Nearly all of the accused products were

developed in Defendant's joint headquarters located in Mansfield, Massachusetts by Samsonite LLC by local, Massachusetts-residing, Samsonite LLC employees.  Dkt. No. 41-1 (Supp. Br.) at 2; Dkt. No. 42 (Ex. B to Supp. Br.), at 8-11; Dkt. No. 42 (Ex. C to Supp. Br.).  Documents regarding design, development, marketing, and sales of the Accused Products are either stored in Massachusetts with Samsonite LLC, or overseas.  Dkt. No. 19 (Mot.) at 16; Dkt. No. 19-6 (Livingston Decl.) at ¶¶ 10-11; Dkt. No. 25 (Mot. Reply) at 7; *see also* Dkt. No. 41-1 (Supp. Br.) at 2.  Nearly all individuals primarily responsible for design, development, and sales of the accused products still reside in Massachusetts.  *Id.* at 2; Dkt. No. 42 (Ex. B to Supp. Br.) at 8-11; Dkt. No. 42 (Ex. C to Supp. Br.)  This case arose out of Samsonite LLC's activities in Massachusetts.

Every fact Plaintiff alleges supports jurisdiction in this Court equally supports jurisdiction in Massachusetts.  Plaintiff's sole support for its argument that jurisdiction is proper in this Court is Defendant's purported minimum contacts[4] with the United States, including offering to sell and selling products in the United States through its subsidiaries, operating brick-and-mortar stores, and selling through third-party retailers.  Dkt. No. 62 (Pltf. Objs.) at 12-14.  At best, Plaintiff's shows activities of Defendant's subsidiaries directed to the U.S., which as explained above are based in Massachusetts.  Considering that the controversy irrefutably arose out of, and is related to, the activities of Samsonite LLC at Defendant's joint headquarters in Massachusetts, if jurisdiction is proper anywhere in the U.S., it is in Massachusetts.

Applying the correct facts regarding the location of its joint headquarters, Defendant is subject to general jurisdiction in D. Mass.  Under Plaintiff's incorrect theory imputing actions of

---

[4] As discussed *infra*, Plaintiff is wrong.  As repeatedly stated in prior briefing, *Defendant* does not design, manufacture, market, or sell any products.  Plaintiff's attempt to impute Samsonite Group subsidiaries' conduct onto Defendant fails.

its subsidiaries to Defendant, Defendant would be subject to specific jurisdiction in D. Mass. Under either scenario, the only proper jurisdiction for this action is D. Mass, which Defendant identified as an alternate forum.  Judge Gilliland correctly found that Federal Rule of Civil Procedure 4(k)(2)'s requirement that Defendant not be "subject to jurisdiction in any state's courts of general jurisdiction" is not satisfied, and the Report and Recommendation should be adopted. *See* Dkt. No. 59 (R&R) at 8-8.

### B.   The R&R Correctly Found That Defendant Is Not Subject to Specific Jurisdiction in This District.

If the Court finds that Defendant is not subject to jurisdiction in Massachusetts, then Defendant simply *cannot* be subject to jurisdiction in Texas.  It is unfathomable how Defendant could be found to lack sufficient minimum contacts with the State of Massachusetts to confer jurisdiction, yet somehow still have sufficient contacts with the U.S. as a whole.  Defendant's subsidiary Samsonite LLC is responsible for the Samsonite Group's U.S. operations.  If Defendant lacks sufficient contacts with Massachusetts, where that entity sits, it cannot have sufficient contacts anywhere in the U.S.—and certainly not in Texas, where it has no employees, offices, or any operations at all.  Even if the Court were to find a lack of contacts with Massachusetts but sufficient contacts with the U.S., however, exercising jurisdiction would not comport with traditional notions of fair play and substantial justice.

### 1.   Defendant Lacks Minimum Contacts with Texas or this District.

It is undisputed that Defendant lacks minimum contacts with the State of Texas or with this District.  As explained in prior briefing, Defendant lacks minimum contacts with Texas to confer general or specific jurisdiction.  Defendant does not make any sales, hire any employees, operate the websites on which the accused products are sold, or direct any marketing or advertising toward Texas, or otherwise run any operations at all in Texas.  Dkt. No. 19 (Mot.) at 10-12; Dkt. No. 25

(Mot. Reply) at 5.  Not a single one of the alleged acts of infringement in this case occurred in Texas.  Dkt. No. 19 (Mot.) at 10-12; Dkt. No. 25 (Mot. Reply) at 4-5.  Plaintiff's only counterargument is an improper attempt to impute the entirety of the Samsonite Group's actions to Defendant.  *See* Dkt. No. 62 (Pltf. Objs.) at 12-18.  But as previously explained and considered by Judge Gilliland, Defendant does not direct or control its subsidiaries.  Dkt. No. 19 (Mot.) at 7-10; Dkt. No. 19-6 (Livingston Decl.) at ¶¶ 13-17.  And, even under Plaintiff's incorrect theory, the relevant subsidiary Samsonite LLC still lacks minimum contacts with the United States, as explained below.

### 2.    Defendant Lacks the Requisite Minimum Contacts with the United States.

If the Court reaches this step of the inquiry, it will have already found that Defendant is not "at home" in Massachusetts.  Such a finding requires finding (1) that Defendant's Massachusetts joint headquarters does not constitute its principal place of business, and (2) that the contacts between Defendant and the state of Massachusetts through Defendant's subsidiary, Samsonite LLC, are insufficient to confer specific jurisdiction on Massachusetts.  Under those findings, Defendant cannot be found to have the requisite minimum contacts with the United States, because Defendant's contacts with the United States exist solely through Samsonite LLC and Defendant's other subsidiaries.

Defendant does not direct or control the activities of its subsidiaries who conduct the allegedly infringing activities in the United States.  Dkt. No. 19 (Mot.) at 7-10; Dkt. No. 19-6 (Livingston Decl.) at ¶¶ 13-17; Dkt. No. 25 (Mot. Reply) at 1-3; Dkt. No. 41-1 (Supp. Br.) at 1-2.  Every alleged act of infringement Plaintiff complains of is performed not by Defendant, but by its subsidiaries.  Plaintiff has not proffered evidence sufficient to impute the actions of those subsidiaries onto Defendant, only generally alluding to the Samsonite Group's overall worldwide

sales or the actions of Defendant's subsidiaries. Dkt. No. 62 (Pltf. Objs.) at 12-18. Not a single one of those alleged activities is tied to *Defendant itself*, beyond vague, conclusory, *unsupported* allegations that Defendant directs or controls those activities. *See id.* Plaintiff's indirect infringement allegations are similarly conclusory, alleging only that Defendant "induces and contributes" to infringing activities by Samsonite Group subsidiaries by "making strategic decisions, providing oversight, managing the Group's operations, including its operations in Asia . . . ." *Id.* at 15-18. But not a single *fact* ties Defendant's general oversight of the Samsonite Group to the actual *allegedly infringing activities*. As Defendant has already explained, Defendant does not become liable for the actions of its subsidiaries merely by being their corporate parent, and Plaintiff's proffered evidence is deficient. *E.g.*, Dkt. No. 25 (Mot. Reply) at 1-3.

Perhaps most tellingly, Plaintiff's objections to the R&R on this topic simply repeat the same arguments it made in the prior briefing, and contain **zero citations** to evidence gleaned from the jurisdictional discovery Plaintiff itself initiated. *See* Dkt. No. 62 (Pltf. Objs.) at 12-15. Defendant already addressed this deficient, often mischaracterized, showing by Plaintiff through its Reply and then in jurisdictional discovery. Dkt. No. 25 (Mot. Reply) at 1-3. Defendant does not operate the websites or retail stores in which the accused products are sold, does not advertise or offer to sell any products (in the United States, or otherwise), and does not direct or control the alleged infringing activities by its subsidiaries. Dkt. No. 19 (Mot.) at 3, 7-10; Dkt. No. 19-6 (Livingston Decl.) at ¶¶ 13-17; Dkt. No. 25 (Mot. Reply) at 1-3; Dkt. No. 41-1 (Supp. Br.) at 1-2.

### 3. Exercising Personal Jurisdiction Would Not Comport with Traditional Notions of Fair Play and Substantial Justice.

Even assuming minimum contacts with Texas or the United States are established, exercising jurisdiction over this case would not comport with traditional notions of fair play and substantial justice. Correctly noting that Plaintiff "ma[de] only a brief reference" to the analysis

under the second prong of *Int'l Shoe* and "***did not address any of the Burger King factors***," Judge Gilliland independently found that exercising jurisdiction did not comport with traditional notions of fair play and substantial justice. Dkt. No. 59 (R&R) at 14 (emphasis added).

Despite faulting Defendant for allegedly including a new argument in its reply, Plaintiff now injects a wholly new argument that addresses these *Burger King* factors. Dkt. No. 62 (Pltf. Objs.) at 18-20. These arguments were not before Judge Gilliland, are waived, and should be ignored. *E.g.*, *Croy*, 2023 WL 6393888, at *3.

Even if they are considered, Plaintiff's arguments are conclusory, unsupported, and do not alter Judge Gilliland's conclusion. First, while Plaintiff attempts to brush aside the severe burden Defendants would suffer from litigating in Texas as "general allegations of inconvenience," Dkt. No. 62 (Pltf. Objs.) at 19, Defendant has proffered far more than that. Defendant explained that its only location in the United States is in Massachusetts (in a different time zone requiring hours of travel), and that it has no directors or employees in Texas. Dkt. No. 19 (Mot.) at 14. Jurisdictional discovery has borne out that ***no employee relevant to this case*** lives in Texas. Dkt. No. 41-1 (Supp. Br.) at 2. That "Defendant's directors regularly travel worldwide to conduct Defendant's business" is irrelevant. Dkt. No. 62 (Pltf. Objs.) at 19. As discussed above, Defendant's directors have no involvement whatsoever in the allegedly infringing activities.[5] Nearly all employees that are actually relevant to this case—those responsible for the design, development, manufacture, marketing, and sales of the accused products—reside and work in

_____

[5] For example, the facts that show that Defendant's Board of Directors never discussed a single one of the dozens of accused products in this case at over six years of board meetings. Dkt. No. 41-1 (Supp. Br.) at 1.

Massachusetts, and would be significantly burdened by travel to Texas.  Dkt. No. 41-1 (Supp. Br.) at 2; Dkt. No. 42 (Ex. B to Supp. Br.) at 8-11; Dkt. No. 42 (Ex. C to Supp. Br.).

Second, Texas's interest in adjudicating this dispute not any stronger than that of any other states where Defendant's products are sold. Dkt. No. 19 (Mot.) at 14.

Third, the Court's familiarity with the technology at issue due to the prior Wenger litigation is at best only partially relevant here because, as already explained in prior briefing, those proceedings only encompassed two of four patents, and Defendant is not bound by the Wenger proceedings.  Dkt. No. 25 (Mot. Reply) at 9-10.  There is no relationship between Defendant and Wenger, and no overlap between the products at issue.

Finally, efficient resolution of controversies and advancement of fundamental social policies is better served by adjudicating the dispute in Massachusetts, the center of the allegedly infringing activities and the location in which most of the relevant witnesses.  Dkt. No. 19 (Mot.) at 15.

Thus, traditional notions of fair play and substantial justice counsel against exercising jurisdiction in Texas, even if Rule 4(k)(2) does apply to this case, and minimum contacts with the U.S. are established.

## C.    Even if the Court Sustains All of Plaintiff's Objections, the Case Should Still be Transferred to D. Mass.

The R&R ruled that the case should be dismissed for lack of jurisdiction over Defendant, and thus did not reach the issue of Defendant's alternate requested relief: transfer to D. Mass.  *See generally* Dkt. No. 59 (R&R).  Plaintiff also did not address this alternative relief in its objections. *See generally* Dkt. No. 62 (Pltf. Objs.).  As explained in Defendant's motion to dismiss or transfer, reply, and supplemental briefing, the public and private interest factors are all either neutral or weigh in favor of transferring this case.  Dkt. No. 19 (Mot.) at 15-20; Dkt. No. 25 (Mot. Reply) at

6-10; Dkt. No. 41-1 (Supp. Br.) at 2-3.  Plaintiff has uncovered nothing during months of jurisdictional discovery to tip the scales in the other direction.  *See generally* Dkt. No. 45 (Mot. for Leave Opp.).  Even if the Court accepts Plaintiff's arguments that jurisdiction is proper in W.D. Tex., the case should be transferred to D. Mass., because it is the clearly more convenient venue.

## III.    CONCLUSION

For the foregoing reasons, Samsonite Int'l respectfully requests that the Court overrule Plaintiff's objections and adopt the R&R in full, or, alternatively, order that the case be transferred to the District of Massachusetts.

Date: June 11, 2024                                      Respectfully submitted,

                                                        */s/  Bailey K. Benedict*
                                                        Neil J. McNabnay
                                                        njm@fr.com
                                                        Texas Bar No. 24002583
                                                        **FISH & RICHARDSON P.C.**
                                                        1717 Main Street, Suite 5000
                                                        Dallas, TX 75201
                                                        Tel: (214) 747-5070

                                                        Bailey K. Benedict
                                                        benedict@fr.com
                                                        Texas State Bar No. 24083139
                                                        **FISH & RICHARDSON P.C.**
                                                        1221 McKinney Street, Suite 2800
                                                        Houston, TX 77010
                                                        Tel: (713) 654-5300

                                                        Wonjoon Chung (*pro hac vice*)
                                                        chung@fr.com
                                                        GA Bar 396468
                                                        **FISH & RICHARDSON P.C.**
                                                        1180 Peachtree St. NE, Fl. 21
                                                        Atlanta, GA 30309
                                                        Tel: (404) 892-5005

                                                        **ATTORNEYS FOR DEFENDANT
                                                        SAMSONITE INTERNATIONAL S.A.**

18

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5 on June 11, 2024. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system and via electronic mail.

*/s/Bailey K. Benedict*
Bailey K. Benedict